1  Ekwan E. Rhow - State Bar No. 174604
       erhow@birdmarella.com
2  Christopher J. Lee - State Bar No. 322140
       clee@birdmarella.com
3  BIRD, MARELLA, RHOW,
   LINCENBERG, DROOKS & NESSIM, LLP
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
6
7  Attorneys for Defendants Tradeshift, Inc. and
   Tradeshift Holdings, Inc.

8
                    **UNITED STATES DISTRICT COURT**
9
          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**
10

11
   JANE DOE,                                CASE NO. 4:24-cv-00166-JST
12
              Plaintiff,                     **DEFENDANTS TRADESHIFT, INC.**
13                                           **AND TRADESHIFT HOLDINGS,**
              vs.                            **INC.'S NOTICE OF MOTION AND**
14                                           **MOTION TO COMPEL**
   TRADESHIFT, INC., a Delaware             **ARBITRATION; MEMORANDUM OF**
15 corporation, TRADESHIFT HOLDINGS,        **POINTS AND AUTHORITIES IN**
   INC., a Delaware corporation,            **SUPPORT THEREOF**
16 CHRISTIAN LANNG, an individual,
   MIKKEL HIPPE BRUN, an individual,        [*Filed Concurrently with Declaration of*
17 GERT SYLVEST, an individual,             *Christopher J. Lee; Declaration of Jovita*
   MORTEN LUND, an individual,              *O'Byrne; [Proposed] Order*]
18 MORTEN SONDERGAARD aka
   MORTEN PEDERSEN and aka MORTEN           Date:     April 18, 2024
19 BLINKSBJERG NIELSEN, an individual,      Time:     2:00 p.m.
   JEFF RANSDELL, an individual, KING &     Crtrm.:   6
20 SPALDING INTERNATIONAL, a United
   Kingdom business entity, LITTLER
21 MENDELSON, P.C., a California            Assigned to Hon. Jon S. Tigar
   professional corporation, HSBC
22 HOLDINGS Plc, a United Kingdom
   business entity, KOCH INDUSTRIES,
23 INC., a Delaware corporation, and DOES,
   1-100, inclusive,,
24
              Defendant.
25

26

27

28

   DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S NOTICE OF MOTION AND
                        MOTION TO COMPEL ARBITRATION

**TO THE COURT AND TO THE PARTIES HERETO AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 18, 2024 at 2:00 p.m. in Courtroom 6 of the above-captioned Court, located at Oakland Courthouse, 1301 Clay Street, Oakland, California, Defendants Tradeshift, Inc. and Tradeshift Holdings, Inc. ("Tradeshift") will, and hereby does, move for an order staying this action and compelling Plaintiff's claims to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, or in the alternative, the California Arbitration Act. Cal. Code Civ. Proc. § 1281.1, *et seq.*

On January 29, 2024, Tradeshift met-and-conferred with Plaintiff regarding the substance of this motion. Plaintiff's indicated that they would oppose the motion, and that they would not stipulate to arbitration. Declaration of Christopher J. Lee ¶ 2.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Jovita O'Byrne and Christopher J. Lee, the Proposed Order, any oral argument as may be presented at the hearing, all other papers, records, and pleadings on file in this action, and on such additional evidence as the court may allow.


DATED:  February 20, 2024          Ekwan E. Rhow
                                   Christopher J. Lee
                                   Bird, Marella, Boxer, Wolpert, Nessim,
                                   Drooks, Lincenberg & Rhow, P.C.


                          By: _____
                                   Ekwan E. Rhow
                                   Attorneys for Defendants Tradeshift, Inc. and
                                   Tradeshift Holdings, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

       A.   In January 2014, Plaintiff agrees to mandatory arbitration of her
            employment-related claims with Tradeshift. ............................................... 2

       B.   Plaintiff alleges that she was subject to misconduct by Tradeshift's
            former CEO prior to her termination in May 2020. ..................................... 3

       C.   In May 2022, Plaintiff releases Tradeshift from claims relating to the
            misconduct, and agrees to mandatory arbitration for a second time. .............. 4

III.   LEGAL STANDARD ........................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

       A.   The Employment Agreement is a valid written arbitration agreement
            which encompasses Plaintiff's claims. ........................................................ 6

       B.   9 U.S.C. § 402 is inapplicable to the Employment Agreement. ..................... 6

       C.   The Settlement Agreement is a valid written arbitration agreement
            which encompasses Plaintiff's claims. ........................................................ 7

V.     CONCLUSION .................................................................................................... 9

i

DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009) ................................................................................. 8

5

6

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
    622 F.3d 996 (9th Cir. 2010) ............................................................... 8, 9

7

8

*Buckeye Check Cashing, Inc. v. Cardengna,*
    546 U.S. 440 (2006) ................................................................................. 8

9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ................................................................. 5

10

11

*Cox v. Ocean View Hotel, Corp.,*
    533 F.3d 1114 (9th Cir. 2008) ................................................................. 5

12

13

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ................................................................................. 5

14

*Henry Schein, Inc. v. Archer and White Sales, Inc.,*
    139 S. Ct. 524 (2019) .......................................................................... 1, 5

15

16

*Johnson v. Everyrealm, Inc.,*
    2023 WL 2216173 (S.D.N.Y. Feb. 24, 2023) ......................................... 7

17

18

*Marshall v. Hum. Servs. of Se. Texas, Inc.,*
    2023 WL 1818214 (E.D. Tex. Feb. 7, 2023) .......................................... 7

19

20

*Rahaman v. Citibank, N.A.,*
    2023 WL 6851739 (C.D. Cal. Aug. 22, 2023) ........................................ 5

21

22

*Saperstein v. Thomas P. Gohagan & Co.,*
    476 F. Supp. 3d 965 (N.D. Cal. 2020) .................................................... 6

23

24

*Turner v. Tesla,*
    2023 WL 6150805 (N.D. Cal. Aug. 11, 2023) ........................................ 6

25

**State Cases**

26

*Cione v. Foresters Equity Servs., Inc.,*
    58 Cal.App.4th 625 (Cal. App. 1997) ..................................................... 8

27

28

DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
  35 Cal. 3d 312 (1983)...................................................................................................5

**Federal Statutes**

9 U.S.C.
  § 2....................................................................................................................................5
  § 3....................................................................................................................................5
  § 402.............................................................................................................................6, 7

Federal Arbitration Act..........................................................................................................5

**State Statutes**

California Arbitration Act.......................................................................................................5

Cal. Code Civ. Proc. § 1281. ................................................................................................5

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

Defendants Tradeshift, Inc. and Tradeshift Holdings, Inc. (collectively, "Tradeshift") bring this Motion to Compel Arbitration because Plaintiff Jane Doe ("Plaintiff") is party to not just one, but two binding arbitration agreements. When she started working for Tradeshift in 2014, Plaintiff signed an employment agreement and agreed to arbitrate any employment-related claims. Later, in 2022, Plaintiff signed a settlement agreement that releases Tradeshift (as well as its directors, officers, investors, and attorneys, among others) from the very claims she asserts here, and requires arbitration of any claim related to that agreement, including any challenge to the validity of that release. In contravention of both agreements, Plaintiff has filed her lawsuit in this Court. As such, Tradeshift files the instant motion to respectfully request that the Court "enforce [the] arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The relevant allegations within Plaintiff's First Amended Complaint ("FAC") fall squarely within the scope of the agreements at issue. Plaintiff began working for Tradeshift in January 2014. Plaintiff alleges, in relevant part, that while employed with Tradeshift: (1) she experienced misconduct by Tradeshift's former CEO; (2) this misconduct occurred on Tradeshift business trips; (3) she reported the misconduct to Tradeshift in December 2019; and (4) she was then terminated in May 2020. On the basis of these facts, Plaintiff brings claims against Tradeshift for sex trafficking, intentional infliction of emotional distress, and negligence.

Plaintiff agreed to arbitrate these claims – not just once, but twice. First, Plaintiff agreed through her employment agreement to arbitrate all claims or disputes with anyone relating to her employment with or termination from Tradeshift. Second, Plaintiff – represented by sophisticated counsel – signed a settlement agreement with Tradeshift's former CEO, which released Tradeshift (and all defendants named in this case) from claims relating to the alleged misconduct described above. That agreement also contained

1

an arbitration provision. Plaintiff reaffirmed both the release and the arbitration provision in three separate amendments to the settlement agreement. Both the 2014 employment agreement and the 2022 settlement agreement include specific representations and warranties by Plaintiff that she understood what she was signing, and was not under any duress or undue influence.

There is no colorable basis for any of these claims to remain before this Court. The Court should compel arbitration of Plaintiff's claims, and stay this action pending resolution of those proceedings.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     In January 2014, Plaintiff agrees to mandatory arbitration of her employment-related claims with Tradeshift.

When her employment with Tradeshift commenced in January 2014, Plaintiff signed an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (the "Employment Agreement"). Declaration of Jovita O'Byrne ("O'Byrne Dec.") ¶ 4, Ex. A. The Employment Agreement contains a mandatory arbitration provision, through which Plaintiff agreed to arbitrate "all controversies, claims, or disputes *with anyone* . . . [i]ncluding the Company[1] . . . ***arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company***, including any breach of this Agreement[.]" *Id.* at p. 6 (emphasis added). Plaintiff represented that she executed the Employment Agreement "voluntarily and without any duress or undue influence by the Company or anyone else," that she fully understood that she was waiving her right to jury trial, and that she had been given the opportunity to seek advice of counsel prior to signing. *Id.* at p. 7. Plaintiff also separately initialed the specific arbitration provision. *Id.*

The Employment Agreement also contains a survivorship clause which states that

[1]   "Company" is defined as "Tradeshift Inc., its subsidiaries, affiliates, successors or assigns." O'Byrne Dec. ¶ 4, Ex. A at 1.

the "rights and obligations of the parties to this Agreement will survive termination of [Plaintiff's] employment with the Company." O'Byrne Dec. ¶ 4, Ex. A at p.7. Thus, the Employment Agreement's arbitration provision remains in force notwithstanding the termination of Plaintiff's employment with Tradeshift.

**B.      Plaintiff alleges that she was subject to misconduct by Tradeshift's former CEO prior to her termination in May 2020.**

Plaintiff worked as an executive assistant for co-defendant Christian Lanng, Tradeshift's former CEO, FAC (Dkt. 1-1, Ex. A) ¶ 54, from January 2014 to May 2020. O'Byrne Dec. ¶ 3. Plaintiff alleges that "within the course and scope of her employment" with Tradeshift, which "required a great deal of international travel," FAC ¶ 24, she was subject to various misconduct by Lanng, and two other Tradeshift board members – co-defendants Morten Lund and Morten Sondergaard. FAC ¶ 1. In addition to Lanng, Lund, and Sondergaard, Plaintiff brings claims against Tradeshift – and a plethora of others, including Tradeshift's executives, board members, corporate investors, and outside counsel – alleging that they knew of the misconduct but failed to take action. FAC ¶¶ 11-12.

Plaintiff acknowledges that the "gravamen" of her claims against Tradeshift stem from the allegations of misconduct she experienced as a Tradeshift employee, and her termination in May 2020. FAC ¶¶ 68, 84. Plaintiff alleges that her termination occurred shortly after Tradeshift was made aware of Lanng's misconduct in December 2019, when she emailed Lanng and two other Tradeshift board members regarding her claims. FAC ¶ 21. While Tradeshift does not concede that the alleged conduct occurred within the scope of Plaintiff's employment, it is entitled to rely on Plaintiff's representations for purposes of the instant motion.

Plaintiff alleges three causes of action against Tradeshift: (1) sex trafficking by coercion; (2) intentional infliction of emotional distress ("IIED"); and (3) negligence. Plaintiff's trafficking claim against Tradeshift "arises from" the allegation that Lanng's misconduct "occurred on Tradeshift business trips." FAC ¶ 97. The IIED claim against Tradeshift appears to arise from the same conduct as the trafficking claim. FAC ¶ 114. The

1  negligence claim is based on the allegation that Tradeshift failed to timely identify and

2  prevent the misconduct, and instead terminated Plaintiff. FAC ¶¶ 118-120.

3          **C.**        **In May 2022, Plaintiff releases Tradeshift from claims relating to the**

4                **misconduct, and agrees to mandatory arbitration for a second time.**

5        Plaintiff acknowledges that she entered into an agreement to settle her purported

6  claims against Lanng and various related individuals and entities on May 14, 2022.[2] FAC ¶

7  15; O'Byrne Dec. ¶ 5, Exhibit B**.** (the "Settlement Agreement.") Pursuant to the Settlement

8  Agreement – which names Tradeshift as a third-party beneficiary – Plaintiff released

9  Tradeshift from any claims "based upon any conduct or event occurring up through and

10  including [May 14, 2022]." *Id.* at p. 3. The release also extended to the company's "current

11  and former affiliates, successors, assigns, agents, representatives, creditors, shareholders,

12  investors, attorneys, directors, officers, and employees," which includes all of the

13  defendants named in the Complaint, and "all of which are third-party beneficiaries" of the

14  Settlement Agreement who are "entitled to enforce its terms." *Id.* The Settlement

15  Agreement also provides that its existence constitutes a complete and absolute defense to

16  any of the released claims. *Id.* at p. 4.

17        The Settlement Agreement contains a mandatory arbitration provision, through

18  which Plaintiff agrees to arbitrate "[a]ny controversy or dispute, or claim ***arising out of, in***

19  ***connection with, or related to the interpretation, performance or breach of this***

20  ***Agreement***." O'Byrne Dec. ¶ 5, Ex. B at pp. 4-5. By signing the Settlement Agreement,

21  Plaintiff represented and warranted that the Agreement was "executed voluntarily and

22  without any duress or undue influence," and that she had been advised by counsel as to the

23  legal effect of each provision in the agreement. *Id.* at p. 13. Based on the notice provision

24  therein, it appears that Plaintiff was represented by competent counsel in negotiating the

25  Settlement Agreement. *Id.* at p. 10. Plaintiff later signed three separate amendments to the

26

27  ───────────────
[2]   The Settlement Agreement was signed by both Plaintiff and Lanng on that date.

28  O'Byrne Dec. ¶ 5, Ex. B.

1  Settlement Agreement in September 2022, January 2023, and March 2023, each of which

2  reaffirmed that the Settlement remained "in full force." *Id.* at pp. 19, 23, 27.

3  **III.   LEGAL STANDARD**

4        Both the Federal Arbitration Act ("FAA") and the California Arbitration Act

5  ("CAA") reflect a strong public policy of in favor of arbitration. *Cox v. Ocean View Hotel,*

6  *Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Ericksen, Arbuthnot, McCarthy, Kearney &*

7  *Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 322 (1983).[3] Under both statutes, courts are

8  required to enforce valid written arbitration agreements absent grounds for revocation. *See*

9  9 U.S.C. § 2; Cal. Code Civ. Proc. § 1281.2. Likewise, under both statutes, when claims

10  are sent to arbitration, the underlying court action must be stayed. 9 U.S.C. § 3; Cal. Code

11  Civ. Proc. § 1281.4.

12        Because "arbitration is a matter of contract . . . courts must enforce arbitration

13  contracts according to their terms." *Henry Schein*, 139 S. Ct. at 529. Thus, the judicial role

14  on a motion to compel arbitration is limited to two questions: (1) whether a valid

15  agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the

16  dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

17  2000). If both are answered in the affirmative, the court must grant the motion. *Id.* at 1130.

18        In determining the validity of an agreement to arbitrate, federal courts "should

19  apply ordinary state-law principles that govern the formation of contracts." *First Options*

20  *of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, in applying these

21  principles, "any doubts concerning the scope of arbitrable issues should be resolved in

22  favor of arbitration, whether the problem at hand is the construction of the contract

23  language itself or an allegation of waiver, delay, or a like defense to arbitrability."

24  _____

25  [3]   There is a "strong default presumption" that absent the parties' explicit agreement to
apply state law, the FAA applies to motions to compel arbitration in federal court.
26  *Rahaman v. Citibank, N.A.*, 2023 WL 6851739, at *2 (C.D. Cal. Aug. 22, 2023) (collecting
cases). However, as variances between the FAA and the CAA are not material to
27  enforcement of the arbitration provisions here, the Court need not address the issue of
which statute governs.
28

DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION

1  *Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 972 (N.D. Cal. 2020)

2  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

3  (1983)).

4  **IV.   ARGUMENT**

5         **A.      The Employment Agreement is a valid written arbitration agreement**

6                 **which encompasses Plaintiff's claims.**

7            It is indisputable that Plaintiff is party to the Employment Agreement, which

8  requires arbitration of all disputes "with anyone" which are "arising out of, relating to, or

9  resulting from" Plaintiff's employment or termination with Tradeshift. O'Byrne Dec. ¶ 2,

10  Ex. A. It is equally indisputable that all relevant claims here arise out of or relate to

11  Plaintiff's employment and/or termination. Plaintiff opens her complaint by stating that all

12  of Lanng's misconduct occurred "within the course and scope of her employment," FAC ¶

13  1, and acknowledges that the "gravamen" of her complaint against Tradeshift is that it

14  terminated her instead of taking action against Lanng. FAC ¶ 84. Plaintiff's trafficking and

15  IIED claims arise from allegations that Tradeshift did not prevent Lanng from engaging in

16  misconduct against her while she was on Tradeshift business trips. FAC ¶ 98. The

17  negligence claim, likewise, arises from this alleged failure to act. FAC ¶¶ 118-120.

18            The only reason Plaintiff can purport to have any claim at all against Tradeshift (her

19  former employer) or any associated individual or entity is because the misconduct is

20  alleged to have occurred within the context of her employment by Tradeshift. Thus, the

21  arbitration provision of Plaintiff's Employment Agreement with Tradeshift governs. That

22  alone is sufficient to compel arbitration.

23         **B.      9 U.S.C. § 402 is inapplicable to the Employment Agreement.**

24            9 U.S.C. § 402 ("Section 402") provides that in any action where a person alleges

25  conduct constituting a "sexual assault dispute" or "sexual harassment dispute," no pre-

26  dispute arbitration agreement shall be valid or enforceable. However, Section 402 is

27  applicable only to claims that accrued ***after*** its date of enactment – March 3, 2022. *See*

28  *Turner v. Tesla*, 2023 WL 6150805, at *4 (N.D. Cal. Aug. 11, 2023); *Johnson v.*

1   *Everyrealm, Inc.*, 2023 WL 2216173, at *10 (S.D.N.Y. Feb. 24, 2023) (collecting cases).

2   Here, Plaintiff alleges no misconduct by Lanng – or anyone else at Tradeshift – that

3   post-dates her termination in May 2020. Even if she did, Tradeshift's alleged role in the

4   misconduct could obviously not have continued past the end of Plaintiff's employment

5   with Tradeshift. Thus, the last possible date that Plaintiff's claims could have accrued is

6   the day of her termination – almost two years prior to March 3, 2022. Thus, Section 402 is

7   not applicable, and the parties' pre-dispute agreement to arbitrate remains enforceable. *See*

8   *Marshall v. Hum. Servs. of Se. Texas, Inc.*, 2023 WL 1818214, at *3 (E.D. Tex. Feb. 7,

9   2023) (Section 402 inapplicable to plaintiff's sexual harassment claims against employer

10  because "last possible date" that claim could have accrued was the date of her termination

11  in 2018).

12      **C.      The Settlement Agreement is a valid written arbitration agreement**

13              **which encompasses Plaintiff's claims.**

14  The Settlement Agreement requires Plaintiff to submit to arbitration all claims

15  "***arising out of, in connection with, or related to the interpretation, performance or***

16  ***breach of this Agreement.***" O'Byrne Dec. ¶ 5, Ex. B (emphasis added). Pursuant to the

17  Settlement Agreement, Plaintiff released Tradeshift and its directors, officers, investors,

18  and attorneys (among others) from any claims relating to conduct occurring prior to May

19  14, 2022 – which encompasses all of the alleged conduct here – and authorized those

20  "third-party beneficiaries" to enforce the Settlement Agreement's terms, including its

21  arbitration provision. *Id.* As a result, Plaintiff cannot prosecute her claims against these

22  third-parties (including Tradeshift) absent some colorable argument that the Settlement

23  Agreement was terminated or is otherwise no longer in force. Thus, Plaintiff's claims are

24  inextricably tied to the "interpretation, performance, or breach" of the Settlement

25  Agreement, and must be arbitrated.

26  Tradeshift has clear standing to enforce the arbitration provision as a third-party

27  beneficiary. Applicable state law determines whether a non-signatory to the underlying

28  agreement can enforce an arbitration provision. *Arthur Andersen LLP v. Carlisle*, 556 U.S.

624, 631–32 (2009). Under California law, intended third-party beneficiaries of a contract may enforce contractual arbitration provisions contained therein. *Cione v. Foresters Equity Servs., Inc.*, 58 Cal.App.4th 625, 636-640 (Cal. App. 1997). "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Id.* (internal quotations omitted). Here, it is indisputable based on the language of the Settlement Agreement that explicitly releasing Tradeshift (alongside its directors, officers, investors, and attorneys, among others) from Plaintiff's claims was part of the parties' contractual bargain. O'Byrne Dec. ¶ 5, Ex. B at p. 3. The arbitration provision, likewise, is specifically crafted to apply to "[a]ny" controversy, dispute, or claim relating to the settlement and release, without limitation as to whether it is against a third-party. *Id.* at p.4. Reading the Settlement Agreement as a whole, it reflects a clear intent to have Tradeshift be an intended third-party beneficiary entitled to enforce the arbitration provision therein.

Any attempt by Plaintiff to argue that Tradeshift cannot enforce the arbitration provision because the Settlement Agreement was terminated presents a question for the arbitrator, not this Court. The parties to the Settlement Agreement explicitly delegated any questions relating to arbitrability to the arbitrator. O'Byrne Dec. ¶ 5, Ex. B**,** p.5 ("any controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of the [arbitration provision] shall be determined by the Arbitrator.") In these circumstances, "[u]nless the challenge is ***to the arbitration provision itself***, the issue of [the entire contract's] validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardengna*, 546 U.S. 440, 445 (2006) (emphasis added); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ("In other words, when a plaintiff's legal challenge is that a contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions[.]") Thus, the only arguments Plaintiff is permitted to make before the Court at the motion to compel stage are arguments that the "arbitration

1   clause, standing alone, is unenforceable—for reasons independent of any reasons the
2   remainder of the contract might be invalid." *Id.*

3        In sum, Plaintiff voluntarily settled and released the claims at issue here, and agreed
4   that any disputes pertaining to that release would go to arbitration. Regardless of what
5   substantive grounds Plaintiff may or may not have to challenge the validity of the
6   Settlement Agreement as a whole, they are irrelevant here. Those arguments are for the
7   arbitrator, not the Court.

8   **V.      CONCLUSION**

9        For the foregoing reasons, Defendant respectfully requests that the Court: (1)
10  compel Plaintiff to arbitrate all of her claims, in accordance with the terms of the
11  Employment Agreement and the Settlement Agreement; and (2) stay this action in its
12  entirety pending resolution of the arbitration proceedings.

13

14  DATED:  February 20, 2024          Ekwan E. Rhow
15                                     Christopher J. Lee
                                       Bird, Marella, Boxer, Wolpert, Nessim,
16                                     Drooks, Lincenberg & Rhow, P.C.

17

18                                     By: _____
19                                            Ekwan E. Rhow
20                                     Attorneys for Defendants Tradeshift, Inc. and
                                       Tradeshift Holdings, Inc.

21

22

23

24

25

26

27

28

DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION