Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Christopher J. Lee - State Bar No. 322140
    clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants Tradeshift, Inc. and
Tradeshift Holdings, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>TRADESHIFT, INC., a Delaware corporation, TRADESHIFT HOLDINGS, INC., a Delaware corporation, CHRISTIAN LANNG, an individual, MIKKEL HIPPE BRUN, an individual, GERT SYLVEST, an individual, MORTEN LUND, an individual, MORTEN SONDERGAARD aka MORTEN PEDERSEN and aka MORTEN BLINKSBJERG NIELSEN, an individual, JEFF RANSDELL, an individual, KING & SPALDING INTERNATIONAL, a United Kingdom business entity, LITTLER MENDELSON, P.C., a California professional corporation, HSBC HOLDINGS PLC, a United Kingdom business entity, KOCH INDUSTRIES, INC., a Delaware corporation, and DOES, 1-100, inclusive,<br><br>　　　　　Defendants. | CASE NO. 4:24-cv-00166-JST<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRADESHIFT, INC. AND TRADESHIFT HOLDINGS, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION**<br><br>Date:　　April 18, 2024<br>Time:　　2:00 p.m.<br>Crtrm:　　6<br><br>Assigned to Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES............................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................. 1

I.  INTRODUCTION ............................................................................................................... 1

II. ADDITIONAL FACTUAL BACKGROUND .................................................................. 2

III. ARGUMENT ...................................................................................................................... 4

    A.  The Employment Agreement and its arbitration provision remain in force. ......................................................................................................................... 4

        1.  The Employment Agreement is not Superseded...................................... 4

        2.  The illegal "Slave Contract" cannot supersede the Employment Agreement................................................................................................. 5

        3.  The right to arbitration under the Employment Agreement encompasses Tradeshift Holdings, Inc. ..................................................... 5

    B.  The Settlement Agreement's arbitration provision is enforceable. ...................... 5

        1.  Plaintiff executed the Settlement Agreement voluntarily and without fraud in the execution. ................................................................ 5

        2.  The Settlement Agreement's arbitration provision is not unconscionable........................................................................................ 7

        3.  The Settlement Agreement is not "permeated by illegality" .................... 9

        4.  The arbitration provision of the Settlement Agreement applies to all Defendants. ....................................................................................... 10

    C.  Plaintiff does not identify any material factual dispute that would require an evidentiary hearing to resolve.......................................................................... 11

    D.  Absent an order sending the entire case to arbitration, the Court should stay the remaining claims against co-defendants. ............................................... 12

IV. CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*,
    242 F.3d 777 (8th Cir. 2001) ..................................................................................................13

*Ballard v. Corinthian Colleges, Inc.*,
    No. C06-5256 FDB, 2006 U.S. Dist. LEXIS 57699 (W.D. Wash. Aug. 16,
    2006) .......................................................................................................................................13

*Barnes v. Crown Jewels*,
    2014 WL 4929052 (C.D. Cal. Oct. 1, 2014) .............................................................................7

*Bridge Fund Capital Corp. v. Fastbuck Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ..................................................................................................10

*Comer v. Micor*,
    278 F.Supp.2d 1030 (N.D. Cal. 2003) .....................................................................................4

*Comer v. Micro, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ..................................................................................................4

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ..................................................................................................1

*Forrest v. Spizzirri*,
    62 F.4th 1201 (9th Cir. 2023) .................................................................................................12

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019) ................................................................................................................2

*Hooper v. Jerry Insurance Agency*,
    LLC, 675 F.Supp.3d 1027 (N.D. Cal. 2023) ............................................................................6

*Kater v. Churchill Downs Inc.*,
    No. C15-612 RBL, 2019 U.S. Dist. LEXIS 142560 (W.D. Wash. Aug. 21,
    2019) ................................................................................................................................12, 13

*Kawasaki Kisen Kaisha Limited v. Benecia Port Terminal Co.*,
    2022 WL 866242 (C.D. Cal. March 23, 2022) .........................................................................7

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
    652 F. Supp. 3d 1313 (W.D. Wash. 2023) ........................................................................12, 14

*U.S. for Use and Benefits of Newton v. Neumann Caribbean Int'l, Ltd.*,
    750 F.2d 1422 (9th Cir. 1985) ................................................................................................12

*Rahaman v. Citibank, N.A.*,
    2023 WL 6851739 (C.D. Cal. Aug. 22, 2023) .................................................................. 10

*Sarmiento v. Fresh Harvest, Inc.*,
    573 F.Supp.3d 1378 (N.D. Cal. 2021) ............................................................................. 5

*Sharp Corp. v. Hisense USA Corp.*,
    No. 17-cv-03341-YGR, 2017 U.S. Dist. LEXIS 200102 (N.D. Cal. Dec. 5,
    2017) ................................................................................................................................ 13

*Smiles Servs. LLC v. Frye*,
    No. 3:23-cv-05392, 2023 U.S. Dist. LEXIS 165539 (W.D. Wash. Sept. 18,
    2023) ................................................................................................................................ 13

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) .......................................................................................................... 4

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*,
    135 F.3d 658 (9th Cir. 1998) ....................................................................................... 1, 4

**State Cases**

*Abramson v. Juniper Networks, Inc.*,
    115 Cal.App.4th 638 (2004) ............................................................................................. 8

*Acquire II, LATD v. Colton Real Estate Group*,
    213 Cal.App.4th 959 (2013) ..................................................................................... 10, 11

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    24 Cal.4th 83 (Cal. 2000) ............................................................................................. 8, 9

*Ashburn v. AIG Financial Advisors, Inc.*
    234 Cal.App.4th 79 (2015) ............................................................................................. 11

*Brown v. Wells Fargo Bank*,
    NA, 168 Cal.App.4th 938 (2008) ................................................................................. 6, 7

*Coast Plaza Drs. Hosp. v. Blue Cross of California*,
    83 Cal.App.4th 677 (2000) ............................................................................................. 14

*Davis v. Kozak*,
    53 Cal.App.5th 897 (2020) ........................................................................................... 2, 8

*Bickel v. Sunrise Assisted Living*,
    206 Cal.App.4th 1 (2012) ................................................................................................. 9

*Henry v. Alcove Inv., Inc.*,
    233 Cal. App. 3d 94 (1991) ............................................................................................ 14

<sub>

</sub>

*Madden v. Kaiser Foundation Hospitals*,
   17 Cal.3d 699 (1976) ................................................................................................... 6

*Rosenthal v. Great Western Fin. Securities Corp.*,
   14 Cal.4th 394 (Cal. 1996) ..................................................................................... 7, 11

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal.4th 899 (2015) ............................................................................................. 8, 9

**Federal Statutes**

Federal Arbitration Act ............................................................................... 10, 11, 12, 14

**State Statutes**

Cal. Civ. Code § 1667(1), (2) ................................................................................................ 5

Cal. Civ. Code § 1670.11 .............................................................................................. 9, 10

Cal. Civ. Code § 1670.5(a) ................................................................................................. 9

Cal. Code Civ. Proc. § 1281.2 ............................................................................... 10, 11, 14

Cal. Code Civ. Proc. § 1281.2(c) ...................................................................................... 10

Cal. Code Civ. Proc. §1283.05 ......................................................................................... 10

Cal. Gov. Code § 12964.5, *et seq.* ................................................................................. 9, 10

**Other Authorities**

U.S. Const. Amend. XIII, § 3 ............................................................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The issue before the Court here is extremely straightforward. Plaintiff concedes that she signed not just one, but *two* separate agreements to arbitrate her claims: (1) the 2014 employment agreement ("Employment Agreement"); and (2) the 2022 settlement agreement ("Settlement Agreement"). There is no basis to refuse to enforce both agreements and thereby override the strong public policy in favor of arbitration. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). As such, the Court should grant the motion to compel arbitration and stay the case while it is arbitrated.

First, the Employment Agreement between **Plaintiff and Tradeshift** could not have been superseded by any agreement between **Plaintiff and Lanng** – neither the plainly illegal and void "Slave Contract," nor the Settlement Agreement. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 666 (9th Cir. 1998) (recission or modification of a contract is only possible with the mutual consent of the parties). Thus, the Employment Agreement and its arbitration provision remains in force. That alone is sufficient grounds to compel arbitration of Plaintiff's claims.

Second, the Settlement Agreement is a valid and enforceable agreement that provides for arbitration of this entire matter. In an attempt to invalidate the Settlement Agreement's arbitration provision, Plaintiff sets forth a grab-bag of arguments regarding illegality, unconscionability, and fraud in the execution. These arguments are supported by little more than vague and conspiratorial allegations of collusion by Plaintiff's counsel at the time – a well-respected partner at a law firm, and a former Los Angeles Superior Court Judge and California Court of Appeal Justice. Plaintiff's self-serving and unsupported allegations are nothing more than a distraction.

Instead, the Court should focus on the things that Plaintiff conspicuously does not dispute: that she signed the Settlement Agreement voluntarily and of her own free will, that she initialed every page (including the page with the arbitration provision), that she had the opportunity to review the agreement's terms, that she consulted with counsel prior to signing,

and that she executed three amendments to the Settlement Agreement over the course of nearly a year – all while represented by an attorney who is a former judicial officer. There is simply no "oppression and surprise" here that would justify invalidating the arbitration provision. *Davis v. Kozak*, 53 Cal.App.5th 897, 905 (2020).

This is not a close issue. Plaintiff's attempt to make an end run around not just one, but two valid arbitration provisions and drag Tradeshift—along with current and former Tradeshift executives and directors, investors, and law firms—through court proceedings is precisely the sort of abuse that the applicable arbitration statutes are meant to prevent. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("courts must enforce arbitration contracts according to their terms."). If two binding arbitration provisions could be discarded based on the self-serving allegations advanced by Plaintiff here, the strong public policy favoring arbitration would be rendered a dead letter. Accordingly, the Court should compel arbitration of Plaintiff's claims.

## II.     ADDITIONAL FACTUAL BACKGROUND

As set forth in more detail in Tradeshift's moving papers, Plaintiff signed an Employment Agreement with Tradeshift and "its subsidiaries, affiliates, successors, or assigns" in 2014. Dkt. 20-3 (Declaration of Jovita O'Byrne) ¶ 4, Ex. A p. 2. The Employment Agreement contains an arbitration provision that applies to all disputes "with anyone" relating to Plaintiff's employment. *Id.* p. 7. In her declaration attached to the opposition, Plaintiff does not dispute that the Employment Agreement was a valid and enforceable contract. *See generally* Dkt. 30-1 (Declaration of Jane Doe). Instead, Plaintiff claims that the Employment Agreement was superseded by two agreements: (1) a "Slave Contract" between herself and Christian Lanng, Tradeshift's former CEO, Dkt. 30-1 ¶ 4, Ex. A; and (2) the Settlement Agreement. Plaintiff alleges that Lanng and others sexually abused her for several years during her employment. Dkt. 30-1 ¶¶ 9-11. Plaintiff also alleges that she suffered adverse employment actions from Tradeshift – although the operative complaint notably does not allege any employment law claims. *Id.* ¶¶ 12, 15, 16. Plaintiff was ultimately terminated by Tradeshift on May 30, 2020. *Id.* ¶ 17; Dkt. 20-3 ¶ 3.

In 2022, Plaintiff retained counsel to pursue legal claims against Lanng, Tradeshift, current and former Tradeshift executives and directors, law firms, and investors. Dkt. 30-1 ¶ 18. As set forth in more detail in Tradeshift's moving papers, Plaintiff subsequently entered into the Settlement Agreement, through which she released various categories of parties including Tradeshift – and all other defendants named in the operative complaint – from all claims based on any conduct prior to May 14, 2022. Dkt. 20-3 ¶ 5, Ex. B § 5. The Settlement Agreement also contains a valid arbitration provision that applies to these express third-party beneficiaries. *Id.*, § 9. As consideration for the release and agreement to arbitrate, Lanng agreed to provide Plaintiff with a large settlement payment. *Id.* § 4. Plaintiff subsequently entered into three amendments – the most recent of which was executed in March 2023 – that reaffirmed the validity of the Settlement Agreement, and granted Lanng an extended payment schedule for the settlement payment in exchange for a series of "holding payments." *Id.* p. 19-28. While Plaintiff claims that she has not received any settlement payments, Dkt. 30-1 ¶ 25, she does not dispute that she received the holding payments that lock in, among other things, the arbitration agreement.

Plaintiff acknowledges that she had the opportunity to consult with counsel prior to signing the Settlement Agreement, but baldly alleges that her counsel "colluded" with Lanng and Tradeshift in violation of professional and ethical standards, and that she did not "uncover" the terms of the agreement she signed, initialed, and amended three times until she retained new counsel.[1] Dkt. 30-1 ¶¶ 21-24. These self-serving *post hoc* accusations are contradicted by the explicit terms of the Settlement Agreement, which includes Plaintiff's representation and warranty that she had executed the agreement voluntarily, and that she had been advised by counsel as to its legal effect. Dkt. 20-3 ¶ 5, Ex. B §§ 20.16-20.23. The contact information included in the Settlement Agreement indicates that Plaintiff was represented at the time by Hon. Halim Dhanidna (Ret.) of Werksman, Jackson & Quinn LLP,

---

[1] Tradeshift reserves all rights to access communications between Plaintiff and her counsel based on her waiver of the attorney-client privilege that results from putting that relationship at issue.

a former Los Angeles Superior Court Judge and California Appellate Justice, and current lecturer at the UCLA School of Law. *Id.* § 16.

## III. ARGUMENT

### A. The Employment Agreement and its arbitration provision remain in force.

#### 1. The Employment Agreement is not Superseded.

Plaintiff contends that the arbitration provision of the Employment Agreement is inapplicable because that agreement was superseded by the "Slave Contract," and later the Settlement Agreement. As a general principle, a nonparty to a contract cannot be bound by its terms, aside from certain exceptions that are not applicable here. *Comer v. Micor*, 278 F.Supp.2d 1030, 1034 (N.D. Cal. 2003) (citing *Thomson—CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995)); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 308 (2002). As such, modification or recission of an existing contract can only occur with the "mutual consent" of the contractual parties. *Wyler*, 135 F.3d at 666. Further, while third-party beneficiaries may bring suit to vindicate their *rights* under a contract, they cannot be bound to the *obligations* of a contract that they "did not sign or otherwise assent to." *Comer v. Micro, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006).

Tradeshift is not a party to the "Slave Contract," and is not even mentioned anywhere in its terms. And while Tradeshift is a named third-party beneficiary to the Settlement Agreement, it is not a party to that contract and is therefore not bound by its terms. Neither of these contracts between Plaintiff and Lanng could have modified the terms of the pre-existing Employment Agreement between Plaintiff and Tradeshift.

In her opposition, Plaintiff makes no attempt to suggest a legal theory under which Tradeshift could have given up its right to arbitration through contracts to which it is not even a party. Further, even assuming *arguendo* that Tradeshift's rights under the Employment Agreement could be modified by the "Slave Contract" or the Settlement Agreement, there is nothing in either agreement that evidences that the parties intended to do so. The conclusion is inescapable – Plaintiff remains bound by her Employment Agreement with Tradeshift, and the arbitration provision therein.

### 2. The illegal "Slave Contract" cannot supersede the Employment Agreement.

Under California law, "Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts" and "[a]ny such illegality voids the entire contract." *Sarmiento v. Fresh Harvest, Inc.*, 573 F.Supp.3d 1378, 1389 (N.D. Cal. 2021); Cal. Civ. Code § 1667(1), (2). It is indisputable that the "Slave Contract" is an illegal contract. To state the obvious, slavery is illegal. *See* U.S. Const. Amend. XIII, § 3. Further, the terms of the contract provided by Plaintiff herself include such plainly illegal provisions such as a requirement that Plaintiff become the "full property" of Lanng and to have "no rights, outside what" was in the agreement. Dkt. 30-1, Ex. A. This plainly illegal and void document cannot supersede the valid Employment Agreement between Plaintiff and Tradeshift.

### 3. The right to arbitration under the Employment Agreement encompasses Tradeshift Holdings, Inc.

Plaintiff also argues that Tradeshift Holdings, Inc. ("Tradeshift Holdings") is not a party to the Employment Agreement's and therefore cannot enforce the arbitration provision. This is a plain misrepresentation of the Employment Agreement's terms. The term "Tradeshift" in the Employment Agreement is defined as "Tradeshift, Inc., its subsidiaries, affiliates, successors or assigns." Dkt. 20-3, Ex. A. As Plaintiff acknowledges in her complaint, Tradeshift Holdings is an affiliate of Tradeshift, Inc., as it is the "holding company" that "holds all of Tradeshift's assets." Dkt. 1-1 ¶ 28. Thus, Tradeshift Holdings is a party to – or at a minimum, an intended third-party beneficiary of – the Employment Agreement, and can enforce its terms.

## B. The Settlement Agreement's arbitration provision is enforceable.

### 1. Plaintiff executed the Settlement Agreement voluntarily and without fraud in the execution.

Plaintiff has failed to demonstrate any fraud that would invalidate the Settlement Agreement. Under California law, a court may refuse to enforce an arbitration provision where "the plaintiff is asserting that [she] was deceived as to the very nature of contract execution,

and did not know what [she] was signing." *Brown v. Wells Fargo Bank*, NA, 168 Cal.App.4th 938, 958 (2008). "A necessary element of fraud in the execution is **reasonable reliance**." *Id*. Thus, there is no fraud in the execution where "the plaintiff had a reasonable opportunity to discover the true terms of the contract." *Id*. "Fraud in the execution most often arises where some limitation—such as blindness, illness, or illiteracy—prevents a party from reading or understanding a contract he or she is about to sign." *Hooper v. Jerry Insurance Agency*, LLC, 675 F.Supp.3d 1027, 1037 (N.D. Cal. 2023) (Tigar, J.) (quoting *Munoz v. Patel*, 81 Cal.App.5th 761, 775 (2022)). The bare claim that the Plaintiff did not read or understand the arbitration provision is not a defense to being bound by it. *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699 (1976).

Here, Plaintiff has not alleged any facts that indicate fraud. In contrast, she knowingly agreed to be bound by the Settlement Agreement – and the arbitration provision therein. According to Plaintiff, she was aware that a settlement had been reached and that the agreement she was signing was in fact the settlement agreement. Dkt. 30-1 ¶ 21. Moreover, while Plaintiff says she was in a "fragile state" in 2022, she does not testify that she was legally incapacitated or lacked the ability to comprehend. *Id.* ¶ 18. Rather, as with nearly everyone who hires counsel, she "deferred to [her] attorneys to advocate on [her] behalf," *id.* ¶ 19, and accepted the lucrative settlement obtained by those attorneys. Dkt. 20-3 ¶ 5, Ex. B § 4. Further, Plaintiff says nothing about the circumstances accompanying the three subsequent amendments she signed over a ten-month period, each of which affirmed the validity of the Settlement Agreement. Dkt. 20-3 ¶ 5, Ex. B p. 19-28. Plaintiff cannot credibly claim that she assented to the Settlement Agreement on **four separate occasions** without understanding what she was signing at any time – nor does she attempt to do so here.

While Plaintiff appears to be claiming that she did not review the contract in detail and did not understand its terms prior to retaining her current litigation counsel, Dkt. 30-1 ¶ 21, Plaintiff has not alleged any specific misrepresentation she relied on in signing the Settlement Agreement, and reasonable reliance does not exist where one party simply fails to read a contract. *Brown*, 168 Cal.App.4th at 959-962; *see also Rosenthal v. Great Western Fin.*

*Securities Corp.*, 14 Cal.4th 394, 426 (1996) (rejecting fraud allegations by plaintiffs whose "declarations do not establish any actual *concealment* by GWFSC of the arbitration clause, or any affirmative misrepresentations regarding the existence or meaning of an arbitration clause in the" agreements). In addition, courts consider representation by counsel as factor in considering whether a party was deceived. *Barnes v. Crown Jewels*, 2014 WL 4929052, at *5 & n. 6 (C.D. Cal. Oct. 1, 2014) (finding no fraud in the execution where plaintiff "cannot explain his failure to read" arbitration provision in agreement he acknowledged signing, and rejecting "entirely unsubstantiated" "insinuat[ion] that his former counsel was somehow involved in the alleged fraud"); *Kawasaki Kisen Kaisha Limited v. Benecia Port Terminal Co.*, 2022 WL 866242, *4 (C.D. Cal. March 23, 2022) (finding no fraud in the execution where "the Settlement Agreement was negotiated at arms-length by sophisticated parties represented by counsel"). The fact that Plaintiff was represented by competent counsel should weigh heavily in the Court's analysis here.

Plaintiff relies on *Rosenthal*, but that case does not help her. In *Rosenthal*, the court found fraud in the execution only as to a subset of plaintiffs that were blind or could not read English. 14 Cal.4th at 425-431. Unlike those plaintiffs, Plaintiff is not alleging any specific condition that prevented her from reviewing and comprehending the Settlement Agreement. As to the rest of the *Rosenthal* plaintiffs, the court found there was no fraud in the execution because they each had a "reasonable opportunity to know the terms" of the agreement before signing it. *Id*.  Similarly, the fact that Plaintiff initialed every page of the Settlement Agreement, Dkt. 20-3 ¶ 5, Ex. B, demonstrates that she also had a reasonable opportunity to obtain knowledge of the Settlement Agreement's character and its essential terms.

### 2. The Settlement Agreement's arbitration provision is not unconscionable.

The Settlement Agreement's arbitration clause is not unconscionable and it remains fully enforceable. Under California law, an arbitration agreement will be enforced unless the party resisting arbitration can prove both procedural and substantive unconscionability. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (Cal. 2000). If

she fails in either respect, the Court must enforce the arbitration provision. *Id.*

There is no procedural unconscionability here. Procedural unconscionability is present where there is "oppression or surprise due to unequal bargaining power." *Davis*, 53 Cal.App.5th at 906. Here, there was no oppression or surprise to Plaintiff, who was represented by competent counsel and had the opportunity to review the arbitration provision prior to signing. Plaintiff does not – and cannot – claim that the comprehensive settlement agreement she negotiated and repeatedly amended with advice of counsel amounts to a contract of adhesion or that she otherwise lacked a meaningful opportunity to consider its terms. While Plaintiff accuses her counsel – without basis – of colluding with Defendants, she does not explain exactly what this alleged collusion entailed, or how it had anything to do with her decision to agree to the arbitration provision. Plaintiff does not dispute that she signed the Settlement Agreement voluntarily.

Nor is the arbitration provision substantively unconscionable. Arbitration provisions are substantively unconscionable only when they involve "a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 911 (2015). A key element of substantive unconscionability is lack of mutuality, and arbitration provisions are typically invalidated when they can "generally be described as unfairly one-sided." *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 657 (2004). For example, in *Armendariz* the Court found the arbitration agreement substantively unconscionable because it only required employees to arbitrate their claims against the employer but did not require the employer to arbitrate their claims against the employee. *Armendariz*, 24 Cal.4th at 115-116. No such one-sidedness exists here, as the arbitration provision applies equally to both parties. Given the nature of the underlying facts, the agreement to confidential private arbitration here is of material benefit to Plaintiff, as it allows her to more effectively protect her identity and avoid public litigation. Plaintiff contends that the arbitration provision is substantively unconscionable based on clauses prohibiting the arbitrator from invalidating the Settlement Agreement, and waiving Plaintiff's right to challenge the arbitration provision on grounds of public policy. Dkt. 20-3 ¶ 5, Ex. B §§ 9.1-

9.2. Plaintiff cites to no authority suggesting that either clause violates public policy.

Moreover, "when an arbitration agreement contains a single term in violation of public policy, that term will be severed and the rest of the arbitration agreement enforced." *Bickel v. Sunrise Assisted Living*, 206 Cal.App.4th 1, 9 (2012); Cal. Civ. Code § 1670.5(a). Courts will only refuse to sever individual provisions and instead invalidate the arbitration provision in its entirety when it is "permeated by unconscionability." *Armendariz*, 24 Cal.4th at 122. In *Armendariz*, the California Supreme Court listed two factors which weighed against severance: (1) multiple unconscionable provisions which indicate "a systematic effort" to force an employee to bring his claims in "an inferior forum that works to the employer's advantage; or (2) when the agreement suffers from such a pervasive lack of mutuality that "no single provision a court can strike or restrict" can cure that defect. *Id.* at 124. Here, the two isolated provisions cited by Plaintiff are not unconscionable, but even if they were, they are easily severable.

An arbitration provision is not rendered unconscionable in its entirety just because Plaintiff has become dissatisfied with certain terms of the underlying Settlement Agreement, or the pace at which payments under that agreement are being made. *Sanchez*, 61 Cal.4th at 911 ("unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain.") (cleaned up). To the extent that Plaintiff is experiencing issues with late payments, that is precisely the sort of dispute that the parties agreed to submit to arbitration when they signed the agreement. The Court should enforce the parties' bargain.

**3.     The Settlement Agreement is not "permeated by illegality."**

Plaintiff claims the Settlement is tainted by an "illegal purpose" because Defendants are attempting to avoid employment laws, but does not identify any specific laws that the agreement violates or avoids. While Plaintiff argues that the Settlement Agreement's Non-Disparagement and Confidentiality Clauses respectively violate Cal. Gov. Code § 12964.5 and Cal. Civ. Code § 1670.11, these provisions have nothing to do with the arbitration provision, and therefore are outside the scope of the Court's inquiry here – which is limited to the arbitration provision itself, as explained in more detail in Tradeshift's moving papers. *See*

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION

*Bridge Fund Capital Corp. v. Fastbuck Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

But even if that were not the case, the Settlement Agreement does not actually violate either statute. Cal Gov. Code § 12964.5(d)(1) explicitly provides that the prohibition on non-disparagement and confidentiality clauses therein is not applicable to negotiated settlement agreements. As for Cal. Civ. Code § 1670.11, it provides only that a confidentiality provision is unenforceable to the extent that it purports to limit a party's ability to testify. That prohibition is inapplicable here, as the Settlement Agreement contains an explicit carveout stating that "Nothing [in the confidentiality provision] shall prevent [either party or their representatives] from providing truthful testimony compelled by subpoena in any proceeding." Dkt. 20-3 ¶ 5, Ex. B § 11.

### 4. The arbitration provision of the Settlement Agreement applies to all Defendants.

Section 1281.2 of the California Arbitration Act does not apply here and the Court may send all claims and parties to arbitration. Section 1281.2 of the California Arbitration Act ("CAA") provides a narrow exception that gives courts the option to deny or stay arbitration where "(1) a party to the agreement is also a party to a pending litigation with a third party who did not agree to arbitration; (2) the pending third-party litigation arises out of the same transaction or series of related transactions as the claims subject to the arbitration; and (3) the possibility of conflicting rulings on common factual or legal issues exists." Cal. Code Civ. Proc. § 1281.2(c); *Acquire II, LATD v. Colton Real Estate Group*, 213 Cal.App.4th 959, 964 (2013). None of the above circumstances applies here.

As a preliminary matter, CAA Section 1281.2 is inapplicable: there is a "strong default presumption" that absent an explicit agreement to apply state law, the Federal Arbitration Act ("FAA") governs motions to compel arbitration in federal court. *Rahaman v. Citibank, N.A.*, 2023 WL 6851739, at *2 (C.D. Cal. Aug. 22, 2023). While the arbitration provision of the Settlement Agreement incorporates Section 1283.05 of the CAA, it does not incorporate Section 1281.2. Dkt. 20-3 ¶ 5, Ex. B § 9.1. Further, the arbitration provision also provides that "[t]he designation of a situs or a governing law for this Agreement or the arbitration shall not

1  be deemed an election to preclude application of the Federal Arbitration Act." *Id.*

2  In any case, none of the Section 1281.2 factors are present here. As discussed in more detail in Tradeshift's moving papers, and fatal to Plaintiff's attempt to implicate Section 1281.2, each of the Defendants is a third-party beneficiary with a right to enforce the terms of the Settlement Agreement – including the arbitration provision. Dkt. 20-3, Ex. B. Plaintiff does not dispute this. *See* Dkt. 30 at 13:10-11 ("Although Tradeshift is not a named party to the Settlement Agreement, it is an express third-party beneficiary covered by its release, confidentiality, and dispute resolution provisions."). On this basis, Tradeshift is requesting that the Court compel arbitration of the entire case. Not only is this the natural consequence of the arbitration provisions upon which this Motion is based, if the Court grants such relief, there will be no "conflicting rulings on common factual or legal issues" as all parties will proceed to arbitration together. *Acquire II, LATD*, 213 Cal.App.4th at 964. If anything, Plaintiff's acknowledgement that it would be "unworkable' if certain Defendants are forced to remain to litigate their claims in Court highlights why the Court should compel arbitration as to all parties, in the interest of justice and judicial efficiency.

**C.     Plaintiff does not identify any material factual dispute that would require an evidentiary hearing to resolve.**

The record before the Court is sufficient to compel arbitration. An evidentiary hearing is only appropriate where necessary to resolve a material factual dispute. *Rosenthal*, 14 Cal.4th at 414. For example, in *Ashburn v. AIG Financial Advisors, Inc.* – which Plaintiff relies on – the Court found an evidentiary hearing was necessary because without one, it was unable to resolve the issue of whether the plaintiffs were ever provided with the arbitration agreements. 234 Cal.App.4th 79, 95-96 (2015). No such dispute exists here. Plaintiff does not dispute in her declaration that she was provided with copies of the Employment Agreement and Settlement Agreement, that she personally executed both agreements, and that she had the opportunity to review both before signing them. Indeed, Plaintiff does not even articulate in her opposition what the material factual dispute that requires resolution through an evidentiary hearing is. Her perfunctory demand for an evidentiary hearing is little more than a last-ditch

attempt to delay the inevitable.

### D. Absent an order sending the entire case to arbitration, the Court should stay the remaining claims against co-defendants.

It is evident from the scope of the arbitration agreements that the subject matter of the Complaint, and all Plaintiff's claims and possible related claims against all possible defendants are subject to arbitration. Sending the entire case to arbitration is the most efficient way to effectuate the intent of the contracting parties. But if the Court grants the motion to compel arbitration only as to Tradeshift, it should stay the remainder of the case to avoid risking inconsistent results, wasting resources, and effectively defeating the intent and purpose of the arbitration agreement as to Tradeshift.

It is well-settled that for arbitrable claims, Section 3 of the FAA requires the district court to stay the trial pending the arbitration. With respect to non-arbitrable claims, too, "it is in the Court's discretion whether to stay, for considerations of economy and efficiency, an entire action, including issues not arbitrable, pending arbitration." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1327 (W.D. Wash. 2023) (internal quotation marks omitted); *see also Forrest v. Spizzirri*, 62 F.4th 1201, 1204, n.2 (9th Cir. 2023) ("…[W]here some, but not all, parties' claims are subject to arbitration, courts have discretion to stay or proceed with litigation of non-arbitrable claims."). "Considerations of economy and efficiency" include "avoiding a duplication of effort in trying simultaneously, or even successively, the issues. . . ." *United States use of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985).

In making such a determination, the court should also consider if arbitrable claims predominate and whether the arbitrator's decision on the *arbitrable* claims will affect the *non-arbitrable* claims. *Maguire*, 652 F. Supp. 3d at 1327. The court may also consider which party is requesting the stay, as "a stay is more appropriate when another defendant did not agree to arbitrate but less appropriate when another plaintiff did not." *Kater v. Churchill Downs Inc.*, No. C15-612 RBL, 2019 U.S. Dist. LEXIS 142560, 2019 WL 3944323, at *3–4 (W.D. Wash. Aug. 21, 2019).

The court's "discretion extends to nonarbitrable claims against a nonsignatory defendant[,]" as well. *Id*. Indeed, "[c]ourts generally grant motions to stay where the plaintiff's claims against a non-signatory defendant are intertwined with their arbitrable claims against another defendant." *Kater*, 2019 U.S. Dist. LEXIS 142560, 2019 WL 3944323, at *3–4; *see also AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001) ("[T]he district court has discretion to stay third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement. . . .") (internal quotation marks omitted); *Sharp Corp. v. Hisense USA Corp.*, No. 17-cv-03341-YGR, 2017 U.S. Dist. LEXIS 200102, 2017 WL 6017897, at *13 (N.D. Cal. Dec. 5, 2017) (holding that a stay should be granted, including as to non-signatories, "where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit. . . . [and] [t]he claims against the defendants [ ] all arise from the identical conduct, and are intertwined"); *Ballard v. Corinthian Colleges, Inc.*, No. C06-5256 FDB, 2006 U.S. Dist. LEXIS 57699, 2006 WL 2380668, at *6 (W.D. Wash. Aug. 16, 2006) ("A stay is justified when a nonsignatory lawsuit depends upon the same facts and is inherently inseparable from the arbitrable claims.").

Ultimately, the district court can and should stay the non-arbitrable claims pending the resolution of the arbitration. The alternative is to have multiple tribunals adjudicating overlapping factual and legal issues, and risking inconsistent findings and waste of resources. That risk is acute here, because the facts upon which all the causes of action rest are exactly the same (*see* FAC, ¶¶ 87, 94, 103, 112, and 117) and revolve around Plaintiff's relationship with Tradeshift's former CEO (*id*. at ¶ 1). Indeed, Plaintiff also acknowledges this risk in her Opposition. *See* Dkt. 30 at Sec. E ("The claims asserted against the other defendants overlap significantly with Plaintiff's claims against Tradeshift. . . . There is a probability of conflicting rulings. . . .").

In similar circumstances, where the successes of the arbitrable and non-arbitrable claims are interdependent, courts routinely agree to stay the entire case pending resolution of the arbitrable claims. *See, e.g., Smiles Servs. LLC v. Frye*, No. 3:23-cv-05392, 2023 U.S. Dist. LEXIS 165539, 2023 WL 6066683, at *8 (W.D. Wash. Sept. 18, 2023) (granting stay and

explaining that "[w]hether the non-arbitrating Defendants misappropriated trade secrets depends directly on whether Defendant Frye is found to have misappropriated them."); *Maguire*, 652 F. Supp. 3d at 1328 (explaining that a cause of action for aiding and abetting breach of fiduciary duty "turns directly" on the arbitrator's resolution of whether there was a breach of fiduciary duty in the first place).

"[C]oncurrent adjudication of the underlying factual premise[s] would risk inconsistency between the arbitrator's decision and that of the Court." *Maguire*, 652 F. Supp. 3d at 1328.

Finally, while the FAA – not the CAA – applies here, California case law dictates the same result. *See Coast Plaza Drs. Hosp. v. Blue Cross of California*, 83 Cal.App.4th 677, 693 (2000) ("A stay is appropriate where in the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.") (cleaned up); *Henry v. Alcove Inv., Inc.*, 233 Cal. App. 3d 94, 101 (1991) (existence of "possibility of conflicting rulings on a common issue of fact is sufficient grounds for a stay under section 1281.2," where plaintiff pled factually intertwined theories of liability against both arbitration counter-party and non-parties).

## IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court: (1) compel Plaintiff to arbitrate this entire matter, in accordance with the terms of the Employment Agreement and the Settlement Agreement; and (2) stay this action in its entirety pending resolution of the arbitration proceedings.

DATED:  April 2, 2024

Ekwan E. Rhow
Christopher J. Lee
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: *[signature]*

Ekwan E. Rhow
Attorneys for Defendants Tradeshift, Inc. and Tradeshift Holdings, Inc.