1    **JASSY VICK CAROLAN LLP**
     JEAN-PAUL JASSY, Cal. Bar No. 220513
2      jpjassy@jassyvick.com
     KEVIN L. VICK, Cal. Bar No. 220738
3      kvick@jassyvick.com
     JEFFREY A. PAYNE, Cal. Bar No. 279034
4      jpayne@jassyvick.com
     NICHOLAS R. HARTMANN, Cal. Bar No. 301049
5      nhartmann@jassyvick.com
     355 South Grand Avenue, Suite 2450
6    Los Angeles, California 90071
     Telephone:     310-870-7048
7    Facsimile:      310-870-7010

8    Attorneys for Counter-Defendants
     JANE DOE, BRYAN J. FREEDMAN, MILES
9    COOLEY, and FREEDMAN TAITELMAN +
     COOLEY, LLP

10                   **UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                          **OAKLAND DIVISION**

13   JANE DOE,                          | Case No. 4:24-cv-00166-JST

14                  Plaintiff,          | Honorable Jon S. Tigar

15        vs.                           | **COUNTER-DEFENDANTS' NOTICE OF**
                                        | **MOTION AND SPECIAL MOTION TO**
16   TRADESHIFT, INC., et al.,          | **STRIKE COUNTERCLAIMANT CHRISTIAN**
                                        | **LANNG'S FIRST AMENDED**
17                  Defendant.          | **COUNTERCOMPLAINT UNDER**
                                        | **CALIFORNIA CODE OF CIVIL**
18                                      | **PROCEDURE § 425.16; DECLARATION OF**
                                        | **JANE DOE; DECLARATION OF BRYAN J.**
19                                      | **FREEDMAN; DECLARATION OF JEFFREY**
                                        | **A. PAYNE**
20
21   CHRISTIAN LANNG,                   | Date:          August 29, 2024
                                        | Time:          2:00 pm
22                  Counterclaimant,    | Courtroom      6

23        vs.

24   JANE DOE; BRYAN J. FREEDMAN;
     MILES COOLEY and FREEDMAN,
25   TAITELMAN, & COOLEY, LLP; and
     DOES 1 through 10, inclusive,
26
                    Counter-Defendants.
27

28

TO THE HONORABLE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE on Thursday, August 29, 2024, at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 6, 2nd Floor, the Honorable Jon S. Tigar, presiding, located at 1301 Clay Street, Oakland, CA 94612, Counter-Defendants Jane Doe, Bryan J. Freedman, Miles Cooley, and Freedman Taitelman + Cooley LLP (erroneously sued as Freedman, Taitelman, & Cooley, LLP) (collectively, "Counter-Defendants"), and each of them individually, will and hereby do move this Court for an order striking Defendant and Counterclaimant Christian Lanng's First Amended Counterclaim ("FACC"), ECF No. 43, and each and every claim for relief in the FACC, in whole or in part, with prejudice and without leave to amend, pursuant to California Code of Civil Procedure section 425.16 ("Section 425.16" or the "anti-SLAPP[1] statute"), analyzed under the standards of Federal Rule of Civil Procedure 56. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). Defendants also request that the Court enter an award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 425.16(c).[2]

Each of Lanng's five counterclaims, for breach of contract, extortion, intentional infliction of emotional distress, "defamation (false light)," and defamation, are based on and arise from written and oral statements made in and/or in connection with a judicial proceeding, and therefore each counterclaim falls within the scope of Sections 425.16(e)(1) and/or (e)(2). Each of Lanng's counterclaims are likewise based on and arise from alleged speech and conduct in furtherance of speech and petitioning activities concerning ongoing controversies involving Lanng, a person in the public eye who stands accused of sexual assault, which is a matter of public interest, and therefore each counterclaim also falls within the scope of Section 425.16(e)(4). The burden therefore shifts to Lanng to establish a probability of prevailing on each of his counterclaims. Lanng cannot satisfy that burden for multiple separate and independent reasons:

- Each of Lanng's five counterclaims is barred in whole or in part by the Civil Code

---

[1] SLAPP is an acronym that stands for "Strategic Lawsuits Against Public Participation."

[2] If this Motion, or any part thereof, is granted, then Counter-Defendants will file a noticed motion to recover attorneys' fees and costs.

1    section 47(b)'s absolute litigation privilege;

2    • Lanng's first counterclaim for breach of contract also fails in whole or in part because: (a) he
3    cannot satisfy the necessary element of his own performance or excuse for nonperformance
4    because he materially breached the agreement under which he purports to sue; and (b) The
5    contractual provisions on which Lanng bases his claim are void under California statutory law
6    and public policy;

7    • Lanng's third counterclaim for intentional infliction of emotion distress ("IIED") also fails in
8    whole or in part because: (a) he cannot satisfy the necessary element of conduct that is
9    sufficiently extreme and outrageous to exceed all bounds of that usually tolerated in civilized
10   community; (b) Lanng's IIED claim is duplicative of his other claims and may be dismissed on
11   that basis and, in any event, it fails for the same reasons that those other claims fail; and (c) the
12   IIED claim is barred by the economic loss rule;

13   • Lanng's fourth counterclaim for false light also fails in whole or in part because: (a) Lanng fails
14   to specifically plead the allegedly actionable statements, as required under controlling law;
15   (b) Counter-Defendants did not engage in the allegedly actionable conduct; and (c) even if they
16   had engaged in such conduct, it would not give rise to a claim; and

17   • Lanng's fifth counterclaim for defamation also fails in whole or in part because: (a) Counter-
18   Defendants did not publish the allegedly defamatory statements; and (b) even if they had
19   published those statements, the absolute fair report privilege in California Civil Code section
20   47(d) and/or in the First Amendment and Fourteenth Amendment to the United States
21   Constitution, and article 1, section 2 of the California Constitution, would still bar the claim.

22        This Motion is based on this Notice; the attached Memorandum of Points and Authorities;
23   the attached declarations of Jane Doe, Bryan J. Freedman, and Jeffrey Payne; Exhibits 1–17; all
24   pleadings and documents on file in this action; and such further evidence or argument as may be
25   presented at the hearing on this Motion.

26   Dated:   May 30, 2024

27                                            /s/  Jean-Paul Jassy
                                             Counsel for Counter-Defendants

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF PERTINENT FACTS ...........................................................3

       A.    Christian Lanng and Jane Doe ................................................................3

       B.    Lanng's Failure to Pay the $10 Million "Settlement Payment"................3

       C.    Doe's Litigation Against Lanng and Tradeshift............................................4

III.   THE ANTI-SLAPP STATUTE APPLIES TO ALL OF LANNG'S COUNTERCLAIMS.....5

       A.    California's Anti-SLAPP Statute Applies in Federal Court.........................5

       B.    The Anti-SLAPP Statute is Construed Broadly .........................................5

       C.    Counter-Defendants Satisfy the First Step in the Anti-SLAPP Analysis...................6

             1.    All of Lanng's Claims Fall Within Sections 425.16(e)(1) and (e)(2) ...............6

             2.    The *Flatley* Anti-SLAPP Exception Does Not Apply Here.............................9

             3.    All of Lanng's Claims Also Fall Within Section 425.16(e)(4) .......................12

IV.    LANNG CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ..................13

       A.    All of the Claims Are Barred By the Broad, Absolute Litigation Privilege ............13

       B.    Lanng's Claims Are Barred for Additional, Independent Reasons..........................15

             1.    Lanng's Breach of Contract Claim Fails as a Matter of Law..........................15

             2.    Lanng's Defamation Claim Is Barred for Additional Reasons ......................17

             3.    Lanng's False Light Counterclaim Fails for Additional Reasons ..................20

             4.    Lanng's IIED Counterclaim Fails as a Matter of Law ...................................21

V.     CONCLUSION ...............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aisenson v. American Broadcasting Co.,
    220 Cal. App. 3d 146 (1990)............................................................................20

Argentieri v. Zuckerberg,
    8 Cal. App. 5th 768 (2017)............................................................................19

Aton Ctr., Inc. v. United Healthcare Ins. Co.,
    93 Cal. App. 5th 1214 (2023)........................................................................15

Baral v. Schnitt,
    1 Cal. 5th 376 (2016)......................................................................................5

Benson v. Riverside Cnty. Sheriff Dep't,
    No. 20-cv-02641, 2021 WL 1895909 (C.D. Cal. Apr. 20, 2021) ...............21

Bergstein v. Stroock & Stroock & Lavan LLP,
    236 Cal. App. 4th 793 (2015)....................................................................6, 11

Berkley v. Dowds,
    152 Cal. App. 4th 518 (2007)........................................................................22

Blanchard v. DIRECTV, Inc.,
    123 Cal. App. 4th 903 (2004)........................................................................15

Cariveau v. Halferty,
    83 Cal. App. 4th 126 (2000)..........................................................................17

Christensen v. Superior Court,
    54 Cal. 3d 868 (1991)....................................................................................22

City of Colton v. Singletary,
    206 Cal. App. 4th 751 (2012)..........................................................................5

City of Montebello v. Vasquez,
    1 Cal. 5th 409 (2016)....................................................................................11

Cochran v. Cochran,
    65 Cal. App. 4th 488 (1998)..........................................................................22

Colt v. Freedom Commc'ns, Inc.,
    109 Cal. App. 4th 1551 (2003)......................................................................19

Contreras v. Dowling,
    5 Cal. App. 5th 394 (2016)..............................................................................6

Cox Broad. Co. v. Cohn,
    420 U.S. 469 (1975)......................................................................................20

*Cross v. Cooper*,
     197 Cal. App. 4th 357 (2011).............................................................................10

*Doe v. Gangland Prods., Inc.*,
     730 F.3d 946 (9th Cir. 2013)..............................................................................13

*Equilon Enters. v. Consumer Cause*,
     29 Cal. 4th 53 (2002)...........................................................................................5

*Fellows v. Nat'l Enquirer*,
     42 Cal. 3d 234 (1986).....................................................................................20, 21

*FilmOn.com Inc. v. DoubleVerify Inc.*,
     7 Cal. 5th 133 (2019).....................................................................................12, 13

*Flatley v. Mauro*,
     39 Cal. 4th 299 (2006)...................................................................9, 10, 11, 12, 15

*Flickinger v. Finwall*,
     85 Cal. App. 5th 822 (2022)........................................................................7, 10, 15

*Gates v. Discovery Comms, Inc.*,
     34 Cal. 4th 679 (2004)........................................................................................20

*Geragos v. Abelyan*,
     88 Cal. App. 5th 1005 (2023)........................................................9, 10, 11, 12, 15

*Gilbert v. Sykes*,
     147 Cal. App. 4th 13 (2007).................................................................................21

*Governor Gray Davis Com. v. Am. Taxpayers All.*,
     102 Cal. App. 4th 449 (2002)................................................................................9

*Hagberg v. Calif. Fed. Bank FSB*,
     32 Cal.4th 350 (2004)..........................................................................................15

*Hansen v. Calif. Dep't of Corr. & Rehab.*,
     171 Cal. App. 4th 1537 (2008)...............................................................................8

*Harmoni Int'l Spice, Inc. v. Bai*,
     No. CV1600614BROASX, 2016 WL 6542731 (C.D. Cal. May 24, 2016).........9, 12

*Healthsmart Pac., Inc. v. Kabateck*,
     7 Cal. App. 5th 416 (2016)..............................................................................18, 20

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
     203 Cal. App. 4th 450 (2012)...............................................................................12

*Herring Networks, Inc. v. Maddow*,
     8 F.4th 1148 (9th Cir. 2021)..........................................................................5, 6, 18

*Hilton v. Hallmark Cards*,
     599 F.3d 894 (9th Cir. 2010)................................................................................12

*Home Ins. Co. v. Zurich Ins. Co.*,
     96 Cal. App. 4th 17 (2002)...................................................................................14

*Intermarketing Media, LLC v. Barlow*,
No. 20-cv-00889, 2021 WL 5990190 (C.D. Cal. May 4, 2021) ...........................................21

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017)...........................................................................................12

*Jennings v. Telegram–Tribune Co.*,
164 Cal. App. 3d 119 (1985)..............................................................................................19

*Kahn v. Bower*,
232 Cal. App. 3d 1599 (1991).............................................................................................21

*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002)...............................................................................................14

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
838 F.2d 1287 (D.C. Cir. 1988) ........................................................................................20

*Light v. Cal. Dep't of Parks & Rec.*,
14 Cal. App. 5th 75 (2017).........................................................................................21, 22, 23

*Malin v. Singer*,
217 Cal. App. 4th 1283 (2013)....................................................................................10, 15

*McClatchy Newspapers, Inc. v. Superior Court*,
189 Cal. App. 3d 961 (1987)......................................................................................14, 19

*Med. Marijuana, Inc. v. ProjectCBD.com*,
46 Cal. App. 5th 869 (2020)...............................................................................................20

*Microsoft Corp. v. Yokohama Telecom Corp.*,
993 F. Supp. 782 (C.D. Cal. 1998) ...................................................................................20

*Mogan v. Sacks, Ricketts & Case LLP*,
No. 21-cv-08431-TSH, 2022 WL 94927 (N.D. Cal. Jan. 10, 2022) .....................................9

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002)........................................................................................................6, 7

*Neville v. Chudacoff*,
160 Cal. App. 4th 1255 (2008)......................................................................................6, 7, 8

*Nygård, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008)..........................................................................................12

*O'Keefe v. Kompa*,
84 Cal. App. 4th 130 (2000)...........................................................................................2, 14

*Pacific Gas & Elect. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990)......................................................................................................14

*Reader's Digest Assn. v. Super. Ct.*,
37 Cal. 3d 244 (1984)........................................................................................................19

*Reeves v. ABC*,
719 F.2d 602 (2d Cir. 1983)...............................................................................................20

*Rollenhagen v. City of Orange,*
   116 Cal. App. 3d 414 (1981) ........................................................................................ 19

*Rubin v. Green,*
   4 Cal. 4th 1187 (1993) ............................................................................................ 2, 14

*Safari Club Int'l v. Rudolph,*
   862 F.3d 1113 (9th Cir. 2017) ............................................................................... 9, 11

*Silberg v. Anderson,*
   50 Cal. 3d 205 (1990) ................................................................................................. 14

*Sipple v. Found. for Nat'l Progress,*
   71 Cal. App. 4th 226 (1999) ....................................................................................... 19

*Stewart v. Rolling Stone, LLC,*
   181 Cal. App. 4th 664 (2010) ..................................................................................... 12

*Thomas v. L.A. Times Comm's, LLC,*
   189 F. Supp. 2d 1005 (C.D. Cal. 2002) ...................................................................... 13

*United Guar. Mortg. Indem. Co. v. Countrywinde Fin. Corp.,*
   660 F. Supp. 2d 1163 (C.D. Cal. 2009) ...................................................................... 23

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
   190 F.3d 963 (9th Cir. 1999) ........................................................................................ 5

*Weingarten v. Block,*
   102 Cal. App. 3d 129 (1980) ....................................................................................... 12

*Wilson v. Cable News Network, Inc.,*
   7 Cal. 5th 871 (2019) .................................................................................................... 8

*Wong v. Tai Jing,*
   189 Cal. App. 4th 1354 (2010) .................................................................................... 18


**U.S. Constitution**
   First Amendment ................................................................................................... 5, 20


**Statutes**

Cal. Civil Code
   § 47(b) ...................................................................................................................... 2, 14
   § 47(b)(2) ....................................................................................................................... 14
   § 47(d) .................................................................................................. 2, 17, 18, 19, 20
   § 1667 ............................................................................................................................ 17


Cal. Code of Civil Procedure
   § 425.16 ................................................................................................................... 5, 6, 9
   § 425.16(a) ................................................................................................................... 1, 6
   § 425.16(b) ....................................................................................................................... 2
   § 425.16(b)(1) .................................................................................................................. 5

§ 425.16(e) ..................................................................................................6, 12
§ 425.16(e)(1) ...................................................................................................6
§ 425.16(e)(2) ...........................................................................................6, 7, 8
§ 425.16(e)(4) ..............................................................................................6, 12
§ 1001(a) ...........................................................................................................17
§ 1001(d) ..........................................................................................................17
§ 1002 ...............................................................................................................17

Cal. Gov. Code
§ 12964.5 ......................................................................................................2, 16
§ 12964.5(b)(1)(A) ...........................................................................................16
§ 12964.5(b)(2) .................................................................................................16

**Miscellaneous**

*Unicorn*, Investopia (updated Apr. 2, 2024),
         https://www.investopedia.com/terms/u/unicorn.asp .......................................................3

## I.     INTRODUCTION

Christian Lanng's First Amended Countercomplaint ("FACC") is a desperate attempt to distract from the severe abuse he inflicted on Plaintiff and Counter-Defendant Jane Doe. While Lanng's FACC tries to recast his years of sadistic sexual assault, trafficking, and torture of Jane Doe as an innocent "romantic relationship" in which he did nothing wrong, Lanng admits he agreed to pay her $10 million in a settlement agreement. ***No one agrees to pay $10 million when they have done nothing wrong.*** Lanng's former employer Tradeshift clearly did not believe he did nothing wrong. Last year, it terminated Lanng as CEO citing "a pattern of complaints that have been raised against [Lanng] relating to serious sexual misconduct which is exceptionally concerning." ECF No. 1-1 ¶ 14 (Amended Complaint). Tradeshift also objected that Lanng had "[f]ailed to adhere to all of [his] agreed payments under [his] settlement agreement" with Jane Doe. *Id.* And that's correct—despite repeatedly promising to pay Jane Doe $10 million, he did not do so.

Lanng's FACC represents his latest effort to bully and intimidate Jane Doe and the attorneys who seek to hold Lanng responsible for his gruesome abuse and exploitation of her. Lanng tries to portray himself as the victim. But Christian Lanng is no victim. And his FACC is cut from the same cold, controlling, calculating cloth from which he has operated for years. After filing the FACC, Lanng contacted the *New York Post* to argue his case in the press, while leveling inaccurate and petty attacks against Jane Doe. A man of conscience, or at least possessing a modicum of self-awareness, might pause before attacking a victim when that man himself has committed sexual assault, battery, torture, sex trafficking, and other acts of depravity. But not Christian Lanng.

Lanng's FACC may serve as a piece of cynical public relations spin, but as a legal document, it is not just legally meritless, but a quintessential "SLAPP" suit that California's anti-SLAPP statute was designed to address. *See* C.C.P. § 425.16(a). SLAPP is an acronym that stands for "Strategic Lawsuit Against Public Participation." Lanng's FACC aims to punish Jane Doe and her counsel for standing up to him. The anti-SLAPP statute applies to all of Lanng's counterclaims against Jane Doe and her attorneys (collectively the "Counter-Defendants"). Each of the counterclaims is based on Counter-Defendants' alleged prelitigation and litigation-related

1    statements and conduct in furtherance of petition rights. Because the anti-SLAPP statute applies, the

2    burden shifts to Lanng to establish that his counterclaims have merit. *See* C.C.P. § 425.16(b).

3    But his counterclaims have no merit. Rather, they all are barred by the litigation privilege—

4    a predictable result considering Lanng has sued not just Jane Doe but also her attorneys. Civil Code

5    section 47(b) creates an *absolute* privilege for communications with "some relation to judicial

6    proceedings." *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993). The privilege extends beyond court

7    filings to "conduct outside the courtroom," including "precomplaint activities" such as demand

8    letters, *O'Keefe v. Kompa*, 84 Cal. App. 4th 130, 134–35 & n.6 (2000). All of the conduct alleged in

9    the FACC is covered by the privilege: the filing of Jane Doe's lawsuit; pre-litigation attempts to

10   reach a settlement, including communications beseeching Lanng to belatedly honor settlement

11   obligations he had flouted so that litigation could be avoided; and alleged statements in the media

12   about Jane Doe's claims against Lanng (which he hypocritically complains about despite his own

13   outreach to the *New York Post*).

14   All of Lanng's counterclaims suffer from additional defects too. For example, his breach of

15   contract claim is based on an agreement that he breached by failing to honor his payment

16   obligations. Lanng also relies on non-disclosure and non-disparagement provisions that are void

17   under California's 2021 Silenced No More Act, which prohibits people like Lanng from trying to

18   silence sexual harassment and assault victims. *See* Cal. Gov. Code § 12964.5. As an additional

19   example, Lanng's defamation claim fails because the Counter-Defendants did not make the

20   allegedly defamatory remarks that Lanng ascribes to them and, even if they had, those remarks

21   would be barred by the fair report privilege in California Civil Code section 47(d). These are but a

22   few examples. Each of Lanng's counterclaims fails as a matter of law for many separate reasons.

23   Counter-Defendants' anti-SLAPP motion should therefore be granted in full, and the Court

24   should dismiss Lanng's FACC with prejudice and without leave to amend.

25   ///

26

27

28

Case No. 4-24-cv-00166-JST
SPECIAL MOTION TO STRIKE FIRST
AMENDED COUNTERCOMPLAINT

## II.   STATEMENT OF PERTINENT FACTS

### A.   Christian Lanng and Jane Doe

Christian Lanng co-founded Tradeshift, "a unicorn status[1] technology company." ECF No. 1-1 ¶ 92. Lanng served as Tradeshift's CEO from 2010 until Tradeshift fired him on September 1, 2023 due to, according to Tradeshift, "serious allegations of sexual assault and harassment" and "gross misconduct on multiple grounds." Declaration of Jeffrey A. Payne ("Payne Decl.") ¶ 3 & Ex. 3; ECF No. 1-1 ¶ 14.

Counter-Defendant Jane Doe was hired in January 2014 to serve as Lanng's executive assistant. ECF No. 30-1 ¶ 3. Shortly after Doe was hired, Lanng forced her to sign a so-called "Slave Contract," which referred to Doe as a "Slave" and Lanng as the "Master." ECF No. 1-1 ¶¶ 1-6; ECF No. 30-1 ¶ 4. The Slave Contract required Doe to submit to harmful and degrading practices, including sexual abuse and physical punishment. ECF No. 30-1 ¶ 4 (Declaration of Jane Doe in opposition to motion to compel arbitration). Scared of Lanng and fearful losing her job if she did not assent, Doe signed the Slave Contract, as did Lanng. *Id.* In the ensuing years, Lanng subjected Doe to routine sexual, physical, and psychological abuse, including being bound against her will, penetrated with various inanimate objects, and beaten to the point of bleeding. *Id.* ¶ 9. On or about May 30, 2020, Tradeshift terminated Doe as part of a purported "restructuring." *Id.* ¶ 17.

### B.   Lanng's Failure to Pay the $10 Million "Settlement Payment"

In May 2022, Doe reached a $10 million settlement with Lanng, and she signed the agreement (the "Settlement Agreement"). *Id.* ¶ 18; Declaration of Jane Doe ("Doe Decl.") ¶¶ 2–3 & Ex. 1 (Settlement Agreement). Under the Settlement Agreement, Lanng was required to pay Jane Doe a "Settlement Payment" of "USD $10 million … to be paid" in an initial payment of $250,000 and then three installment payments. Ex. 1 § 4; *see also* Doe Decl. ¶¶ 2–4. There were a series of amendments to the Settlement Agreement permitting Lanng to delay paying the Settlement Payment by making extension payments that were "in addition to, and *shall not be*

---

[1] The term "unicorn" "is commonly used in the venture capital industry" to describe "a privately held startup company with a value of $1 billion." *Unicorn*, Investopia (updated Apr. 2, 2024), https://www.investopedia.com/terms/u/unicorn.asp.

1  *credited against*" the $10 million owed. Doe Decl. ¶ 4 & Exs. 2 (§ 2); 3 (§ 2), 4. Although Lanng

2  made extension payments and the initial payment, he still has not paid the full $10 million

3  Settlement Payment, Doe Decl. ¶¶ 3–4; FACC ¶ 51, and the time to do so has passed, Ex. 4 § 1.1.

### C.    Doe's Litigation Against Lanng and Tradeshift

5  By 2023, Doe had retained Counter-Defendants Bryan Freedman and Miles Cooley at the

6  Freedman Taitelman + Cooley, LLC firm ("FTC") as her new counsel. On July 31, 2023, Freedman

7  emailed Lanng's then-attorney Bruce Van Dalsem with a "last chance to resolve [the] matter prior

8  to litigation." Declaration of Bryan J. Freedman ("Freedman Decl.") ¶ 2 & Ex. 5 at 3. Val Dalsem

9  responded the same day that Lanng would "be able to pay [Doe] $10 million no later than August

10  15." Ex. 5 at 1. He also reassured Freedman that Lanng was "still willing to do so to avoid the

11  adverse consequences of a public filing." *Id.*

12  Despite Van Dalsem's representation that payment would be made "no later than

13  August 15," the payment promised by August 15 to pay off the principal $10 million amount Lanng

14  owed was not made. Freedman Decl. ¶ 2; *see* Doe Decl. ¶¶ 3–4. Determined not to let Lanng's

15  termination delay his settlement payment, Freedman reached out to Lanng directly on September 4,

16  just days after Lanng's termination and after learning that Lanng was no longer represented by

17  counsel. Freedman Decl. ¶ 3. Referring back to his conversation with Van Dalsem on July 31,

18  Freedman explained to Lanng that "making payment avoids the filing," reminded him that Van

19  Dalsem had "offered 10m paid by 8/15," and reaffirmed Freedman's prior agreement with Van

20  Dalsem—that "[i]f that [i.e., the Settlement Payment] happened there would be no reason to file."

21  *Id.* & Ex. 6; FACC ¶ 26.

22  When it became clear that Lanng would not be completing the $10 million Settlement

23  Payment as promised, Doe filed a complaint against Christian Lanng, Tradeshift, and others in state

24  court alleging, *inter alia*, sexual assault and battery, sex trafficking and intentional infliction of

25  emotional distress (the "Complaint"). ECF No. 1-1. Specifically, Doe alleged, among other things,

26  that Lanng had raped, sexually abused, tortured, assaulted, and sexually trafficked her for years

27  while she was working as his assistant at Tradeshift. *E.g.*, ECF No. 1-1 ¶¶ 6, 24, 26, 59–60, 87–93,

28  94–102. Tradeshift removed the case to this Court. ECF No. 1.

## III.   THE ANTI-SLAPP STATUTE APPLIES TO ALL OF LANNG'S COUNTERCLAIMS

### A.   California's Anti-SLAPP Statute Applies in Federal Court

The Ninth Circuit has made clear that California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16 ("Section 425.16"), applies in federal cases with state law claims because the statute was "crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972–73 (9th Cir. 1999); *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021).

In federal court, anti-SLAPP motions are divided "into two categories: motions that challenge the legal sufficiency of complaints and motions that challenge the factual sufficiency of complaints. The former of these categories are analyzed pursuant to Rule 12; the latter are analyzed pursuant to Rule 56." *Herring Networks*, 8 F.4th at 1156 (citation omitted).

### B.   The Anti-SLAPP Statute is Construed Broadly

"Resolution of an anti-SLAPP motion involves two steps." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016). Under the first step, a court decides "whether the defendant has made a threshold showing that . . . the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech[.]'" *Equilon Enters. v. Consumer Cause*, 29 Cal. 4th 53, 67 (2002); *Herring Networks*, 8 F.4th at 1155 (same); Code Civ. Proc. § 425.16(b)(1).

"If the defendant satisfies" the first step, "the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks*, 8 F.4th at 1155.[2] "The district court must grant the defendant's motion . . . if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id.* (internal quotation marks omitted). The anti-SLAPP statute must be construed "broadly" to further the purpose of "allowing for early dismissal of meritless First Amendment

---

[2] The Court may strike *portions* of claims under Section 425.16. *City of Colton v. Singletary*, 206 Cal. App. 4th 751, 774 (2012) ("[A] portion of a cause of action may be stricken if it falls within anti-SLAPP protections.").

1    cases aimed at chilling expression through costly, time-consuming litigation." *Id.*; *accord* C.C.P.

2    § 425.16(a) (anti-SLAPP statute is to be "construed broadly").

3        **C.    Counter-Defendants Satisfy the First Step in the Anti-SLAPP Analysis**

4        A defendant need only show that its alleged conduct "fits *one* of the four categories spelled

5    out in section 425.16, subdivision (e)." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (emphasis

6    added). Here, Lanng's entire FACC falls within Sections 425.16(e)(1), (e)(2), and (e)(4).

7            **1.    All of Lanng's Claims Fall Within Sections 425.16(e)(1) and (e)(2)**

8        Sections 425.16(e)(1) and (e)(2) cover "any written or oral statement or writing" made

9    "before" ((e)(1)) or "in connection with an issue under consideration or review by" ((e)(2)) a

10   "judicial body." Courts take an "expansive view of what constitutes litigation-related activities

11   within the scope of section 425.16." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268 (2008).

12   The subsections apply to "statements to persons who are not parties or potential parties to the

13   litigation," as well as *pre*-litigation statements so long as the "statement concerns the subject of the

14   dispute and is made in anticipation of litigation contemplated in good faith and under serious

15   consideration" *Id.* at 1268 (cleaned up). "Under the plain language of section 425.16, subdivision

16   (e)(1) and (2), as well as the case law interpreting those provisions, *all* communicative acts

17   performed by attorneys as part of their representation of a client in a judicial proceeding . . . are *per*

18   *se protected* as petitioning activity by the anti-SLAPP statute." *Contreras v. Dowling*, 5 Cal. App.

19   5th 394, 408-09 (2016) (emphasis added) (internal quotation marks omitted); *see also Bergstein v.*

20   *Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 811 (2015) (allegedly tortious activity

21   "centered in defendants' role as counsel" fell within Section 425.16(e)).

22       Each of Lanng's counterclaims arises under Sections 425.16(e)(1) and/or (e)(2). His first

23   counterclaim for breach of contract alleges that Doe breached a Settlement Agreement designed to

24   release any legal "claims Jane Doe may have ever had against Lanng" by "filing the instant [sexual

25   misconduct] action against Lanng and other Defendants," and by making allegedly untrue

26   statements, "through her counsel Bryan Freedman, to Finans, a Danish media outlet," that described

27   the allegations Doe made in her sexual misconduct Complaint. FACC ¶¶ 54, 59, 60. With respect to

28   Doe's filing the underlying action, the California Supreme Court has squarely held that

counterclaims alleging that a party had breached a contract fell "squarely within the ambit of the anti-SLAPP statute[]" because the "constitutional right of petition encompasses the basic act of filing litigation." *Navellier*, 29 Cal. 4th at 90.

Lanng alleges that Freedman reported to Finans "that Lanng 'sexually abused and victimized Jane, an employee, for years and then did not pay a dime in settlement proceeds under the agreement that he signed. He was fired from Tradeshift in part for this very breach of contract . . . ." *Id.* Freedman has never spoken with Finans, and the Finans article Lanng references does not contain these quoted statements. Freedman Decl. ¶ 5; *see generally* Ex. 10 (certified translation of Finans article). But even if he had, each of these statements *directly* describe allegations Doe made throughout her Complaint.[3] Thus, Freedman's purported quote to Finans would have been (were it made) in connection with issues under review by a judicial body. C.C.P. § 425.16(e)(2). And because Lanng's fifth counterclaim for defamation likewise relies entirely on the same statements Freedman allegedly made to Finans, FACC ¶ 90 (relating the same statements, which Lanng alleges Freedman made "after the filing of [Lanng's] Counterclaim"), that claim falls within Section 425.16(e)(2) for the same reason.

Lanng's second counterclaim for extortion falls within Section 425.16(e)(2) because it is based on the parties' prelitigation negotiations. FACC ¶¶ 62–70. Such prelitigation "communications in connection with anticipated litigation are considered to be under consideration or review by a … judicial body." *Neville*, 160 Cal. App. 4th at 1263 (cleaned up); *accord Flickinger v. Finwall*, 85 Cal. App. 5th 822, 832–33 (2022) (prelitigation communications covered by anti-SLAPP statute so long as they relate to claims that party was seriously considering bringing). Here, Jane Doe and her attorneys did not merely threaten to file suit against Lanng if he failed to honor his contractual obligations—they actually did so.

---

[3] *E.g.*, ECF No. 1-1 ¶¶ 6 (alleging "[s]everal years of sexual abuse, torture and assault of Jane Doe by Lanng"), 14–15 (alleging Tradeshift terminated Lanng in part for failure to make "agreed payments under" his settlement agreement with Doe); 24 (Doe "suffered years of sex trafficking, rape, sexual abuse, torture assault [sic]"), 26 (alleging "Lanng raped, sexually assaulted, tortured and trafficked Jane Doe for a period of years"), 59–60 (same), 87–93 (claim for sexual assault), 94–102 (claim for sex trafficking).

Lanng's third counterclaim for intentional infliction of emotional distress ("IIED") depends in part on the allegations underlying his extortion and defamation claims. FACC ¶¶ 72 (Freedman's text message to Lanng), 76 (Freedman's alleged statements to Finans). These aspects of the IIED claim therefore fall within Section 425.16(e)(2) for the same reasons the extortion and defamation claims do. The remainder of Lanng's IIED claim relies on allegations that Freedman threatened Lanng by showing a redacted copy of a slave contract during an interview Freedman gave to TMZ regarding claims his firm was asserting in an entirely separate matter against different defendants on behalf of different clients. FACC ¶¶ 28, 73. Freedman's statements themselves and the demand letter linked on the TMZ website displaying that video both confirm that Freedman's comments about the slave contract in that interview were made in connection with "anticipation of litigation contemplated in good faith and under serious consideration" (albeit in an entirely separate case), and thus fall within Section 425.16(e)(2). *Neville*, 160 Cal. App. 4th at 1268 (internal quotation marks omitted); Ex. 11; *see also* Freedman Decl. ¶ 5 (statements given to TMZ related to anticipated litigation seriously contemplated in good faith).[4]

Lanng's fourth counterclaim for false light alleges that Counter-Defendants created unspecified "fraudulent social media accounts" to make unspecified "false allegations" regarding Doe's underlying complaint in this case. FACC ¶ 82. Any purported discussion of allegations on the internet would fall squarely under Section 425.16(e)(2) as written statements regarding allegations about Lanng's pattern of abuse that underlay the claims in Jane Doe's Complaint—even if the statements were allegedly made "to persons who are not parties or potential parties to the litigation." *Neville*, 160 Cal. App. 4th at 1270.

---

[4] Lanng's mere allegation that Freedman made these comments with the ulterior motive to threaten him do not change this result at step one in the anti-SLAPP analysis. *E.g.*, *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 881, 892 (2019) (plaintiff's claim arose from protected conduct under step one "notwithstanding the plaintiff's allegation that the actions were taken for an improper purpose"); *Hansen v. Calif. Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1545 (2008) ("[C]onduct that would otherwise be protected by the anti-SLAPP statute does not lose its coverage simply because it is *alleged* to have been unlawful.") (emphasis added).

## 2.    The *Flatley* Anti-SLAPP Exception Does Not Apply Here

The FACC suggests Lanng will argue the anti-SLAPP statute does not apply to his extortion claim based on the exception created by *Flatley v. Mauro*, 39 Cal. 4th 299 (2006). *See* FACC ¶ 63. But Lanng does not remotely satisfy the stringent requirements for the *Flatley* exception. *Flatley* "created a very narrow exception to the anti-SLAPP statute" where there is *no dispute* that the defendant engaged in "criminal conduct." *Mogan v. Sacks, Ricketts & Case LLP*, No. 21-cv-08431-TSH, 2022 WL 94927, at *12 (N.D. Cal. Jan. 10, 2022) (emphases added) (citing *Flatley*, 39 Cal. 4th at 320); *accord Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1121 (9th Cir. 2017).[5] The *Flatley* exception applies only if a defendant has "conceded" that he engaged in criminal misconduct or, alternatively, if the plaintiff has "provided *uncontroverted* evidence *conclusively* showing" that the defendant acted criminally "as a matter of law." *Geragos v. Abelyan*, 88 Cal. App. 5th 1005, 1025 (2023) (emphases added). By contrast, when "the legality of [a defendant's] exercise of a constitutionally protected right [is] in dispute in the action, the threshold element in a section 425.16 inquiry has been established" and the Court must proceed to step two of the anti-SLAPP analysis. *Governor Gray Davis Com. v. Am. Taxpayers All.*, 102 Cal. App. 4th 449, 460 (2002); *accord Flatley*, 39 Cal. 4th at 316. "To find otherwise would eviscerate the anti-SLAPP statute's protections because the plaintiff could preclude the statute's application simply by alleging criminal conduct by the defendant." *Safari Club*, 862 F.3d at 1121. In addition to these general requirements for the *Flatley* exception, courts addressing cases involving allegedly extortionate demands by attorneys have consistently refused to apply the *Flatley* exception unless the attorneys' demands/threats are *unrelated* to their client's dispute with the plaintiff—namely, threats to report the plaintiff to law enforcement if the attorney's client's civil demands are not met.[6]

---

[5] To the extent any of Lanng's other counterclaims are premised in part on the same allegations underlying his extortion counterclaim, *see*, *e.g.*, FACC ¶¶ 72–73 (IIED claim), those counterclaims also fail to qualify for the *Flatley* exception for the same reasons as his extortion counterclaim. Indeed, Lanng cannot show the *Flatley* exception applies to any of his counterclaims.

[6] *E.g.*, *Harmoni Int'l Spice, Inc. v. Bai*, No. CV1600614BROASX, 2016 WL 6542731, at *15 (C.D. Cal. May 24, 2016) (surveying "cases decided in the wake of *Flatley*" applying the *Flatley* exception, "each of which involved a demand letter not only threatening to file suit, but also threatening to report the individual's allegedly wrongful conduct to prosecuting authorities"); *see*

1    *Flatley* itself emphasized just how narrow the exception is and stressed that its holding was

2    "based on the specific and extreme circumstances of this case." *Id.* at 332 n. 16. The Court added

3    that its "opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation

4    negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal

5    behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." *Id.*

6    "[A] person, generally speaking, has a perfect right to prosecute a lawsuit in good faith, or to

7    provide information to the newspapers." *Id.* (internal quotation marks omitted).

8         Post-*Flatley* case law shows how extraordinarily narrow the exception is. For example, in

9    *Malin*, the Court of Appeal rejected application of the *Flatley* exception even though the attorney

10    defendant's pre-litigation demand letter not only threatened a lawsuit but also accused the plaintiff

11    of "misus[ing] company resources to arrange sexual liaisons with older men, including 'Judge [first

12    and last name omitted], a/k/a 'Dad' (see enclosed photo), and many others." *Malin v. Singer*, 217

13    Cal. App. 4th 1283, 1288–89 (2013). The defendant attorney's letter attached a draft complaint that

14    "contained several blank spaces and redactions" where "alleged sexual partners" were to be

15    named—including the Judge—and threatened that "[w]hen the Complaint is filed with the Los

16    Angeles Superior Court, there will be no blanks in the pleading." *Id.* at 1289.

17         Here, Lanng cannot satisfy any of the stringent requirements for application of the *Flatley*

18    exception—let alone all of them, as he must to prove that the exception applies. *See Cross v.*

19    *Cooper*, 197 Cal. App. 4th 357, 385 (2011) (if plaintiff invokes *Flatley* exception, "plaintiff bears

20    the burden of conclusively proving the illegal conduct," whereas, conversely, a "defendant need not

21    show as a matter of law that his or his conduct was legal"). <u>First</u>, the Counter-Defendants do *not*

22    concede that they engaged in any conduct illegal as a matter of law. To the contrary, they

23    vigorously and categorically deny Lanng's scurrilous accusations. The Law Firm Defendants

24    ─────────────────

25    *also Geragos*, 88 Cal. App. 5th at 1024 (holding *Flatley* exception did not apply even though the
      defendant attorney had threatened to report the plaintiff to the State Bar, because the threatened

26    "communications [to the Bar] were related to the alleged injury his client suffered,"
      misappropriation of client funds); *Flickinger*, 85 Cal. App. 5th at 838 (holding *Flatley* exception

27    inapplicable because "we view defendant's implied threat to make public allegations that plaintiff
      was involved in illegal kickback schemes and money laundering as reasonably connected to the

28    parties' dispute").

Case No. 4-24-cv-00166-JST
SPECIAL MOTION TO STRIKE FIRST
AMENDED COUNTERCOMPLAINT

1  simply sought to make Lanng accept responsibility for his wanton abuse of their client, Jane Doe,

2  and to make Lanng pay her the money which he promised but reneged on paying. Freedman did not

3  threaten to expose Lanng to the media, he merely passed on to Lanng that he had been contacted by

4  a media outlet that wanted to speak with them both and pointed out that, once litigation is filed, the

5  media will cover cases however they want. FACC ¶ 26. Lanng's FACC draws unwarranted

6  inferences in trying to manufacture an extortion counterclaim. *See City of Montebello v. Vasquez*, 1

7  Cal. 5th 409, 424 (2016) (*Flatley* exception does not apply where extortion allegation "depends on

8  inferences to be drawn from circumstantial evidence").

9      <u>Second</u>, Lanng cannot meet his burden of adducing admissible and "uncontroverted

10  evidence conclusively showing" that the Counter-Defendants engaged in conduct that is illegal as a

11  matter of law. *Geragos*, 88 Cal. App. 5th at 1025. The case law makes clear that where the legality

12  of a defendant's conduct is "in dispute" or "depends on inferences to be drawn from circumstantial

13  evidence," the *Flatley* exception cannot apply and the case must proceed to the second step of the

14  anti-SLAPP analysis. *Id.*; *City of Montebello*, 1 Cal. 5th at 424; *see also Flatley*, 39 Cal. 4th at 316;

15  *Safari Club*, 862 F.3d at 1121. Here, Lanng does not come close to meeting this burden.

16      <u>Third</u>, Lanng relies on purported violations of the Professional Rules of Conduct as a

17  putative basis for the *Flatley* exception. FACC ¶¶ 63, 68. But the case law makes clear that only

18  *criminally* illegal conduct suffices, whereas alleged violations of the Professional Rules of Conduct

19  or other statutory, regulatory, or common law violations cannot trigger the *Flatley* exception.

20  *Geragos*, 88 Cal. App. 5th at 1028; *Bergstein*, 236 Cal. App. 4th at 806.[7]

21

22

-------

[7] Even with respect to the inapposite Professional Rules of Conduct, Lanng's accusations are

23  meritless. When Lanng was represented by counsel, the Law Firm Defendants communicated with

24  his counsel as the parties tried to resolve their dispute. But after Tradeshift fired Lanng on
    September 1, 2023, based on "serious allegations of sexual assault and harassment" against him, as

25  Tradeshift's PR release put it, Lanng's attorneys ceased representing him. Once Lanng was no
    longer represented by counsel, the only way for the Law Firm Defendants to continue their

26  discussions was to communicate with him directly. There was nothing wrong with doing that. And
    when Lanng mentioned on September 6, 2023, that he was lining up new counsel, Freedman

27  patiently waited for information on that counsel and paused discussions for over a month, until

28  October 10, when Lanng disclosed that he did not "have a new counsel." Ex. 6 at 5–6.

1    <u>Fourth</u>, the Counter-Defendants did not threaten to report Lanng to law enforcement or other

2    governmental or regulatory authorities, as occurred in *Flatley* and subsequent cases applying the

3    *Flatley* exception. *Flatley*, 39 Cal. 4th at 329–31 ("[T]he threat to disclose criminal activity entirely

4    unrelated to any alleged injury . . . exceeded the limits of respondent's representation of his client

5    and is itself evidence of extortion."); *see also Harmoni Int'l Spice*, 2016 WL 6542731 at *15

6    (discussing subsequent cases).[8] The *Flatley* exception does not apply.

7            **3.    All of Lanng's Claims Also Fall Within Section 425.16(e)(4)**

8            Under Section 425.16(e)(4), Counter-Defendants must show their speech and conduct

9    underpinning a cause of action occurred in connection with an "issue of public interest." "Like the

10   SLAPP statute itself, the question whether something is an issue of public interest must be

11   construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 464

12   (2012). "[A]n issue of public interest" under Section 425.16(e) "is any issue in which the public is

13   interested." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). In determining

14   whether an issue is a matter of public interest, courts may consider "whether the subject of the

15   speech or activity was a person or entity in the public eye or could affect large numbers of people

16   beyond the direct participants; and whether the activity occur[red] in the context of an ongoing

17   controversy, dispute or discussion." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145

18   (2019) (cleaned up); *accord Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).

19           Section 425.16(e)(4) is satisfied here because Lanng is a person in the public eye whose

20   termination from Tradeshift for accusations of sexual assault were reported in the media.

21   *FilmOn.com Inc.*, 7 Cal. 5th at 145. "[T]here is a public interest which attaches to people who, by

22   their accomplishments, mode of living, professional standing or calling, create a legitimate and

23   widespread attention to their activities." *Stewart v. Rolling Stone, LLC*, 181 Cal. App. 4th 664, 677–

24   78 (2010); *see also Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1248, 1264–66 (2017) (first step

25   ─────────────────────

26   [8] Furthermore, even if the Law Firm Defendants had threatened to report Lanng to law enforcement
     for assault, sexual battery and other crimes, such threats would not have triggered the *Flatley*

27   exception because they would been "related to the alleged injury [their] client suffered[.]" *Geragos*,
     88 Cal. App. 5th at 1024 (holding *Flatley* exception not triggered despite defendant's threats to

28   report plaintiff to the State Bar because such threats were related to defendant's claims).

in anti-SLAPP analysis met where parties were "in the public eye").[9] Lanng boasts in his FACC of

being "the CEO and co-founder of a unicorn status technology company originally from Denmark."

FACC ¶ 92; *Thomas v. L.A. Times Comm's, LLC*, 189 F.Supp.2d 1005, 1011 (C.D. Cal. 2002) (a

plaintiff can reveal himself to be a person in the public eye by virtue of the allegations in his

complaint). In 2012, TechCrunch described Lanng "as unashamedly noisy as the brashest Silicon

Valley entrepreneur" who "founded one of the most promising business start-ups in the world" at

that time. Ex. 12 at 1–2. Leaning on his status as Tradeshift's CEO, Lanng frequently inserted

himself into the public discourse on technology and global commerce, including by participating as

a member of the World Economic Forum's Global Agenda Council, Ex. 13; appearing in multiple

podcast and news interviews, Ex. 14; and contributing to news outlets like Forbes, CNBC, and

Bloomberg, Exs. 11–12. By thrusting himself into the public eye, Lanng secured his status as a

public figure.

      Tradeshift terminated Lanng a few months before Doe filed her complaint because of

"'serious allegations of sexual assault and harassment' and 'gross misconduct on multiple

grounds.'" Ex. 7 at 1, 9, 12. By coming forward publicly about her claims later in 2023, Doe and

her counsel contributed to and furthered the public conversation about Lanng's leadership role and

legitimacy in technology and global economics, particularly in light of the then-existing public

controversy about Lanng's sexual misconduct. *FilmOn.com Inc.*, 7 Cal. 5th at 154; *see, e.g.*, Ex. 17.

## IV.    LANNG CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING

      "If the defendant meets its burden [at step one of the anti-SLAPP analysis], the burden shifts

to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims" that

fall within the anti-SLAPP statute's ambit. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th

Cir. 2013). Lanng cannot satisfy this burden for multiple independent reasons, and thus each of his

counterclaims should be stricken.

---

[9] Whether a person is a public person is a question to be decided by the Court. *Weingarten v. Block*, 102 Cal. App. 3d 129, 134–35 (1980).

1    **A.    All of the Claims Are Barred By the Broad, Absolute Litigation Privilege**

2    "For well over a century, communications with 'some relation' to judicial proceedings have

3    been *absolutely immune* from tort liability by the privilege codified as [Civil Code]

4    section 47(b)(2)." *Rubin*, 4 Cal. 4th at 1193 (emphasis added).[10] The privilege applies to statements

5    (1) "made in [the course of] a judicial proceeding, (2) by litigants or other authorized participants,

6    (3) [that] aim to achieve the litigation's objects, and (4) have some logical connection or relation to

7    the" litigation. *O'Keefe*, 84 Cal. App. 4th at 134 (citing *Silberg v. Anderson*, 50 Cal. 3d 205, 212

8    (1990)). The privilege extends beyond court filings to "conduct outside the courtroom," including

9    "precomplaint activities," *O'Keefe*, 84 Cal. App. 4th at 134–35 & n.6, even if "no function of the

10   court or its officers is involved," *Silberg* 50 Cal. 3d at 212. The Court determines whether the

11   privilege applies as a matter of law, *see McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal.

12   App. 3d 961, 973 (1987), and "[a]ny doubt as to whether the privilege applies is resolved in favor of

13   applying it," *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 23 (2002). The litigation

14   privilege applies with full force here. *Pacific Gas & Elect. Co. v. Bear Stearns & Co.*, 50 Cal. 3d

15   1118, 1132 (1990) ("The policy of encouraging free access to the courts is so important that the

16   litigation privilege extends beyond claims of defamation to . . . any action except one for malicious

17   prosecution.").

18   As discussed in section III.C.1. above, *supra* at 7 & n.4, *all* of the conduct alleged in

19   Lanng's counterclaims relates entirely to—and directly supported the objects of—Jane Doe's

20   underlying complaint in this case: Attempting to negotiate a pre-litigation settlement of Doe's

21   claims (FACC ¶¶ 17–20, 53–69), including Freedman's communications with Lanng imploring him

22   to honor his settlement obligations to avoid a public filing (FACC ¶¶ 25–26, 64–67); alleged

23   commentary on the internet about Lanng's pattern of abuse (FACC ¶¶ 21–23, 29, 81–82); filing the

24   complaint (FACC ¶¶ 30, 59–60); and (allegedly) describing Doe's allegations to the media (FACC

25

26   _____

27   [10] The "litigation privilege is absolute," such that, if it applies, it does not matter "whether the
     communication was made with malice or the intent to harm." *Kashian v. Harriman*, 98 Cal. App.

28   4th 892, 913 (2002).

1  ¶¶ 51, 90). Thus, all of Lanng's counterclaims are barred by Section 47(b)'s absolute litigation

2  privilege.

3      The litigation privilege applies to Counter-Defendants' conduct and alleged conduct prior to

4  the filing of Doe's Complaint (including Freedman's messages to Lanng). "Many cases have

5  explained that section 47(b) encompasses not only testimony in court and statements made in

6  pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for

7  anticipated litigation or to investigate the feasibility of filing a lawsuit." *Hagberg v. Calif. Fed.*

8  *Bank FSB*, 32 Cal.4th 350, 361 (2004). "The privilege has been broadly applied to demand letters

9  and other prelitigation communications by attorneys." *Blanchard v. DIRECTV, Inc.*, 123 Cal. App.

10  4th 903, 919 (2004) (holding litigation privilege barred claims for extortion, unfair competition and

11  civil rights violations). The privilege applies to a "prelitigation communication" if it "relates to

12  litigation that is contemplated in good faith and under serious consideration." *Geragos*, 88 Cal.

13  App. 5th at 1032. Here, litigation was not just contemplated in good faith when those prelitigation

14  communications occurred, Defendants actually *filed a lawsuit* against Lanng and others a few

15  months later. Unsurprisingly, cases rejecting the *Flatley* exception have consistently held that all

16  manner of claims, including extortion claims, based on pre-litigation demands and threats are barred

17  by the litigation privilege. *E.g.*, *Malin*, 217 Cal. App. 4th at 1301–02; *Geragos*, 88 Cal. App. 5th at

18  1031–32; *Flickinger*, 85 Cal. App. 5th at 840.

19      **B.    Lanng's Claims Are Barred for Additional, Independent Reasons**

20          **1.    Lanng's Breach of Contract Claim Fails as a Matter of Law**

21      Lanng contends Counter-Defendants "materially breached the" release and confidentiality

22  provisions of the Settlement Agreement "[b]y filing the [underlying] action against Lanng." FACC

23  ¶¶ 55–56, 59–60. But to establish a claim for breach of contract, Lanng must establish his *own*

24  "performance or excuse for nonperformance." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal.

25  App. 5th 1214, 1230 (2023). Lanng pays lip service to this requirement by alleging that he "has

26  performed his obligations under the Settlement Agreement, including making the Settlement

27  Payment." FACC § 58. This allegation is demonstrably false. The Settlement Agreement and

28  Lanng's FACC define the "Settlement Payment" as "the *total amount* to be paid by Lanng"—i.e.,

"USD $10 million." FACC Ex. A §§ 4–4.3 (emphasis added); FACC ¶ 54 (confirming Lanng's

understanding that he "was to make settlement payments to Counter-Defendant Jane Doe totaling

$10 million ('Settlement Payment') *in exchange* for a full and unconditional release of all claims

Jane Doe may have ever had against Lanng") (emphasis added). There is no dispute that Lanng

never paid the total $10 million "Settlement Payment." Doe Decl. ¶¶ 3–4; Freedman Decl. ¶ 2; *see*

FACC ¶ 51. Lanng, who failed to perform and has no excuse for not performing, cannot establish a

claim for breach of contract as a matter of law.

Moreover, the confidentiality provisions in the Settlement Agreement were void from the

start under California statutes and public policy. California's "Silenced No More Act," signed into

law on October 7, 2021 (SB 331), makes it "an unlawful employment practice for an employer or

former employer to include in any agreement *related to* an employee's separation from employment

any provision that prohibits the disclosure of information about unlawful acts in the workplace."

Cal. Gov. Code § 12964.5(b)(1)(A) (emphasis added); *see also id.* § 12964.5(b)(2) ("Any provision

in violation of [the subsection] is against public policy and shall be unenforceable."). The

confidentiality and non-disparagement provisions underlying Lanng's breach of contract claim fall

squarely within this prohibition: they purport to prohibit Doe from disclosing the repeated acts of

sexual violence she endured during her employment with Tradeshift. *See* FACC ¶¶ 56 (quoting

Agreement's confidentiality provisions) & 60 (alleging Doe's claims of sexual abuse breached

Agreement's confidentiality provisions).[11]

---

[11] To be sure, Tradeshift and its attorneys wanted the Settlement Agreement to *appear* as though it
does not "relate[] to" Doe's separation from employment. *See, e.g.*, Ex. 1 Recitals ("[C]ertain
disputes have arisen between [Doe] and Lanng arising out of their personal relationship and not
their employment with Tradeshift, Inc."). But the plain language of the Agreement ties it to Doe's
employment. Most tellingly, the Agreement prohibits Doe from disclosing any "Confidential
Information," *id.* § 11.1, which it then defines as "any allegation by [Doe] of any alleged tort, crime,
misconduct, or other wrongdoing by Lanng . . . *while employed by Tradeshift, Inc.*," *id.* § 10
(emphasis added). The Agreement's "Non-Disparagement" provisions likewise prohibit Doe from
even suggesting wrongdoing on the part of "Lanng or . . . [his] businesses . . ."—which includes
Tradeshift. *Id.* § 12. Other provisions of the Agreement fully give up the game: (i) Tradeshift is an
express third-party beneficiary to the Settlement Agreement's release, which broadly encompasses
any of Doe's claims arising out of her employment at Tradeshift, *see id.* § 5; (ii) Tradeshift is
expressly given the right to enforce the terms of the Agreement, *see id.*; and (iii) the Settlement
Agreement includes an Age Discrimination in Employment Act of 1967 waiver, *id.* § 18. In sum,
the actual terms of the Agreement make clear that it is "*related to* [Doe's] separation from

---

1    The Agreement's confidentiality and non-disparagement provisions also directly contravene

2  California's Stand Together Against Non-Disclosure Act (or "STAND" Act, SB 820). By passing

3  that act in 2018, the California legislature unequivocally reaffirmed that settlement provisions

4  purporting to prohibit victims of sexual abuse from disclosing the facts underlying their claims are

5  void. *See* C.C.P. § 1001(a) ("a provision within a settlement agreement that prevents or restricts the

6  disclosure of factual information related to a claim filed in a civil action or a complaint filed in an

7  administrative action . . . is prohibited" where such information concerns sexual assault, sexual

8  harassment, and workplace harassment); *id.* § 1001(d) (such non-disclosure provisions "entered into

9  on or after January 1, 2019, [are] void as a matter of law and against public policy"); *id.* § 1002

10  (prohibiting non-disclosure provisions that would prohibit disclosure of facts underlying a claim for

11  "[a]n act that may be prosecuted as a felony sex offense"). Here, Lanng invokes the Settlement

12  Agreement's confidentiality provisions in an attempt to punish Doe for allegedly disclosing facts

13  "related to a claim filed in a civil action"—*i.e.*, Doe's claims in this action to enforce the

14  Agreement. *See* FACC ¶¶ 51, 56, 60. Under the plain language of Code of Civil Procedure

15  § 1001(a), filing this action rendered the Agreement's confidentiality provisions void *ab initio*.

16    And in any event, there is no reasonable interpretation of the policies underlying the

17  Silenced No More Act and STAND Act that would permit Lanng's gambit here. *See* Civ. Code

18  § 1667 ("That is not lawful which is . . . [c]ontrary to the policy of express law, though not

19  expressly prohibited."); *accord, e.g.*, *Cariveau v. Halferty*, 83 Cal. App. 4th 126, 132 (2000)

20  ("Public policy, in the context of a court's refusal to enforce a contract term, may be based on the

21  policy expressed in a statute . . . , or may be implied from the language of such statute."). To

22  reiterate: Doe filed her underlying lawsuit because Lanng refuses to make good on his promises.

23  The Legislature did not expressly prohibit settlements from silencing victims of sexual assault, only

24  to allow the perpetrators to collaterally punish those victims when they disclose the facts of their

25  assault after being forced to file suit to enforce the settlement. The Court accordingly should refuse

26  to enforce the Settlement Agreement's confidentiality and non-disclosure provisions.

27

28

---

employment" with Tradeshift, such that the confidentiality and non-disparagement provisions that
Lanng now attempts to enforce are void under Government Code section 12964.5.

1

## 2.    Lanng's Defamation Claim Is Barred for Additional Reasons

2    Lanng's defamation counterclaim fails for two additional reasons: (1) the allegedly

3    defamatory remarks were not published by Counter-Defendants; and (2) even if they were, the

4    defamation counterclaim would be absolutely barred by the fair report privilege, Civ. Code § 47(d).

5    Under California law, "defamation 'involves the intentional publication of a statement of

6    fact which is false, unprivileged, and has a natural tendency to injure or which causes special

7    damage.'" *Herring Networks*, 8 F.4th at 1157. Publication is therefore an indispensable element of a

8    defamation claim. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010). Lanng's defamation

9    counterclaim alleges that after he filed his counterclaims, Counter-Defendant Freedman reported to

10   "a Danish media outlet" that Lanng had "sexually abused and victimized Jane, an employee, for

11   years and then did not pay a dime in settlement proceeds under the agreement that he signed. He

12   was fired from Tradeshift in part for this very breach of contract . . . ." FACC ¶ 90. This is untrue:

13   Freedman has never spoken with Finans (or any other Danish media company) about this matter.

14   Freedman Decl. ¶ 4. And the Finans article itself—which Lanng failed to attach—does not contain

15   the alleged statements at all. *See generally* Exs. 9–10.

16   What the Finans article *does* contain is competing alleged written statements from Freedman

17   and Lanng himself about Lanng's counterclaims. First, Lanng is quoted from "a written statement"

18   as saying "it is my opinion that Jane Doe's attorneys approached [Doe's] case as quick money and

19   decided to develop a media story that is patently false." Ex. 10 at 7. The article immediately

20   continues, "Jane Doe's one lawyer, Bryan Freedman, in an equally written statement, calls Lanng's

21   counterattack [i.e., his counterclaims] a 'shocking and groundless' attempt to turn the focus away

22   from the accusation that he abused [Doe]." *Id.* at 8. The article then goes on to describe both

23   statements in additional detail. *Id.* at 9.[12]

24   Although Counter-Defendants deny that Freedman made the purported statements to Finans,

25   even if he had made such statements, they would be absolutely privileged under California Civil

26

27   ───────────────
[12] Although Lanng alleges a defamation counterclaim based on Freedman's purported
communications to the media, Lanng himself provided extensive negative commentary about Jane
28   Doe to the *New York Post* shortly after Lanng filed his FACC. Ex. 8 at 6, 8–9, 29, 31, 33.

Code section 47(d). Section 47(d) provides that a publication is absolutely privileged if it is "a fair and true report in, *or a communication to*, a public journal, of (A) a judicial, . . . or (C) other public official proceeding, or (D) of anything said in the course thereof[.]" Civ. Code § 47(d) (emphasis added). "Although the fair report privilege is typically invoked by news media defendants, it also protects those who communicate information *to the media*." *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016) (original emphasis) (affirming granting of anti-SLAPP motion). "'[F]air and true' in [Civ. Code § 47(d)'s] context does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged [report] with respect to what occurred [and was asserted] in the judicial proceedings," regardless of whether such assertions were themselves true. *Id.* at 434. Like the litigation privilege, when the fair report privilege applies, it applies absolutely, meaning that the defendant's statements are "'absolutely privileged regardless of the defendants' motive for reporting' them." *Id.* at 431; *see also id.* at 437 ("When, as here, the fair report privilege applies, it is absolute, and we have no occasion to consider the attorney defendants' motives or whether the statements were uttered with malice.").

Whether a publication falls within the scope of the privilege is a question of law for the court. *McClatchy Newspapers v. Super. Ct.*, 189 Cal. App. 3d 961, 976–77 (1987). Courts apply Section 47(d) *broadly*: "Several cases have been decided under [Section 47(d)], and all permit a certain degree of flexibility/literary license in defining 'fair report.'" *Jennings v. Telegram–Tribune Co.*, 164 Cal. App. 3d 119, 125 (1985). Section 47(d) allows defendants to report the general substance of the underlying proceedings or records; a defendant's report need only capture the "gist or sting" of what was in the records or proceedings. *Reader's Digest Assn. v. Super. Ct.*, 37 Cal. 3d 244, 262 n.13 (1984). A report is considered "fair and true" even if it does not resolve what actually happened, or fails to present the plaintiff's version of the facts, *Rollenhagen v. City of Orange*, 116 Cal. App. 3d 414, 427 (1981), and even if it contains "some errors," *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1559 (2003).[13]

---

[13] Moreover, reports are privileged even if they add additional details beyond what is contained in an official record. *E.g.*, *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 241–45 (1999)

1    The fair report privilege applies to defamation defendants' own statements to the media

2 made in connection with underlying proceedings in which they participated. *E.g.*, *Argentieri v.*

3 *Zuckerberg*, 8 Cal. App. 5th 768, 792–93 (2017) (holding fair report privilege barred claims against

4 individual defendant based on his statement in a press release regarding underlying litigation, and

5 rejecting the plaintiff's argument that a defendant should not be allowed to confer the privilege

6 upon himself by making the original allegedly defamatory statement himself and then reporting it to

7 others); *Healthsmart Pac.*, 7 Cal. App. 5th at 431–37 (holding privilege applied absolutely despite

8 concern that an attorney could repeat allegedly false and defamatory allegations in a pleading to the

9 media); *Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F. Supp. 782, 784 (C.D. Cal. 1998)

10 (holding privilege barred defamation counterclaim against Microsoft based on Microsoft's paid

11 announcement in a newspaper about a lawsuit it had filed against counterclaimant).

12    That is exactly the case here. The Finans article reports that "Christian Lanng has just filed a

13 counterclaim against a former female employee and her law firm"—a "lawsuit" that Finans reports

14 "comes after the woman sued Lanng in December with accusations of rape and sexual assault."

15 Ex. 10 at 7. It is within this context that the article describes and quotes from Lanng's and

16 Freedman's competing statements about the parties' legal dispute and claims. *Id.* Thus, to the extent

17 Lanng's defamation counterclaim could be construed to apply to Freedman's alleged statements in

18 the Finans article, they are absolutely privileged under Section 47(d).[14]

19

20

---

21 (holding entire article privileged although the reporter based it not just on evidence in the court file,
22 but also on interviews conducted with witnesses and others after court proceedings were over).

23 [14] There is also a report privilege rooted in the First Amendment that separately insulates defendants
from liability for fair reports of allegations made in legal proceedings and records. "Federal
24 constitutional concerns are implicated as well when common law liability is asserted against a
defendant for an accurate account of judicial proceedings." *Liberty Lobby, Inc. v. Dow Jones & Co.*,
25 838 F.2d 1287, 1299, 1302 (D.C. Cir. 1988) (citing *Cox Broad. Co. v. Cohn*, 420 U.S. 469 (1975));
*see also Reeves v. ABC*, 719 F.2d 602, 606–07 (2d Cir. 1983) (after applying California's Section
26 47(d) privilege to allegedly defamatory news broadcast, the Court noted the broadcast was also
protected by similar constitutionally-based privilege). In *Gates v. Discovery Comms, Inc.*, 34 Cal.
27 4th 679, 696 (2004), the Supreme Court approvingly cited *Cox* and its progeny in affirming an order
28 granting the defendants anti-SLAPP motion based on this First Amendment privilege.

1       **3.    Lanng's False Light Counterclaim Fails for Additional Reasons**

2            Even if Counter-Defendants had somehow conspired to "set up" or "establish" unspecified

3   social media accounts, FACC ¶¶ 81-82—which Counter-Defendants in no way concede—the false

4   light claim still fails. Lanng does not plead even basic facts regarding the statements that allegedly

5   cast him in a false light. *See* FACC ¶¶ 21–23, 80–88. In California, "[a] 'false light' cause of action

6   is in substance equivalent to a libel claim, and should meet the same requirements of the libel

7   claim." *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 896 (2020) (quoting

8   *Aisenson v. American Broadcasting Co.*, 220 Cal. App. 3d 146, 161 (1990)); *Fellows v. Nat'l*

9   *Enquirer*, 42 Cal. 3d 234, 248 n.12 (1986) ("[F]alse light and defamation [have been viewed] as in

10  essence equivalent."). Chief among those requirements is that statements allegedly casting the

11  claimant in a false light "must be specifically identified, if not pleaded verbatim, in the complaint."

12  *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 (1991); *see also Intermarketing Media, LLC v.*

13  *Barlow*, No. 20-cv-00889, 2021 WL 5990190, at *9 n.8 (C.D. Cal. May 4, 2021) (necessity of

14  specifically identifying allegedly offending statements "is equally applicable to 'false light'

15  claims").

16            Lanng's allegations are categorically insufficient. For instance, Lanng alleges the existence

17  of "fake websites," "Twitter accounts," and "fraudulent social media" accounts, but does not

18  identify the websites or accounts, what those websites or accounts said or did that is false, or why

19  they can be described as "fake" or "fraudulent." *See* FACC ¶¶ 21–22, 29, 81–82. Similarly, Lanng

20  vaguely alleges the existence of a "merciless fraudulent social media campaign" and "social media

21  smear campaign," but he fails to identify a single false statement, let alone a "campaign" of them.

22  *Id.* ¶¶ 23 & 29. The closest Lanng gets to identifying the substance of offending statements are his

23  allegations that Counter-Defendants "fabricate[d] accounts of misconduct by Lanng," "share[d]

24  fabricated stories of misconduct," and "spread false allegations" in an attempt to "leverage a higher

25  settlement," "obtain additional money for Jane Doe," or otherwise "embarrass[]," "intimidat[e]," or

26  "ostracize" Lanng. *Id.* ¶¶ 21–22, 29. But even these are classic examples of "[g]eneral allegations of

27  defamatory statements that do not identify the substance of what was said," and accordingly are

28  insufficient. *Benson v. Riverside Cnty. Sheriff Dep't*, No. 20-cv-02641, 2021 WL 1895909, at *8

1   (C.D. Cal. Apr. 20, 2021) (quotations omitted); *cf. Gilbert v. Sykes*, 147 Cal. App. 4th 13, 31–32

2   (2007) ("[Claimant's] allegation that [Defendant] misstated the content of unspecified

3   communications between him and [Defendant] relating to unspecified procedures that he performed

4   is a paradigm of vagueness, and does not even come close to the specificity required.").

5               **4.    Lanng's IIED Counterclaim Fails as a Matter of Law**

6          To establish an IIED claim, Lanng would have to prove (among other things) "extreme and

7   outrageous conduct by [Counter-Defendants] with the intention of causing, or reckless disregard of

8   the probability of causing, emotional distress." *Light v. Cal. Dep't of Parks & Rec.*, 14 Cal. App.

9   5th 75, 101 (2017) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)). To satisfy

10  this "outrageousness" element, "the alleged conduct must be so extreme as to exceed all bounds of

11  that usually tolerated in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494

12  (1998) (cleaned up). It is "not enough that the defendant has acted with an intent which is tortious or

13  even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

14  characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive

15  damages for another tort." *Id.* at 496 (internal quotation marks omitted).

16         For example, in *Cochran*, the Court of Appeal affirmed a trial court's decision sustaining the

17  demurrer to an IIED claim as insufficiently extreme or outrageous where the plaintiffs alleged that

18  defendant, powerful attorney Johnnie L. Cochran, Jr., had made an alleged death threat against the

19  daughter of his ex-wife. 65 Cal. App. 4th at 492, 499. In *Berkley v. Dowds*, 152 Cal. App. 4th 518,

20  533–35 (2007), a widow sued for IIED, alleging that that she was repeatedly urged by nursing

21  facility staff and a physician to "pull the plug" on her dying husband in order to reduce the cost of

22  his long-term care, and argued with the distraught woman over her refusal to discontinue her

23  husband's life-support systems. The Court of Appeal expressed sympathy for the widow, but

24  concluded as a matter of law that the alleged conduct was not sufficiently outrageous to support an

25  IIED claim. *Id.* at 534–35.

26         Lanng summarily alleges that Counter-Defendants' conduct was outrageous. FACC ¶ 77.

27  But none of the three instances of purportedly "outrageous" conduct Lanng alleges was sufficiently

28  outrageous as a matter of law under the standards in *Cochran*, *Berkley*, and related authorities. <u>First</u>,

1    Freedman's comment to Lanng that "a major media outlet wanted to speak" to him is protected by

2    the litigation privilege, for the reasons addressed above. *Supra* at 14–15. And there is nothing

3    extreme or outrageous in telling someone that the media is interested in talking to them.

4            Second, Lanng's IIED claim alleges that Freedman threatened Lanng by waving a redacted

5    version of the Slave Contract in a video interview Freedman gave to TMZ "*regarding a separate*

6    *case*" a month before Freedman communicated with Lanng in September 2024. FACC ¶¶ 28, 73

7    (emphasis added). TMZ's caption for the video explains that the case at issue concerned entirely

8    separate claims that "reality stars" were making against Hollywood studios. *Id.* ¶ 28 (screen grab).

9    Nowhere in that interview did Freedman reference Lanng *at all*, expressly or implicitly. Ex. 11.[15]

10   Thus, as a factual matter, Freedman never articulated a threat *to Lanng* at all. And in any event,

11   "[l]iability for intentional infliction of emotional distress does not extend to mere insults,

12   indignities, *threats*, annoyances, petty oppressions, or other trivialities" like those Lanng alleges.

13   *Light*, 14 Cal. App. 5th at 101 (emphasis added).

14           Third, to the extent the IIED claim relies on Doe's purported breach of the Settlement

15   Agreement resulting from Freedman's description of Doe's complaint to Finans, FACC ¶¶ 51, 60

16   77, Freedman's alleged statements to Finans are absolutely privileged under the litigation and fair

17   report privileges, *supra* at 7, 14, 18–20, and could not have breached the Settlement Agreement that

18   Lanng failed to perform under, *supra* at 15–17. And, under the economic loss rule, Lanng cannot

19   bring a tort claim for the alleged breach of a contract. *See United Guar. Mortg. Indem. Co. v.*

20   *Countrywinde Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009).

21   **V.    CONCLUSION**

22           Counter-Defendants respectfully request that the Court grant their anti-SLAPP motion and

23   dismiss Lanng's FACC, in its entirety, with prejudice and without leave to amend.

24

25       Dated:  May 30, 2024                              By:  ___/s/ Jean-Paul Jassy___
                                                           Attorneys for Counter-Defendants
26

27   _____

28   [15] The video interview itself is available online at https://www.tmz.com/2023/08/04/reality-stars-nbc-bravo-sexual-exploitation-mental-health-revenge-porn/.