CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
JEFFREY BOGERT (SBN 132778)
jeff@frostllp.com
NICK LAUBER (SBN 288499)
Nick@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Defendant/Counterclaimant
Christian Lanng

# UNITED STATES DISTRICT COURT

# CALIFORNIA NORTHERN DISTRICT (OAKLAND)

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>TRADESHIFT, INC., et al.<br><br>Defendant.<br><br>CHRISTIAN LANNG,<br><br>Counterclaimant,<br><br>vs.<br><br>JANE DOE; BRYAN J. FREEDMAN; MILES COOLEY and FREEDMAN, TAITELMAN, & COOLEY, LLP; and DOES 1 through 10, inclusive,<br><br>Counterdefendant. | Case No. 4:24-cv-00166-JST<br><br>*Judge Jon S. Tigar*<br><br>**DECLARATION OF CHRISTIAN LANNG IN SUPPORT OF DEFENDANT/COUNTER CLAIMANT CHRISTIAN LANNG'S OPPOSITION TO ANTI-SLAPP**<br><br>Trial Date:    None Set |

1

## DECLARATION OF CHRISTIAN LANNG

I, Christian Lanng, declare as follows:

1. I am named as a Defendant and Counterclaimant in the above-entitled action. I have personal knowledge of the facts set forth herein and, if called upon to testify as a witness, I could and would competently testify to the matters stated herein. I make this Declaration in support of Counterclaimant's Opposition to Anti-SLAPP, filed concurrently herewith.

2. I was the Founder and CEO of Tradeshift, Inc. from its inception until 2023. Tradeshift is a technology company specializing in global trade and supply chain management. Tradeshift has always been a privately owned company.

3. In early 2014, I became romantically involved with Jane Doe. After becoming so involved, I hired Jane Doe to work at Tradeshift as my executive assistant.

4. The romantic relationship between Jane Doe and I involved engaging BDSM activities. As part of that, Doe obtained from a website a BDSM "Slave Contract" that she used to create prop for use in our relationship. Doe handwrote the terms she intended to incorporate into the document. A photograph depicting Doe's handwritten notes was incorporated into her First Amended Complaint.

5. Doe subsequently typed up her version of the "Slave Contract" and had both of us sign it. I understood that Doe was expressing to me that she was a consenting and willing participant in all activities described in its contents. I further

understood that Doe and I had agreed to the "Red" provision to safeguard her safety and well-being as we engaged in BDSM activities.

6. During the course of our relationship, Doe kept a personal diary that she gave me access to as part of our BDSM activities. A true and correct copy of selections her diary is attached her as Exhibit 2.

7. After approximately, six months Doe and I ended our romantic involvement. Doe continued to work at Tradeshift, although in other capacities, no longer as my executive assistant.

8. In 2020, Doe's employment with Tradeshift was terminated, along with other employees, as part of layoffs due to the economic uncertainty surrounding the COVID-19 Pandemic.

9. After her termination, it came to my attention that Doe was alleging she had suffered abuse during her employment with Tradeshift. Whille initially her complaints were directed at other Tradeshift supervisors, Doe later alleged that our romantic relationship was non-consensual.

10. Around the same time Tradeshift was dealing with Doe's allegations, Tradeshift had the opportunity to obtain a major capital investment from HSBC. The investment would have immensely benefitted Tradeshift's shareholder, to whom I as CEO owed a fiduciary duty.

11. To protect Tradeshift and its shareholders and to fulfill my fiduciary

duties, I entered into a Settlement Agreement with Doe, paying her $10 million to not bring any claims based upon her allegations against myself and to not disclose private information about me, which implicitly included the details of our romantic relationship.

12. I did not have access to $10 million to pay to Doe because Tradeshift is not a publicly traded company. So Doe and I agreed to a payment structure whereby larger multimillion dollar payments were agreed to based upon the understanding that I would not have the ability to pay until after the HSBC investment.

13. The HSBC investment was continually delayed for reasons unrelated to Doe. Thus Doe and I entered into three separate amendments to the settlement agreement. As part of each amendment I made additionally payments to Doe.

14. It later came to my attention that Jane Doe's attorney, Bryan Freedman appeared on TMZ with an enlarged copy of the "Slave Contract" with my name redacted out. I feared Freedman would use his media contacts to publish the "Slave Contract" with my name unredacted.

15. In September 2023, Tradeshift terminated my employment. At the time I no longer had legal representation. Shortly thereafter I was contacted by Freedman via text message. The text messages attached to his declaration fairly and accurately depict our text exchange.

16. On October 10, 2023, Tradeshift made a press release stating their

reasons for my termination.

17. At this time it came to my attention that there was a Twitter account named @_ChristianLanng. This account made numerous public posts claiming to have been a victim of sexual assault perpetrated by me. This Twitter account also replied and engaged with media outlets that were reporting on Tradeshift and this litigation. Attached as Exhibit 3 is a series of true and correct screenshots of public posts by this Twitter account.

18. After I filed my Countercomplaint, Jesper Hoberg of Finans reached out to me for response to the comments of Bryan Freedman on my countercomplaint. Attached as Exhibit 4 is a true and correct copy of the email I received containing Bryan Freedman's comments on my countercomplaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 17, 2024, at London, United Kingdom.

DocuSigned by:
Christian Lanng
6D6D0D1080ED478
Christian Lanng