**JASSY VICK CAROLAN LLP**
JEAN-PAUL JASSY, Cal. Bar No. 205513
  jpjassy@jassyvick.com
KEVIN L. VICK, Cal. Bar No. 220738
  kvick@jassyvick.com
JEFFREY A. PAYNE, Cal. Bar No. 279034
  jpayne@jassyvick.com
NICHOLAS R. HARTMANN, Cal. Bar No. 301049
  nhartmann@jassyvick.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:    310-870-7048
Facsimile:     310-870-7010

Attorneys for Counter-Defendants
JANE DOE, BRYAN J. FREEDMAN, MILES COOLEY, and FREEDMAN TAITELMAN + COOLEY, LLP

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>              Plaintiff,<br><br>     vs.<br><br>TRADESHIFT, INC., et al.,<br><br>              Defendant.<br><br>CHRISTIAN LANNG,<br><br>              Counterclaimant,<br><br>     vs.<br><br>JANE DOE; BRYAN J. FREEDMAN; MILES COOLEY and FREEDMAN, TAITELMAN, & COOLEY, LLP; and DOES 1 through 10, inclusive,<br><br>              Counter-Defendants. | Case No. 4:24-cv-00166-JST<br><br>Honorable Jon S. Tigar<br><br>**COUNTER-DEFENDANTS' <u>REPLY</u> IN SUPPORT OF SPECIAL MOTION TO STRIKE COUNTERCLAIMANT CHRISTIAN LANNG'S FIRST AMENDED COUNTERCOMPLAINT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:        August 29, 2024<br>Time:       2:00 pm<br>Courtroom    6 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. THE ANTI-SLAPP MOTION IS ANALYZED UNDER RULE 56 ......................................2

III. COUNTER-DEFENDANTS SATISIFIED THEIR BURDEN UNDER STEP ONE ............3

    A. Lanng Has Not Remotely Met All the Pre-Requisites for the *Flatley* Exception .......3

    B. All of Lanng's Counterclaims Also Fall Within Section 425.16(e)(4) .......................6

IV. LANNG DID NOT SATISFY HIS BURDEN UNDER STEP TWO .....................................7

    A. Lanng Has No Probability of Prevailing on His Breach of Contract Claim ...............7

        1. Lanng Failed to Establish That He Performed Under the Contract ...................7

        2. Doe's Performance Depended on Payment of the Settlement Amount .............8

        3. The Confidentiality Provisions Lanng Seeks to Enforce Are Illegal .................9

    B. Civil Code § 47(b)'s Litigation Privilege Bars All of Lanng's Counterclaims .........11

        1. The Litigation Privilege Bars the Breach of Contract Counterclaim ...............11

        2. The Litigation Privilege Also Bars Lanng's Other Counterclaims ..................12

    C. The Defamation Counterclaim Fails for Additional Reasons ................................... 13

    D. The False Light Counterclaim Fails for Additional Reasons ....................................14

    E. The Intentional Infliction of Emotional Distress Counterclaim Fails .......................15

V. CONCLUSION .....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. Lancaster Community Hospital*,
  217 Cal. App. 3d 796 (1990) .................................................................................................. 13

*Albanese v Menounos*,
  218 Cal. App. 4th 923 (2013) .................................................................................................... 7

*Benson v. Riverside Cnty. Sheriff Dep't*,
  No. 20-cv-02641, 2021 WL 1895909 (C.D. Cal. Apr. 20, 2021) ............................................ 14

*Bergstein v. Stroock & Stroock & Lavan LLP*,
  236 Cal. App. 4th 793 (2015) ............................................................................................... 4, 5

*Cohen v. Brown*,
  173 Cal. App. 4th 302 (2009) .................................................................................................... 6

*Cross v. Cooper*,
  197 Cal. App. 4th 357 (2011) ............................................................................................... 3, 6

*Feldman v. 1100 Park Lane Assocs.*,
  160 Cal. App. 4th 1467 (2008) .......................................................................................... 11, 12

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ................................................................................................................ 6

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ................................................................................................... 14

*Flatley v. Mauro*,
  39 Cal. 4th 299 (2006) ........................................................................................... 1, 3, 4, 5, 6

*Flickinger v. Finwall*,
  85 Cal. App. 5th 822 (2022) .................................................................................................... 13

*Fremont Reorganizing Corp. v. Faigin*,
  198 Cal. App. 4th 1153 (2011) .................................................................................................. 5

*Geragos v. Abelyan*,
  88 Cal. App. 5th 1005 (2023) .................................................................................... 4, 5, 6, 13

*Harmoni Int'l Spice, Inc. v. Bai*,
  No. CV1600614BROASX, 2016 WL 6542731 (C.D. Cal. May 24, 2016) .............................. 6

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021) ...................................................................................................... 2

*Jackson v. Mayweather*,
  10 Cal. App. 5th 1240 (2017) .................................................................................................... 6

*Malin v. Singer*,
  217 Cal. App. 4th 1283 (2013) ................................................................................................ 13

*McNair v. City & Cnty. of S.F.*,
    5 Cal. App. 5th 1154 (2016) ................................................................................................ 11

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) .............................................................................................. 10

*Mireskandari v. Gallagher*,
    59 Cal. App. 5th 346 (2020) ................................................................................................ 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .................................................................................................. 2

*Plotnik v. Meihaus*,
    208 Cal. App. 4th 1590 (2012) .......................................................................................... 7, 8

*Rothman v. Jackson*,
    49 Cal. App. 4th 1134 (1996) .............................................................................................. 13

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ....................................................................................................... 14

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) .................................................................................................. 2

*Stenehjem v. Sareen*,
    226 Cal. App. 4th 1405 (2014) .............................................................................................. 6

*Stewart v. Rolling Stone, LLC*,
    181 Cal. App. 4th 664 (2010) ................................................................................................ 7

*Stoneridge Parkway Partners, LLC v. MW Housing Partners III, L.P.*,
    153 Cal. App. 4th 1373 (2007) ............................................................................................ 10

*Vivian v. Labrucherie*,
    214 Cal. App. 4th 267 (2013) ......................................................................................... 11, 12

*Wentland v. Wass*,
    126 Cal. App. 4th 1484 (2005) ............................................................................................ 12


**U.S. Constitution**

First Amendment ............................................................................................................................ 13


**Federal Rules**

    Rule 8 .................................................................................................................................... 2
    Rule 12 .................................................................................................................................. 2
    Rule 56 .................................................................................................................................. 2

**Statutes**

Civil Code
    § 47(b) ............................................................................................................................. 1, 11, 14
    § 47(d) ................................................................................................................................... 1, 13

Code of Civil Procedure
    § 425.16(e) .............................................................................................................................. 1, 3
    § 425.16(e)(1) ......................................................................................................................... 1, 3
    § 425.16(e)(2) ......................................................................................................................... 1, 3
    § 425.16(e)(4) ..................................................................................................................... 1, 3, 6
    § 1001(a) ............................................................................................................................... 9, 11

Evidence Code
    § 622 ........................................................................................................................................... 10

Government Code
    § 12964.5 ...................................................................................................................................... 9
    § 12964.5(b)(1)(A) .................................................................................................................. 9, 10
    § 12964.5(b)(2) ........................................................................................................................... 10

Penal Code
    § 518 .............................................................................................................................................. 4
    § 519 .............................................................................................................................................. 4

## I. INTRODUCTION

Lanng's Opposition effectively concedes most of Counter-Defendants' anti-SLAPP Motion. With respect to step one of the anti-SLAPP analysis, Lanng's counterclaims need only fall within one of the four categories in C.C.P. § 425.16(e) for the anti-SLAPP statute to apply. Cross-Defendants' Motion showed that each of the counterclaims fell within *three*: subsections 425.16(e)(1), (e)(2) and (e)(4). Yet Lanng's Opposition only disputes (incorrectly) whether subsection 425.16(e)(4) applies. He *never* addresses Sections 425.16(e)(1) and (2). The only exception to Lanng's sweeping concession is with his extortion counterclaim, where he argues that claim should be exempt from the anti-SLAPP statute under the narrow exception created by *Flatley v. Mauro*, 39 Cal. 4th 299 (2006). But Lanng cannot remotely meet the stringent requirements for the *Flatley* exception. Tellingly, he does not even attempt to engage with the voluminous governing case law cited in Cross-Defendants' Motion that bars application of the *Flatley* exception here. Instead, he seeks to lead this Court down the garden path by urging the Court to apply the *Flatley* exception under circumstances that every other court has rejected as legally insufficient.

Lanng's concessions also extend to the second step of the anti-SLAPP analysis, where it is Lanng's burden to plead and substantiate *with admissible evidence* each of his counterclaims. With respect to his breach of contract counterclaim, Lanng ignores Contract Law 101. Namely, an essential element of breach of contract is a plaintiff's *own performance* of all material conditions or excuse for nonperformance. But Lanng *admits* that he failed to make the First Settlement Payment under the Settlement Agreement necessarily dooming his contract counterclaim. Lanng fares no better with his other counterclaims. He does not dispute that the litigation privilege in Civil Code section 47(b) bars his counterclaims for extortion, false light, and IIED. Nor does he dispute that a separate privilege, the fair report privilege section 47(d), bars his defamation counterclaim. These uncontested grounds, by themselves, are sufficient to grant the anti-SLAPP Motion. That said, Counter-Defendants' moving papers set forth many additional grounds that further bar Lanng's counterclaims. Those ground include California statutory law that prevents sexual abusers from trying to silence their victims, Lanng's failure to even plead (let alone substantiate) essential elements of certain counterclaims, and more.

Given all that Lanng's Opposition lacks, it is remarkable that he finds space for yet another round of gratuitous cruelty at Jane Doe's expense. Lanng devotes most of page 2 of his Opposition to divulging alleged portions of her personal diary. Lanng cherry-picks snippets that glorify Lanng's own sexual prowess and tout his dominance over her—even though those portions and the diary more generally are irrelevant to any of the actual legal arguments in the anti-SLAPP Motion. Lanng does not even redact Jane Doe's private diary entries or utilize the Northern District of California's procedures for filing sensitive content under seal. Instead, he chose to file the diary entries publicly. Even with his counterclaims in legal jeopardy, Lanng cannot resist indulging in one more opportunity for mockery and malice at Jane Doe's expense. But whereas Lanng's Opposition makes inroads on that score, it utterly fails in terms of legal merit. This Court should grant Counter-Defendants' anti-SLAPP Motion and strike Lanng's counterclaims in their entirety.

## II. THE ANTI-SLAPP MOTION IS ANALYZED UNDER RULE 56

In federal court, an anti-SLAPP motion may be styled pursuant to Rules 8 and 12, or pursuant to Rule 56. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). An anti-SLAPP motion brought pursuant to Rule 56 challenges the "factual sufficiency" of the complaint. *Id.*; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (this "interpretation eliminates conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure"). Counter-Defendants' anti-SLAPP motion was brought pursuant to Rule 56, which Lanng completely ignores. *See* Notice of Mot. 1:10–11. Contrary to Lanng's apparent contentions, Counter-Defendants are not holding Lanng to a "higher pleading standard." Opp. 8:22–25. As Lanng acknowledges, the parties' *evidence* is to be considered, *id.*, and Lanng must "state *and substantiate* a legally sufficient claim" in the context of an anti-SLAPP motion brought under Rule 56, *Sarver v. Chartier*, 813 F.3d 891, 902–03 (9th Cir. 2016) (emphasis added). Lanng asked for (and Counter-Defendants did not oppose) leave to conduct early discovery to respond to the anti-SLAPP motion, which the Court permitted. ECF No. 62. The law and undisputed evidence show that Counter-Defendants satisfied their burden under the first step of the anti-SLAPP analysis, and Lanng has not satisfied his burden in the second step to demonstrate that his claims have merit.

## III. COUNTER-DEFENDANTS SATISIFIED THEIR BURDEN UNDER STEP ONE

The anti-SLAPP Motion explained that although each of Lanng's counterclaims only needs to fall within *one* of the four categories under C.C.P. § 425.16(e), they all fall within *three*: Sections 425.16(e)(1), (e)(2) and (e)(4). Mot. 6:3–13:18. Yet Lanng's Opposition only disputes subsection (e)(4); he ignores—and thereby concedes—that subsections (e)(1) and (2) apply to each of his counterclaims. Opp. 20:1–22:11.[1] The only exception to that concession is that Lanng erroneously argues that the illegality exception in *Flatley*, 39 Cal. 4th 299, applies to his extortion counterclaim. Opp. 14:5–18:7. But Lanng does not dispute that each of his other counterclaims fall within the ambit of Sections 425.16(e)(1) and/or (e)(2). *Id.* at 14:5–21:5.

### A. Lanng Has Not Remotely Met All the Pre-Requisites for the *Flatley* Exception

As the party invoking the *Flatley* exception to the anti-SLAPP statute, Lanng "bears the burden of conclusively proving" all the pre-requisites for the exception, whereas, conversely, the Counter-Defendants "need not show as a matter of law that [their] conduct was legal." *Cross v. Cooper*, 197 Cal. App. 4th 357, 385 (2011). Lanng's Opposition confirms that he cannot satisfy his burden. While he discusses *Flatley*, Opp. 14–16, Lanng ignores the California Supreme Court's explicit admonitions regarding the extreme narrowness of the exception to the anti-SLAPP statute. The Court stressed that its "opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." *Id.* at 332 n.16. "[A] person, generally speaking, has a perfect right to prosecute a lawsuit in good faith, or to provide information to the newspapers." *Id.* (cleaned up). *Flatley*'s holding was "based on the specific and extreme circumstances of this case." *Id.* Those specific and extreme circumstances included, among other things, the following:

> (1) the defendant's misconduct "constituted *criminal* extortion as a matter of law," i.e., violations of specific Penal Code sections, *id.* at 305, 326, 330, 332 n. 16 (emphasis added);

---

[1] Lanng references the litigation privilege in his discussion of step one of the anti-SLAPP analysis. Opp. 18:8–19:27. Although there is a relationship between the litigation privilege and the anti-SLAPP statute, "the two statutes are not substantively the same," and the litigation privilege "does not operate as a limitation on the scope of the anti-SLAPP statute." *Flatley*, 39 Cal. 4th at 325.

(2) "*uncontroverted* and *conclusive* evidence" established that defendant had engaged in such criminal misconduct—the Court was not faced with factual disputes or forced to draw inferences from circumstantial evidence, *id.* at 320, 329 (emphasis added);

(3) the defendant threatened to report the plaintiff to governmental authorities and to provide those authorities with "all pertinent information and documentation," *id.* at 309–10; and

(4) the defendant's threats to contact governmental authorities concerned alleged misconduct by the plaintiff that was *unrelated* to defendant's dispute with plaintiff, *id.*

Lanng's arguments do not come close to meeting the exacting standards set forth by *Flatley* and its progeny. <u>First</u>, Lanng does not even attempt to demonstrate that any Counter-Defendant committed *criminal* misconduct as a matter of law, which is a strict requirement for the *Flatley* exception. Instead, Lanng argues that Freedman violated California Rule of Professional Conduct 4.3. Opp. 16–18. However, under well-established law, only *criminally* illegal conduct suffices for the *Flatley* exception. *Flatley* itself repeatedly emphasized and relied on the fact that the defendant had committed "criminal extortion as a matter of law." *Id.* at 305, 326, 332 n. 16. And subsequent case law has unswervingly held that only criminal misconduct—not violations of civil, common, or regulatory law—can trigger the *Flatley* exception. *See*, *e.g.*, *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 806 (2015) (surveying case law and concluding that only criminal misconduct suffices); *Geragos v. Abelyan*, 88 Cal. App. 5th 1005, 1028 (2023) (same).

Lanng admits—as he must—that "some California appellate cases have interpreted the *Flatley*" exception "as applying only to criminal conduct," but argues this "interpretation has not been adopted by the California Supreme Court nor is it binding upon federal courts." Opp. 17:21–24. But *Flatley*, which is a Supreme Court case, repeatedly emphasized that the defendant had committed *criminal* misconduct. *See supra*. Indeed, Lanng's Opposition concedes *Flatley* involved an uncontroverted showing of *criminal* extortion, *i.e.*, violations of specific provisions of the Penal Code. Opp. 14:18–20 (citing *Flatley* and Penal Code §§ 518 & 519). Tellingly, while Lanng urges this Court to rule that violations of the Professional Rules of Conduct should suffice for the *Flatley* exception, he fails to cite *even one single* case so holding. *See* Opp. 14–18.

Lanng also falsely asserts that "[n]o court has said that the *Flatley* unlawful conduct exception does not apply to the Rules of Professional Conduct[.]" Opp. 17:25–26. Numerous courts have said and *held* exactly that—including a 2023 California Court of Appeal decision that

the Counter-Defendants cited repeatedly in their moving papers, but which Lanng's Opposition just ignores. *See Geragos*, 88 Cal. App. 5th at 1028 (so holding); *see also Bergstein*, 236 Cal. App. 4th at 806, 806 n. 2 (rejecting argument that violation of Professional Rule of Conduct could trigger *Flatley* exception because "the Flatley rule applies only to criminal conduct, not to conduct that is illegal because in violation of statute or common law"); *Fremont Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 1169 (2011) (same).[2]

Second, this is not a case where "uncontroverted and conclusive evidence" establishes that defendants engaged in criminal misconduct as a matter of law. *Flatley*, 39 Cal. 4th at 320, 329. Case law makes clear that where the legality of a defendant's conduct is "in dispute" or "depends on inferences to be drawn from circumstantial evidence," the *Flatley* exception cannot apply and the case must proceed to the second step of the anti-SLAPP analysis. *Geragos*, 88 Cal. App. 5th at 1025; *see also* Mot. 11. In his Opposition, Lanng falsely claims that "undisputed evidence shows that Freedman's text messages were illegal as matter of law." Opp. 16:28–17:1. But his only support for that claim is an *ipse dixit* assertion that, "[a]s explained above, these messages constitute clear extortion." *Id.* But Lanng never actually explains how Freedman's text messages constitute criminal extortion; and they do not. They simply reflect Freedman's efforts to try to informally resolve Lanng's dispute with Freedman's client, Jane Doe, which had been precipitated by Lanng's failure to make a multimillion dollar payment that Lanng was contractually obligated to make.

Third, Lanng's Opposition does not—because he cannot—point to any threats from the Counter-Defendants to report any criminal misconduct by Lanng to governmental authorities.

---

[2] Moreover, even if violations of the Rules of Professional Conduct could satisfy the *Flatley* exception (although they cannot), Freedman did not violate any such rule. When Lanng was represented by counsel, Freedman communicated with his counsel. When Lanng was dropped by his counsel, Freedman had no choice but to communicate with Lanng directly. Lanng's suggestion that Freedman was offering Lanng "legal advice" is preposterous. Opp. 17:9. Freedman was representing Lanng's past and future legal *opponent*, Jane Doe. And Lanng's own exhibit demonstrates that when Lanng told Freedman on September 6, 2023, that Lanng's "new counsel" would be "available shortly," Freedman stood down. ECF No. 71-5 at 5–7. But more than one month later, Lanng initiated contact with Freedman, admitted "I don't have a new counsel," and made a settlement overture to Freedman while claiming he had no current income. *Id.* At that point, Freedman asked why Lanng had not gone after Tradeshift and later inquired whether Lanng knew if Tradeshift was willing to contribute to a potential resolution with Jane Doe. Freedman did not provide Lanng with "legal advice." He simply represented the interests of his client Jane Doe in seeking payment of money that she was indisputably owed but had not received.

1  *Compare Flatley*, 39 Cal. 4th at 309–10; *see also Harmoni Int'l Spice, Inc. v. Bai*, No. CV1600614BROASX, 2016 WL 6542731, at *15 (C.D. Cal. May 24, 2016) (surveying "cases decided in the wake of *Flatley*" applying the *Flatley* exception, "each of which involved a demand letter not only threatening to file suit, but also threatening to report the individual's allegedly wrongful conduct to prosecuting authorities").

Fourth, even if Lanng could identify threats to report his criminal misconduct to governmental authorities, he would have to also show that such criminal misconduct was "unrelated to any alleged injury suffered" by Jane Doe. *Flatley*, 39 Cal. 4th at 330–31. Indeed, even if the Counter-Defendants had threatened to report Lanng to law enforcement for assault, sexual battery and other crimes (although they did not), such threats would not have triggered the *Flatley* exception because they would have been "related to the alleged injury [their] client suffered[.]" *Geragos*, 88 Cal. App. 5th at 1024 (holding *Flatley* exception not triggered where defendant's threats to report plaintiff were related to defendant's claims).[3]

All of Lanng's counterclaims, including his extortion claim, fall within the anti-SLAPP law.

## B. All of Lanng's Counterclaims Also Fall Within Section 425.16(e)(4)

Section 425.16(e)(4) is satisfied because Lanng is a person in the public eye. Mot. 12–13. This alone is sufficient to satisfy Section 425.16(e)(4) here. A "public issue" under subsection (e)(4) "is implicated if the subject of the statement or activity underlying the claim was a person or entity in the public eye." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1253–55 (2017) (cleaned up) (citing cases); *accord FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145 (2019) ("In articulating what constitutes a matter of public interest, courts look to . . . whether the subject of the

---

[3] The Opposition fails to address, let alone distinguish, any of the ten post-*Flatley* cases cited by Counter-Defendants. Mot. 9–12. Instead, Lanng cites two cases that are wholly inapposite: *Stenehjem v. Sareen*, 226 Cal. App. 4th 1405 (2014), and *Cohen v. Brown*, 173 Cal. App. 4th 302 (2009). Opp. 15–16. In *Stenehjem*, unlike here, there was a threat to "file a false criminal complaint," that was "'entirely unrelated to any alleged injury suffered'" by the other party. 226 Cal. App. 4th at 1409–10, 1422–23, 1425; *see also Geragos*, 88 Cal. App. 5th at 1027 (distinguishing *Stenehjem* on the same grounds). In *Cohen*, one attorney threatened to—and then did—file a false ethics complaint against another attorney, which, the Court of Appeal held, constituted criminal extortion. 173 Cal. App. 4th at 310–11, 317–18. Here, Freedman did not threaten to report Lanng to any governmental authorities. *See Cross*, 197 Cal. App. 4th at 386 (distinguishing *Cohen* as a case where "undisputed evidence conclusively established … extortion as a matter of law").

speech or activity was a person or entity in the public eye … .") (cleaned up). *Albanese v Menounos*, which Lanng cites, limits this rule where the underlying issue is "of interest to *only* a *private* group, organization, or community." 218 Cal. App. 4th 923, 936 (2013) (emphasis added). It is not Lanng's mere status as a CEO—or even as the CEO of a "unicorn" startup—that makes him a public figure, and Counter-Defendants do not argue that it did. Rather, it was by utilizing his status as Tradeshift's CEO to actively insert himself into the public discussion of technology and global commerce, that Lanng *himself* "create[d] a legitimate and widespread attention to [his] activities." *Stewart v. Rolling Stone, LLC*, 181 Cal. App. 4th 664, 678 (2010); Mot. 12:19–13:12.

This is not a case where "there is some public interest in [Lanng] based on [his] profession" but with "no evidence of a *public* controversy" between himself and Doe. *Albanese*, 218 Cal. App. 4th at 936 (emphasis in original); *see* Opp. 21:8–22:11. Lanng concedes that while he was CEO, he had a relationship with Doe where they "engaged in BDSM practices" governed by a "Slave Contract." Opp. 2:4–9; Lanng Decl. ¶¶ 3–6. In October 2023, *Bloomberg* and *TechCrunch* both reported that Tradeshift had terminated Lanng after becoming aware *in late August 2013* of "serious allegations of sexual assault and harassment" and "gross misconduct on multiple grounds." Ex. 7 at 2, 13–14, 16, 19. Both articles thus rely on allegations that Tradeshift acted *before* the alleged "smear campaign against [Lanng] in September 2023." Opp. 20:20–22. And despite being published *after* September 2023, neither article references social media comments about Lanng. When Doe filed her Complaint in December 2023, multiple prominent publications picked up on the story and reported on Doe's complaint, Ex. 17—coverage that would not have existed but for the public's widespread and pre-existing interest in the allegations involving "Lanng's personal life and his treatment of his assistant," Opp. 20:20–22, and its effect on the "unicorn" Tradeshift.

IV.   **LANNG DID NOT SATISFY HIS BURDEN UNDER STEP TWO**

    A.   **Lanng Has No Probability of Prevailing on His Breach of Contract Claim**

        1.   **Lanng Failed to Establish That He Performed Under the Contract**

"It is elementary a plaintiff suing for breach of contract must prove it has performed *all conditions* on its part or that it was excused from performance." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1603 (2012) (emphasis added; cleaned up). Put another way, "[o]ne who himself

breaches a contract cannot recover for a subsequent breach by the other party." *Id.* Lanng's Opposition ignores the black-letter principle that for him to establish a claim for breach of contract, he must plead and prove his *own* performance under the contract. Mot. 15:19–16:7. Lanng does not dispute that he failed to make the First Settlement Payment under the Settlement Agreement. Mot. 16:4–7; *see, e.g.*, Opp. 13:4–5 (acknowledging "Lanng's non-payment of the First Settlement Payment"). Nor does he dispute that he failed to pay the full settlement amount. *See* Mot. 15:27–16:7; Doe Decl. ¶¶ 3–4; Freedman Decl. ¶ 2. The Court's analysis can end there.

### 2. Doe's Performance Depended on Payment of the Settlement Amount

Lanng is also wrong on his own terms. Lanng remarkably contends that Doe remained contractually bound by her confidentiality and arbitration obligations under the Settlement Agreement *regardless of whether Lanng **ever** paid the First Settlement Payment* (or any other settlement payment) because Doe's obligations under the agreement were independent of Lanng's duty to pay. Opp. 11:4–12:13. No reading of the Settlement Agreement supports this position.

Lanng agreed to pay Doe $10 million for a single purpose: To prevent Doe from filing a lawsuit that he thought would "publicize salacious details of their romantic involvement" that Lanng believed would threaten "a major capital investment in Tradeshift from HSBC." Opp. 3:8–14; Lanng Decl. ¶ 11. Lanng can't have it both ways: He can't insist on Doe's full compliance with *her* contractual obligations, regardless of whether *he* ever performed, while at the same time conditioning *his own* performance of his one core contractual obligation on Doe's *full* performance. Recognizing the absurdity of his position, Lanng argues that he "has already paid several hundred thousand dollars to Doe" under the Settlement Agreement. Opp. 12:8–9. Doe does not dispute that Lanng paid her several hundred thousand dollars in the form of a $250,000 *Holding Payment* and three *extension payments*. Opp. 12:8–9; Doe Decl. ¶¶ 3–4. But the Settlement Agreement and extensions facially demonstrate that the Holding Payment and the extension payments were paid in consideration for postponing Lanng's deadline to fulfill his contractual payment obligation—*not* for Doe's "agreement to resolve all disputes through private, confidential arbitration without any public filing of a complaint unless authorized by an arbitrator," Opp. 12:10–12. The amendments to the Settlement Agreement made clear that Lanng's extension payments were "nonrefundable" and were

1  "in addition to, and shall not be credited against, the Settlement Payment." Ex. 2 § 2; Ex. 3 § 2.
2  Thus, the extension payments—like the Holding Payment—were designed for the sole purpose of
3  extending Lanng's time to pay the $10 million settlement principal amount. *See* Lanng Decl. ¶ 13
4  (the parties "entered into three separate amendments to the settlement agreement" under which
5  Lanng "made additionally [sic] payments to Doe" due to delays in the HSBC investment).

6  Lanng concedes that he "did not have access to $10 million to pay Doe," Lanng Decl. ¶ 12,
7  despite his promises to pay her that amount to settle her claims. Understanding the alleged need for
8  the HSBC transaction to close, *see* Lanng Decl. ¶12, Doe remained patient through multiple delays
9  and agreed to multiple extensions of Lanng's deadline to pay her. Lanng acknowledges that, after
10 multiple delays, his obligation to make the First Settlement Payment finally became due on June 19,
11 2023, Opp. 12:27–13:1—*nine months* after that payment was originally due under the Settlement
12 Agreement, Ex. 1 § 4.1 (First Settlement Payment due 120 days after May 14, 2022); Ex. 4 § 4.2(e).
13 But June 19, 2023 came and went, and Lanng still did not pay. So Doe continued to wait and
14 remain silent. When Lanng still had not paid by December 2023, Doe was left with no other option
15 but to sue. Doe filed her complaint on December 7, 2023. ECF No. 1-1.

### 3. The Confidentiality Provisions Lanng Seeks to Enforce Are Illegal

17 The Settlement Agreement's confidentiality provisions are unenforceable as a matter of
18 California law and public policy. *See* Opp. 16–17 & n.11 (discussing provisions' invalidity under
19 Gov. Code § 12964.5 and C.C.P. § 1001(a)). Lanng tellingly does not dispute that enforcing the
20 Settlement Agreement's confidentiality provisions here would directly contravene policies
21 underlying the Silenced No More and STAND Acts—namely, that California's Legislature intended
22 those laws to prevent rich and powerful men (like Lanng) from using settlement agreements to
23 silence women (like Doe) alleging sexual assault. *See* Mot. 16–17; *see generally* Opp. 13–14.
24 Instead, Lanng (i) cites a recital in the Agreement that is belied by the Agreement's actual terms;
25 and then (ii) blithely offers a misinterpretation of the STAND Act that would render it
26 unenforceable in nearly every instance. The Court should reject both of these arguments.

27 First, Lanng asserts that the Settlement Agreement's confidentiality provisions cannot
28 "relate to" Doe's employment with Tradeshift, and that the prohibition in Gov. Code

§ 12964.5(b)(1)(A) thus does not apply, because of a recital stating that the Agreement settles disputes that do not "aris[e] out of" Doe and Lanng's employment with Tradeshift. Opp. 13. Certainly, Lanng himself does not believe that to be the case, as literally every paragraph of his sworn declaration discussing the Settlement Agreement ties it to Tradeshift. *See* Lanng Decl. ¶¶ 9–13. But his argument also ignores footnote 11 in the Counter-Defendants' opening brief, which identifies multiple substantive terms in the Agreement itself explicitly relating it to Doe's employment with Tradeshift. *See* Mot. 16 n.11. Indeed, the very confidentiality provision that Lanng asks the Court enforce—and which directly contravenes Gov. Code § 12964.5(b)(1)(A)—purports to bar Doe from discussing "any alleged tort, crime, misconduct, or other wrongdoing by Lanng . . . **while employed by Tradeshift, Inc.**" Ex. 1 §§ 10 & 11.1 (emphasis added).

Lanng accordingly finds no solace in Evidence Code § 622's presumption of truth, which "does not apply to the recital of consideration." Here, the terms of the Agreement that tie it to Doe's employment with Tradeshift were key, bargained-for consideration going to the heart of the Agreement. Specifically, those terms concern confidentiality and non-disparagement (*of Tradeshift*), Ex. 1 §§ 10, 11.1, 12; Doe's release of liability *against Tradeshift*, *id.* § 5; *Tradeshift's* ability to enforce the agreement, *id.*; and an Age Discrimination in Employment Act of 1967 waiver, *id.* § 18. Where (like here) a recital is facially erroneous because it directly contravenes substantive contract terms setting forth the consideration exchanged by the parties, that recital is not entitled to Evidence Code § 622's presumption of truth. *Stoneridge Parkway Partners, LLC v. MW Housing Partners III, L.P.*, 153 Cal. App. 4th 1373, 1382 (2007). In sum, the operative terms of the Agreement show that it "relates to" Doe's employment with Tradeshift, and the confidentiality provisions forming the basis of Lanng's breach counterclaims accordingly are unenforceable.[4] Gov. Code §§ 12964.5(b)(1)(A) & (b)(2).

---

[4] Even if the recital on which Lanng relies were entitled to a presumption of truth (and it is not), that would not prevent the Court from determining that the Settlement Agreement's confidentiality provisions "relate to" Doe's employment with Tradeshift. The recital states the Agreement does not "aris[e] out of" Doe's employment with Tradeshift, but the statutory language in Gov. Code § 12964.5(b)(1)(A) only requires that it "relate to" her employment, which is a far broader standard. *Cf., e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (finding arbitration clause with "arising out of" language "is intended to cover a narrower scope of

Second, Lanng is mistaken that California Code Civil Procedure § 1001(a) does not apply here. *See* Opp. 13. He claims his relationship with Doe was consensual and, on that basis, contends that the Settlement Agreement prohibits Doe from disclosing a "consensual sexual relationship" rather than "unlawful acts."[5] *Id.* But this misses the point: Section 1001(a) prohibits "a provision within a settlement agreement that prevents or restricts the disclosure of factual information *related to a claim filed in a civil action* regarding" unlawful acts. C.C.P. § 1001(a) (emphasis added). What matters, therefore, is whether the Settlement Agreement prohibits Doe from disclosing the allegations she made in this case. Lanng testifies that it does (Lanng Decl. ¶ 11), and explicitly argues that Doe breached the Settlement Agreement by filing her claims—and, thereby, disclosing the factual information underlying them—in this civil action. *See* Opp. 12–13. On its face, Doe's Complaint alleges "rape, sexual abuse, torture and sexual assault," placing the Agreement's confidentiality provisions squarely within section 1001(a)'s prohibitions. *See generally* ECF No. 1, ¶ 1. The Court need not decide whether the relationship was consensual to reject Lanng's argument.

### B. Civil Code § 47(b)'s Litigation Privilege Bars All of Lanng's Counterclaims

#### 1. The Litigation Privilege Bars the Breach of Contract Counterclaim

Lanng is wrong that the litigation privilege cannot apply to breach of contract claims. Case law demonstrates that it can and does apply to contract claims. *See, e.g.*, *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1497 (2008) (applying litigation privilege to claims including breach of contract); *McNair v. City & Cnty. of S.F.*, 5 Cal. App. 5th 1154, 1172 (2016) (same); *Mireskandari v. Gallagher*, 59 Cal. App. 5th 346, 387 (2020) (same).

"Application of the privilege requires consideration of whether doing so would further the policies underlying the privilege." *Vivian v. Labrucherie*, 214 Cal. App. 4th 267 (2013). "[T]he

---

disputes than language that includes 'relating' to a contract; *i.e.*, only those relating to the interpretation and performance of the contract itself."). If the California Legislature wished to limit the Silenced No More Act's scope only to non-disclosures "arising out of" employment, it could have written the law that way. But the legislature instead selected the "related to" language that prevents exactly the sort of end-run around the Act that Lanng attempts against Doe here.

[5] In this way, Lanng has paired his grotesque attempt to embarrass Doe by publicizing her diary entries with an equally grotesque interpretation of the STAND Act that would essentially repeal it, since powerful abusers could silence their victims in every instance merely by claiming (like many do) that their conduct was consensual. The Court should decline to adopt that interpretation.

1  purpose of the litigation privilege is to ensure free access to the courts, promote complete and
2  truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending
3  litigation." *Feldman*, 160 Cal. App. 4th at 1497; *see also Wentland v. Wass*, 126 Cal. App. 4th
4  1484, 1492 (2005) ("The principal purpose of the litigation privilege is to afford litigants and
5  witnesses the utmost freedom of access to the courts . . . .") (cleaned up).

6        In *Wentland*, relied on by Lanng, the court held that the breach of contract claim was "not
7  based on allegedly wrongful conduct during litigation," but rather "on breach of a separate promise
8  independent of the litigation" not to make false or derogatory statements. 126 Cal. App. 4th at
9  1494. The court observed that application of the privilege under those circumstances would "not
10 encourage finality and avoid litigation." *Id.* In *Vivian*, by contrast, the court held that the litigation
11 privilege *did apply* to bar a contract claim where the defendant made statements in alleged violation
12 of a settlement agreement in which each party had agreed "not to disparage the other." 214 Cal.
13 App. 4th at 270–71, 276–77. The court concluded that application of the litigation privilege
14 furthered the policies underlying the privilege because the dispute in the case involved "a
15 significant public concern—a governmental investigation into inappropriate conduct by a police
16 officer," and application of the privilege was in the public interest. *Id.* at 277.

17       Like *Vivian*, application of the litigation privilege here serves the policies of finality and free
18 access to the courts. Like the parties in *Wentland*, Doe attempted in good faith to settle her claims
19 with Lanng and seek finality outside of court. But **unlike** the parties in *Wentland*, there was no
20 finality: Doe agreed to Lanng's multiple requests for extensions in an effort to secure relief. But
21 Lanng never paid what he owed, and relief never came. By finally filing her complaint—six
22 months after Lanng's obligation to pay finally came due—Doe sought the finality that Lanng had
23 long deprived her. Had Doe instead acquiesced to Lanng's insistence that she remain silent in the
24 face of his nonperformance, Lanng would have succeeded in barring Doe's access to the courts.
25 This is an untenable outcome. By filing her complaint, Doe vindicated her rights as well as a
26 significant public interest in allowing victims of sexual assault free access to the courts.

27       **2.**      **The Litigation Privilege Also Bars Lanng's Other Counterclaims**
28       Lanng does not dispute that the litigation privilege bars his extortion claim. *See, e.g.*, Mot.

15:15–18 (citing *Malin v. Singer*, 217 Cal. App. 4th 1283, 1301–02 (2013); *Geragos*, 88 Cal. App. 5th at 1031–32; *Flickinger v. Finwall*, 85 Cal. App. 5th 822, 840 (2022)). Nor does Lanng dispute that the litigation privilege bars his false light and IIED claims. *See* Mot. 14:18–15:2.

Without saying so directly, Lanng's Opposition seems to suggest that the litigation privilege cannot bar his defamation claim. Opp. 18:8–19:27. Lanng relies primarily on *Rothman v. Jackson*, 49 Cal. App. 4th 1134 (1996). Opp. 18–19. But *Rothman* is inapposite. *Rothman* rejected the litigation privilege for press conference statements made by an attorney where *no* litigation was pending and, in fact, the attorney's client not only failed to *ever* bring suit, but instead reputedly *paid out* a $25 million settlement. 49 Cal. App. 4th at 1138–39, 1149. Here, by contrast, Freedman's purported statements to Finans—which Freedman denies having made—were about *already pending* litigation. Freedman Decl. ¶ 4; Ex. 10 at 8. As such, this case is governed by *Abraham v. Lancaster Community Hospital*, which held that the litigation privilege barred claims against a defendant who conveyed allegations made in a complaint to the press. 217 Cal. App. 3d 796, 823–34 (1990). Thus, the litigation privilege also bars Lanng's defamation claim.

### C. The Defamation Counterclaim Fails for Additional Reasons

The anti-SLAPP Motion made clear that Lanng's defamation claim is independently and absolutely barred by the fair and true report privilege codified in Civil Code § 47(d), as well as the First Amendment and common law, because it is predicated on statements allegedly made to the media discussing the parties' legal dispute. Mot. 18:24–20:28. Lanng has no response to the fair and true report argument, conceding that his defamation claim is absolutely barred, and must be dismissed for this additional reason.

Separate and apart from the absolute privilege afforded by Civil Code § 47(d), Counter-Defendants also submitted direct evidence that Freedman simply did not make the statements underpinning the defamation claim. Mot. 18:1–23 (citing, *inter alia*, Freedman Decl. ¶ 4). Lanng's purported evidence in response is inadmissible and proves nothing—it is unsubstantiated multiple hearsay without any foundation. *See* Counter-Defendants' Evidentiary Objections. In any event, there is no dispute that Civil Code § 47(d) absolutely bars the defamation claim.

**D.     The False Light Counterclaim Fails for Additional Reasons**

As explained in the anti-SLAPP Motion, the fundamental failure of the false light claim is that it did not identify any purportedly false information. Mot. 21:1–22:4. Rather than identifying the statements he contends cast him in a false light, Lanng parrots—without evidentiary support—the same inadequate allegations in his First Amended Counterclaims (FACC ¶¶ 21–22, 29, 81–82): that Counter-Defendant Cooley engaged a social media consultant to "create[e] a Twitter account posing as a real person" to make statements on Twitter that contained "fictional allegations against Lanng" and "were false." Opp. 5:15–6:5, 23:16–24:4. As with his FACC, Lanng fails to identify a *single* specific statement or post he contends was false. Lanng's "[g]eneral allegations of defamatory statements that [*still*] do not identify the substance of what was said" remain woefully insufficient to establish a false light claim. *Benson v. Riverside Cnty. Sheriff Dep't*, No. 20-cv-02641, 2021 WL 1895909, at *8 (C.D. Cal. Apr. 20, 2021) (quotations omitted). Lanng does identify any false statements to support his false light claim in his FACC, or in his papers in opposition to the anti-SLAPP Motion. This is, at a minimum, a concession that he cannot articulate any allegedly false statements to support his false light counterclaim.

Lanng does identify a "parody" Twitter/X account that he claims "made numerous public posts claiming to have been a victim of sexual assault perpetrated by me." Lanng Decl. ¶ 17 & Ex. 3. But again, Lanng conspicuously fails to identify any particularly false posts, let alone address and refute any of them. *See* Lanng Decl. ¶ 17. Moreover, the Twitter/X account Lanng refers to—prominently titled "*Not* Christian Lanng," Lanng Ex. 3 (emphasis added)—openly identifies itself as a "[p]*arody account* for Christian Lanng," *id*. A parody cannot support a claim. *Cf. Fisher v. Dees*, 794 F.2d 432, 436–37 (9th Cir. 1986). And to the extent the account relates to claims or potential claims against Lanng and the potential solicitation of clients, it is absolutely privileged under Civil Code section 47(b). *See, e.g., Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) ("The following acts have been deemed communicative and thus protected by the litigation privilege: attorney prelitigation solicitation of potential clients . . . .").

Lanng's failure to identify any false statements dooms his false light claim from the start. But even if he had identified a false statement, his purported evidence fails to establish that "Cooley

specifically hired a social media consultant and directed him to orchestrate a social media campaign against Lanng." Opp. 23:17–18. Lanng's sole purported evidence is a WhatsApp chain that another (erstwhile) claimant against Lanng, Diana Smith, attached to her declaration. Smith Decl. Ex. 1. In it, Counter-Defendant Cooley appears to give Smith hearsay that Cooley copied and pasted from an unidentified "specialist" who was, in turn, reporting on the activities of "the Christian Lanng Twitter account." Ex. 1. But the bare mention of "the Christian Lanng Twitter account" and its activities in these messages falls far short of establishing that a "consultant, at [the Lawyer Defendants'] direction, had *created* a Twitter account *posing* as a character *claiming* to be a victim of sexual abuse allegedly perpetrated by Lanng." Opp. 5:19–21 (emphasis added). And Smith's declaration fails to lay any foundation for the suggestion that Cooley or his firm engaged the unspecified "specialist" to launch "a social media campaign directed at Tradeshift, Inc. and Lanng." Smith Decl. ¶ 3. There is simply no *bona fide* or admissible evidence that any Counter-Defendants manufactured anything to put Plaintiff in a false light.

### E.   The Intentional Infliction of Emotional Distress Counterclaim Fails

Lanng has no answer to Counter-Defendants' authorities showing that there is a very high bar for the "outrageousness" required for intentional infliction of emotional distress claims. *See* Mot. 22:6–25 (citing cases that even death threats held insufficient to support an IIED claim). Instead, Lanng simply reiterates his weak insistence that Freedman's appearance on TMZ was outrageous even though the TMZ appearance concerned a *different* case, without mentioning Lanng, and without any evidence Freedman sent the TMZ clip to Lanng or that Lanng himself even saw it. Opp. 23:1–13. Lanng also has no answer to Counter-Defendants' arguments that the IIED claim is barred by the litigation and fair report privileges, as well as the economic loss rule. Mot. 23:14–20. For all these reasons, the IIED claim must fail.

### V.   CONCLUSION

Counter-Defendants respectfully request that their anti-SLAPP motion be granted in full.

Dated:  August 2, 2024

                                                                    */s/ Jean-Paul Jassy*
                                                                     Jean-Paul Jassy
                                                     Counsel for Cross-Defendants