**JASSY VICK CAROLAN LLP**
JEAN-PAUL JASSY, Cal. Bar No. 205513
   jpjassy@jassyvick.com
KEVIN L. VICK, Cal. Bar No. 220738
   kvick@jassyvick.com
JEFFREY A. PAYNE, Cal. Bar No. 279034
   jpayne@jassyvick.com
NICHOLAS R. HARTMANN, Cal. Bar No. 301049
   nhartmann@jassyvick.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:   310-870-7048
Facsimile:   310-870-7010

Attorneys for Counter-Defendants
JANE DOE, BRYAN J. FREEDMAN,
MILES COOLEY, and FREEDMAN
TAITELMAN + COOLEY, LLP

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>vs.<br><br>TRADESHIFT, INC., et al.,<br><br>        Defendant. | Case No. 4:24-cv-00166-JST<br><br>Honorable Jon S. Tigar<br><br>**COUNTER-DEFENDANTS' <u>EVIDENTIARY OBJECTIONS</u> TO COUNTERCLAIMANT CHRISTIAN LANNG'S PURPORTED EVIDENCE IN SUPPORT OF COUNTERCLAIMANT'S OPPOSITION TO SPECIAL MOTION TO STRIKE FIRST AMENDED COUNTERCOMPLAINT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** |
| CHRISTIAN LANNG,<br><br>        Counterclaimant,<br><br>vs.<br><br>JANE DOE; BRYAN J. FREEDMAN; MILES COOLEY and FREEDMAN, TAITELMAN, & COOLEY, LLP; and DOES 1 through 10, inclusive,<br><br>        Counter-Defendants. | Date:     August 29, 2024<br>Time:    2:00 pm<br>Courtroom  6 |

Counter-Defendants Jane Doe, Bryan J. Freedman, Miles Cooley, and Freedman Taitelman + Cooley LLP (collectively, "Counter-Defendants") respectfully submit these objections to, and move to strike, the purported evidence submitted by Counterclaimant Christian Lanng ("Lanng") in support of his Opposition to Counter-Defendants' Special Motion to Strike First Amended Countercomplaint Pursuant to C.C.P. § 425.16 ("anti-SLAPP Motion"):

**THE COURT SHOULD STRIKE THE FOLLOWING PORTIONS**
**OF THE <u>DECLARATION OF CHRISTIAN LANNG</u> (Dkt. 68)**

<u>**Objection No. 1**</u>:  Paragraph 2, page 2, line 8–9:  "Tradeshift has always been a private company."

<u>**Grounds for Objection**</u>:

- **Relevance**.  Whether or not Tradeshift is a privately held company is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion.  Fed. R. Evid. 402.

**Court's Ruling on Objection No. 1**:        **Sustained**:  _____

                                                                         **Overruled**:  _____

<u>**Objection No. 2**</u>:  Paragraph 4, page 2, line 11–13:  "The romantic relationship between Jane Doe and I involved engaging BDSM [*sic*] activities."

<u>**Grounds for Objection**</u>:

- **Relevance**.  This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion.  Fed. R. Evid. 402.

**Court's Ruling on Objection No. 2**:        **Sustained**:  _____

                                                                         **Overruled**:  _____

**Objection No. 3**: Paragraph 4, page 2, line 11–13: "As part of that, Doe obtained from a website a BDSM 'Slave Contract' that she used to create prop [*sic*] for use in our relationship."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

- **Lacks Foundation**. Lanng fails to lay a proper foundation for his testimony that it was Doe who "obtained" the Slave Contract. Lanng also fails to lay proper foundation for his testimony that Doe obtained the Slave Contract "from a website." Fed. R. Evid. 602 & 901.

- **Speculation / Lack of Personal Knowledge**. Lanng's supposition that Doe obtained the Slave Contract "as part of" and/or to "create [a] prop for use in" their purported "relationship" constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge. Fed. R. Evid. 602.

**Court's Ruling on Objection No. 3**:        **Sustained**: _____
                                              **Overruled**: _____

**Objection No. 4**: Paragraph 4, page 2, line 13–15: "Doe handwrote the terms she intended to incorporate into the document. A photograph depicting Doe's handwritten notes was incorporated into her First Amended Complaint."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

- **Lacks Foundation**. Lanng fails to lay a proper foundation for his testimony that it was Doe who "handwrote" the Slave Contract terms. Fed. R. Evid. 602 & 901. Lanng also fails to lay a proper foundation for his testimony that the handwritten notes depicted in Paragraph 57 of Doe's First Amended Complaint (Dkt. 1-1) are

Doe's, contrary to Doe's allegations that the handwriting depicted is Lanng's.  Fed. R. Evid. 602 & 901.

- **Authentication**.  Lanng fails to introduce facts or evidence sufficient to sustain a finding that the photograph depicted in Paragraph 57 of Doe's First Amended Complaint (incorporated by reference into Lanng's Declaration) is what he claims it is.  Fed. R. Evid. 901.

- **Speculation / Lack of Personal Knowledge**.  Lanng's supposition that Doe "intended" to incorporate certain handwritten terms into the Slave Contract constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge.  Fed. R. Evid. 602.

- **Improper Opinion**.  Lanng's identification of the handwriting depicted in Paragraph 57 of Doe's First Amended Complaint as Doe's handwriting (as opposed to Lanng's own handwriting, or any other person's) is an impermissible lay witness opinion because Lanng provides no testimony establishing that he has had sufficient first-hand observation of Doe's handwriting as to establish familiarity, or otherwise explaining how his identification is "rationally based on [his] perception[s]."  Fed. R. Evid. 701(a); *United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015) (""The function of lay opinion testimony is to 'describ[e] something that the [factfinder] could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event.'"); *accord, e.g.*, *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) ("It is necessary that a lay witness's opinions are based upon direct perception of the event, are not speculative, and are helpful to the determination of factual issues before the jury.") (cleaned up); *United States v. Hampton*, 718 F.3d 978, 981 (D.C. Cir. 2013) ("When a witness has not identified the objective bases for [his] opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the

opinion does not help the [factfinder] but only tells it in conclusory fashion what it should find.") (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). Without such foundation, handwriting identification is the subject of expert opinion, and Lanng provides no testimony establishing his qualification as a handwriting identification expert. Fed. R. Evid. 702.

- **Best Evidence Rule**. Lanng's testimony that the photograph depicted in Paragraph 57 of Doe's First Amended Complaint contains "terms [Doe] intended to incorporate into the document" purports to characterize the content of a writing that speaks for itself. Fed. R. Evid. 1002. There is no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the photograph's content under Fed. R. Evid. 1004.

**Court's Ruling on Objection No. 4**:     **Sustained**: _____
                                     **Overruled**: _____

**Objection No. 5**: Paragraph 5, page 2, line 16–17: "Doe subsequently typed up her version of the 'Slave Contract' and had both of us sign it."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.
- **Lacks Foundation**. Lanng fails to lay a proper foundation for his testimony that it was Doe who "typed up" the Slave Contract. Lanng also fails to lay proper foundation for his testimony that the version of the Slave Contract he and Doe signed was "her [*i.e.*, Doe's] version." Lanng also fails to lay a proper foundation for his claim that Doe "had" Lanng sign the Slave Contract, as opposed to (for example) Lanng demanding that Doe (his employee) sign the contract or face termination as alleged by Doe in her First Amended Complaint (*see, e.g.*, Dkt. 1-1 ¶ 26). Fed. R. Evid. 602 & 901.

- **Improper Opinion**. Lanng's testimony that Doe "had" Lanng sign the Slave Contract, as opposed to (for example) Lanng demanding that Doe (his employee) sign the contract or face termination as alleged by Doe in her First Amended Complaint (*see, e.g.*, Dkt. 1-1 ¶ 26), is an impermissible lay witness opinion because he provides no testimony explaining how his characterization of Doe's purported agency with regard to the Slave Contract is "rationally based on [his] perception[s]." Fed. R. Evid. 701(a); *Kilpatrick*, 798 F.3d at 379; *Freeman*, 498 F.3d at 905; *Hampton*, 718 F.3d at 981.

**Court's Ruling on Objection No. 5**:     **Sustained**: _____
    **Overruled**: _____

**Objection No. 6**: Paragraph 5, page 2, line 16–18: "I understood that Doe was expressing to me that she was a consenting and willing participant in all activities described in its contents."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

- **Lacks Foundation**. Lanng fails to lay a proper foundation for his "understanding" that Doe's purported action with respect to the Slave Contract was, standing alone, an unconditional expression of consent to "all activities described in its contents," as opposed to (for example) an expression of fear of reprisal if she refused Lanng's demands as alleged in her First Amended Complaint (*see, e.g.*, Dkt. 1-1 ¶ 26). Fed. R. Evid. 602 & 901.

- **Speculation / Lack of Personal Knowledge**. Lanng's purported understanding that Doe was "expressing" her "consent" to, or that she was "a willing participant in," all activities described in the Slave Contract constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge. Fed. R. Evid. 602.

- **Improper Opinion**. This testimony is an impermissible lay witness opinion because Lanng provides no testimony explaining how his "understanding" of Doe's purported expression of consent is "rationally based on [his] perception[s]," as opposed to (for example) an expression of fear of reprisal if she refused Lanng's demands as alleged in her First Amended Complaint (*see, e.g.*, Dkt. 1-1 ¶ 26). Fed. R. Evid. 701(a); *Kilpatrick*, 798 F.3d at 379; *Freeman*, 498 F.3d at 905; *Hampton*, 718 F.3d at 981.

**Court's Ruling on Objection No. 6**:     Sustained: _____
                                           Overruled: _____

**Objection No. 7**: Paragraph 5, pages 2–3, lines 2:17–3:2: "I further understood that Doe and I had agreed to the 'Red' provision to safeguard her safety and well-being as we engaged in BDSM activities."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

- **Lacks Foundation**. Lanng fails to lay any foundation for testimony regarding the "Red" provision, including what it is, what it says, or where it is found. Lanng also fails to lay foundation for his testimony that Doe "agreed" to the "Red" provision. Lanng also fails to lay foundation for his testimony speculating why Doe "agreed" to the "Red" provision. Fed. R. Evid. 602 & 901.

- **Speculation / Lack of Personal Knowledge**. Lanng's testimony that Doe "agreed" to the "Red" provision, and why, constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge. Fed. R. Evid. 602.

- **Improper Opinion**. This testimony is an impermissible lay witness opinion because Lanng provides no testimony explaining how his "understanding" of Doe's

purported expression consent to the "Red" provision "rationally based on [his] perception[s]," as opposed to (for example) an expression of fear of reprisal if she refused Lanng's demands as alleged in Doe's First Amended Complaint (*see, e.g.*, Dkt. 1-1 ¶ 26). Fed. R. Evid. 701(a); *Kilpatrick*, 798 F.3d at 379; *Freeman*, 498 F.3d at 905; *Hampton*, 718 F.3d at 981.

- **Best Evidence Rule**. To the extent Lanng's testimony regarding the "Red" provision refers to the content of the Slave Contract, such testimony purports to selectively characterize the content of a writing that speaks for itself. Fed. R. Evid. 1002. There is no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the Slave Contract under Fed. R. Evid. 1004.

**Court's Ruling on Objection No. 7**:   **Sustained**: _____

   **Overruled**: _____

**Objection No. 8**: Paragraph 6, page 3, line 2–4: ". . . Doe kept a personal diary that she gave me access to as part of our BDSM activities."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.
- **Lacks Foundation**. Lanng fails to lay any foundation for his testimony regarding the existence of, or Doe's actions regarding, or the contents of a "personal diary." Lanng also fails to lay any foundation for his testimony that Doe voluntarily "gave [him] access" to her purported diary, including his basis for implying that access was "given" rather than demanded or taken, and how such access was achieved as practical or technical matter. Fed. R. Evid. 602 & 901.
- **Speculation / Lack of Personal Knowledge**. Lanng's testimony that Doe "kept" a "personal diary," as opposed to (for example) being forced to maintain a diary by Lanng in a shared document monitored by Lanng as alleged in Doe's First Amended

Complaint (see Dkt. 1-1, ¶ 6), constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge. Lanng's testimony that Doe "gave [Lanng] access to" her personal diary "as part of our BDSM activities," as opposed to (for example) providing Lanng such access for fear of being beaten with a cane if she did not as alleged in her First Amended Complaint (Dkt. 1-1 ¶ 6), constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge. Fed. R. Evid. 602.

- **Improper Opinion**. This testimony is an impermissible lay witness opinion because Lanng provides no explanation or foundation for how his suppositions that Doe (i) "kept" a personal diary of her own volition and (ii) voluntarily "gave" Lanng access to that diary "as part of our BDSM activities" are "rationally based on [his] perception[s]." Fed. R. Evid. 701(a); *Kilpatrick*, 798 F.3d at 379; *Freeman*, 498 F.3d at 905; *Hampton*, 718 F.3d at 981.

**Court's Ruling on Objection No. 8**:    **Sustained**: _____

                                                                  **Overruled**: _____

**Objection No. 9**: Exhibit 2 to the Declaration of Christian Lanng should be excluded in its entirety and stricken from the record.

**Grounds for Objection**:

- **Relevance**. This document is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402. The document is introduced for no other purpose than to embarrass, intimidate, and mock Jane Doe; and/or to glorify Lanng's own sexual prowess; and/or to tout Lanng's dominance over Jane Doe. The document accordingly should be excluded because its probative value with respect to the issues raised in Counter-Defendants' Anti-SLAPP Motion—and there is no such value—is outweighed by its tendency to prejudice. Fed. R. Evid. 403.

- **Authentication**. Lanng fails to introduce facts or evidence sufficient to sustain a finding that Exhibit 2 is what Lanng claims it is. Lanng fails to explain, for example, how he came into possession of the Exhibit and in what form, or why there is numbering at the bottom of the pages of the Exhibit. Fed. R. Evid. 901.

**Court's Ruling on Objection No. 9**:     **Sustained**: _____

                                           **Overruled**: _____

**Objection No. 10**: Paragraph 8, page 3, line 7–9: "In 2020, Doe's employment with Tradeshift was terminated, along with other employees, as part of layoffs due to the economic uncertainty surrounding the COVID-19 Pandemic."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

**Court's Ruling on Objection No. 10**:    **Sustained**: _____

                                           **Overruled**: _____

**Objection No. 11**: Paragraph 10, page 3, line 14–16: "The investment would have immensely benefitted Tradeshift's shareholder [*sic*] . . ."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

**Court's Ruling on Objection No. 11**:    **Sustained**: _____

                                           **Overruled**: _____

**Objection No. 12**: Paragraph 11, page 4, line 1–4: "I entered into a Settlement Agreement with Doe, paying her $10 million to not bring any claims based upon her allegations against myself and to not disclose private information about me, which implicitly included the details of our romantic relationship."

**Grounds for Objection**:

- **Best Evidence Rule**. Lanng's testimony purports to describe the content of the Settlement Agreement, which speaks for itself. Fed. R. Evid. 1002. Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the Agreement under Fed. R. Evid. 1004; and the Settlement Agreement is a "writing . . . closely related to a controlling issue" of the merits of Lanng's breach counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).
- **Improper Legal Conclusion**. Lanng's testimony regarding the legal effects of the Settlement Agreement's terms, including what they purportedly "implicitly included," constitutes an improper legal conclusion. Fed. R. Evid. 701, 702, 704; *United State v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009).

**Court's Ruling on Objection No. 12**:     **Sustained**: _____
                                            **Overruled**: _____

**Objection No. 13**: Paragraph 12, page 4, line 5–7: "So Doe and I agreed to a payment structure whereby larger multimillion dollar payments were agreed to based upon the understanding that I would not have the ability to pay until after the HSBC investment."

**Grounds for Objection**:

- **Relevance**. This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.
- **Speculation / Lack of Personal Knowledge**. Lanng's testimony that Doe "agreed to a payment structure," or that such agreement was based on Doe's purported "understanding that [Lanng] would not have the ability to pay until after the HSBC

investment," constitutes impermissible speculation regarding Doe's mental state and motivations beyond Lanng's personal knowledge.  Fed. R. Evid. 602.

- **Best Evidence Rule**.  Lanng's testimony purports to describe the content of the amendments to the Settlement Agreement, which speak for themselves.  Fed. R. Evid. 1002.  Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the amendments under Fed. R. Evid. 1004; and the amendments are "writing[s] . . . closely related to a controlling issue" of the merits of Lanng's breach counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).

**Court's Ruling on Objection No. 13**:     **Sustained**: _____

**Overruled**: _____

**Objection No. 14**:  Paragraph 13, page 4, line 7–8:  "The HSBC investment was continually delayed for reasons unrelated to Doe."

**Grounds for Objection**:

- **Relevance**.  This testimony is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion.  Fed. R. Evid. 402.

**Court's Ruling on Objection No. 14**:     **Sustained**: _____

**Overruled**: _____

**Objection No. 15**:  Paragraph 13, page 4, line 8–9:  "Thus Doe and I entered into three separate amendments to the settlement agreement.  As part of each amendment I made additionally payments [*sic*] to Doe."

**Grounds for Objection**:

- **Best Evidence Rule**.  Lanng's testimony purports to describe the content of the amendments to the Settlement Agreement, which speak for themselves.  Fed. R.

Evid. 1002.  Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the amendments under Fed. R. Evid. 1004; and the amendments are "writing[s] . . . closely related to a controlling issue" of the merits of Lanng's breach counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).

**Court's Ruling on Objection No. 15**:     **Sustained**:   _____

**Overruled**:   _____

**Objection No. 16**:  Paragraph 14, page 4, line 10–12: "It later came to my attention that Jane Doe's attorney, Bryan Freedman appeared on TMZ with an enlarged copy of the 'Slave Contract' with my name redacted out."

**Grounds for Objection**:

- **Lacks Foundation**.  Lanng fails to lay any foundation for his testimony that Bryan Freedman's appearance on TMZ "came to his attention," including when or by what means it came to his attention.  Lanng does not even state, for example, whether he saw the video himself or, instead, learned of its contents through a third party.  Lanng further fails to lay any foundation establishing his personal knowledge that Bryan Freedman appeared "with an enlarged copy of the 'Slave Contract' with my name redacted out," including: (i) why Lanng believes it was a copy of the 'Slave Contract' alleged in Doe's First Amended Complaint; (ii) why he believes that the copy was "enlarged"; (iii) why he believes that it was his name that was "redacted out" of the document.  Fed. R. Evid. 602 & 901.
- **Speculation / Lack of Personal Knowledge**.  Because Lanng fails to establish any basis for his knowledge regarding the events of Bryan Freedman's appearance on TMZ, Lanng's testimony regarding that appearance constitutes impermissible speculation.  Fed. R. Evid. 602.

- **Hearsay**. To the extent Lanng's understanding of the events of Bryan Freedman's appearance on TMZ is based on a description provided to Lanng by an unidentified third party, the testimony recounts the contents of Lanng's communications with that third party that do not fall into any hearsay exception. Fed. R. Evid. 802.

- **Best Evidence Rule**. Lanng's testimony purports to describe the content of a video of Bryan Freedman on TMZ, which video speaks for itself. Fed. R. Evid. 1002. Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the video under Fed. R. Evid. 1004; and the video is a "recording . . . closely related to a controlling issue" of the merits of Lanng's IIED counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).

**Court's Ruling on Objection No. 16**:        **Sustained**: _____

                                               **Overruled**: _____

**Objection No. 17**: Paragraph 17, page 5, line 2–3: "This account made numerous public posts claiming to have been a victim of sexual assault perpetrated by me. This Twitter account also replied and engaged with media outlets that were reporting on Tradeshift and this litigation."

**Grounds for Objection**:

- **Best Evidence Rule**. Lanng's testimony purports to describe the contents of Twitter posts that speak for themselves. Fed. R. Evid. 1002. Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the posts under Fed. R. Evid. 1004; and the posts are "writing[s] . . . closely related to a controlling issue" of the merits of Lanng's false light counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).

- **Hearsay**. The testimony recounts the contents of communications that do not fall into any hearsay exception. Fed. R. Evid. 802.

| | |
|---|---|
| **Court's Ruling on Objection No. 17**: | **Sustained**: _____ |
| | **Overruled**: _____ |

**Objection No. 18**: Exhibit 3 to the Declaration of Christian Lanng should be excluded in its entirety and stricken from the record.

**Grounds for Objection**:

- **Lacks Foundation**. Neither Lanng's testimony regarding Exhibit 3, nor Exhibit 3 itself, lays any foundation for the "@_ChristianLanng" Twitter account's connection to Counter-Defendants or this case.

- **Relevance**. Because there is no foundation for Exhibit 3's connection to Counter-Defendants or this case, the Exhibit is not relevant to the resolution of Counter-Defendants' anti-SLAPP Motion. Fed. R. Evid. 402.

| | |
|---|---|
| **Court's Ruling on Objection No. 18**: | **Sustained**: _____ |
| | **Overruled**: _____ |

**Objection No. 19**: Paragraph 18, page 5, line 8–10: "Attached as Exhibit 4 is a true and correct copy of the email I received containing Bryan Freedman's comments on my countercomplaint."

**Grounds for Objection**:

- **Best Evidence Rule**. Lanng's testimony purports to describe the content of an e-mail that speaks for itself. Fed. R. Evid. 1002. Lanng offers no basis to allow secondary evidence (*i.e.*, Lanng's testimony) regarding the content of the e-mail under Fed. R. Evid. 1004; and the e-mail is a "writing . . . closely related to a controlling issue" of the merits of Lanng's defamation counterclaim, such that his testimony is inadmissible under Fed. R. Evid. 1004(d).

- **Lacks Foundation**. For the reasons set forth in Counter-Defendants' objection to Exhibit 4 itself, *infra*, Lanng's characterization of the Exhibit as "containing Bryan Freedman's comments" are wholly without foundation. Fed. R. Evid. 602 & 901.

**Court's Ruling on Objection No. 19**:   **Sustained**: _____
                                          **Overruled**: _____

**Objection No. 20**: Exhibit 4 to the Declaration of Christian Lanng should be excluded in its entirety and stricken from the record.

**Grounds for Objection**:

- **Hearsay**. Exhibit 4 purports to be an e-mail from a non-party named Debora Lima, Media Director at Sensei Advisory (apparently a public relations firm) to, among others, Lanng and his counsel in this action. The e-mail accordingly is an out-of-court statement. Fed. R. Civ. P. 801(c)(1). Further, the e-mail is offered for the truth of Lima's assertion within the e-mail: that the italicized language in the e-mail is a "statement" attributable to Counter-Defendant Bryan Freedman. Fed. R. Civ. P. 801(c)(2). Accordingly, the entirety of Lima's e-mail is a communication that constitutes hearsay, and the e-mail must be excluded in its entirety. Fed. R. Evid. 802. Further, Lima's hearsay e-mail does not fall into any hearsay exception (and Lanng does not even attempt to offer testimony establishing that it does). Fed. R. Evid. 803.

- **Double Hearsay**. In her hearsay e-mail, Debora Lima claims that certain text (emphasized in italics) was "[p]rovided to a Danish journalist named Jesper Hoberg." Lanng's brief thereafter claims the italicized language was Counter-Defendant Bryan Freedman's "statement" to Hoberg. But Lima's hearsay e-mail does not represent that she witnessed Freedman utter or publish this statement to Hoberg; and Lanng offers no testimony to that effect (which would be inadmissible in any event). To the contrary, Lima describes the italicized language as having been

provided "*to . . . Hoberg*" rather than herself. Lima further does not state who communicated the italicized language to her—*i.e.*, whether Hoberg or someone else purportedly passed it along. Thus, Lima's e-mail relays the contents of an unidentified third party's communication to her regarding the contents of Freedman's purported statement to Hoberg. There may have been additional players in Lima's game of telephone; but the italicized language is double hearsay at least. That second (or third, or fourth) layer of hearsay does not fall into any hearsay exception. Fed. R. Evid. 802 & 803.

- **Lacks Foundation**. Exhibit 4 fails to provide any foundation for the assertion (whether by Lanng or by Lima) that the italicized language within the depicted e-mail: (i) is attributable to Bryan Freedman; or (ii) was published to Hoberg. Lima's e-mail provides no details about how the "statement" was purportedly communicated to Hoberg, by whom, when, or how the purported "statement" came into her possession. (Although not relevant to this objection, Bryan Freedman unequivocally denies having made the "statement" attributed to him, *see* Dkt. 55-6 ¶ 4.) Nor does any other evidence that might conceivably lay such foundation, even circumstantially, appear in the record: the italicized language does not appear in the Finans article published by Hoberg, which Counter-Defendants attached as Exhibits 9 & 10 to their anti-SLAPP motion (Dkt. 55-12 & 55-13).

- **Lacks Foundation**. Exhibit 4 fails to lay any foundation for Lima's assertions below the italicized language, including that: (i) the purported "statement" contains "GLARING falsehoods" regarding the time period during which Jane Doe was sexually abused and that Lanng did not pay on the Settlement Agreement; and (ii) that the statement reflects "Freedman . . . lying on the record."

- **Improper Legal Conclusion**. Lima's statements (which statements appear below the italicized language in Exhibit 4), including that Doe was not sexually abused by Lanng "at all," that Lanng paid on the Settlement Agreement, and that Bryan Freedman's purported "statement" to the contrary were "GLARING falsehoods,"

constitute improper legal conclusions.  Fed. R. Evid. 701, 702, 704; *United State v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009).

**Court's Ruling on Objection No. 20**:     **Sustained**: _____

                                                       **Overruled**: _____

**IT IS SO ORDERED.**

Dated: _____  _____

                                                                       Hon. Jon S. Tigar

Respectfully submitted,

Dated:   August 2, 2024

                                                     /s/  Jean-Paul Jassy
                                                     Attorney for Counter-Defendants