**WILLKIE FARR & GALLAGHER LLP**
NICHOLAS REDDICK (SBN 288779)
  nreddick@willkie.com
ERICA S. MIRANDA (SBN 325188)
  emiranda@willkie.com
ALYXANDRA VERNON (SBN 327699)
  avernon@willkie.com
IMAHN DAEENABI (SBN 363932)
  idaeenabi@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:  (415) 858-7595

Attorneys for Plaintiff

**WILLKIE FARR & GALLAGHER LLP**
MATTHEW GURVITZ (SBN 272895)
  mgurvitz@willkie.com
2029 Century Park East
Los Angeles, CA 90067-2905
Telephone:  (310) 855-3085

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>     v.<br><br>CHRISTIAN LANNG,<br><br>          Defendant. | CASE NO.: 4:24-cv-00166-JST<br><br>**SECOND AMENDED COMPLAINT FOR**<br><br>  1) **BREACH OF CONTRACT and**<br>  2) **PROMISSORY ESTOPPEL**<br><br>Ctrm.:   6, 2nd Floor<br>         Hon. Jon S. Tigar<br>         1301 Clay Street<br>         Oakland, CA  94612<br><br>Complaint Removed:  January 9, 2024<br><br>**DEMAND FOR JURY TRIAL** |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Plaintiff Jane Doe ("Plaintiff" or "Doe"), by and through her counsel, files this Second Amended Complaint and demand for jury trial against Defendant Christian Lanng ("Defendant" or "Lanng") (collectively, the "Parties"), and alleges as follows:

**NATURE OF THE ACTION**

1.      Ms. Doe files this amended complaint for damages arising out of Defendant Lanng's material breach of a settlement agreement intended to resolve Ms. Doe's claims against him regarding appalling physical, emotional, sexual, and mental abuse he inflicted upon her over a multiyear period from 2014 to 2020.

2.      This abuse included the horrific rape, sexual assault, beating, humiliation, dehumanization, psychological control and torture, financial control and manipulation, and trafficking carried out by Defendant against Ms. Doe.  The abuse was spelled out in a disturbing "Slave Contract" that Defendant, who at the time was Ms. Doe's direct supervisor, coerced her into signing and abiding by.

3.      Following the years of abuse, Ms. Doe was effectively bedridden and a shell of her former self. She suffered, among other things, from nausea, vomiting, night terrors, panic attacks, severe anxiety, deep feelings of helplessness and insecurity, and lived in constant fear.  She was diagnosed with Complex Post Traumatic Stress Disorder and Major Depressive Disorder—both of which have contributed to her inability to seek further employment and limit her day-to-day functioning.

4.      In 2022, after working with several medical professionals with expertise in treating victims of trauma, Ms. Doe was finally able to hire counsel and attempt to seek justice for the mistreatment by Defendant.

5.      On May 14, 2022, Defendant Lanng and Ms. Doe entered into a Confidential Settlement and Mutual Release (the "Original Settlement Agreement"), according to which the Defendant agreed to pay Ms. Doe the sum of $10,000,000 in a lump sum payment. Ex. A.  In exchange, Ms. Doe, among other things, forewent the prosecution of her claims against the Defendant (and other purportedly released parties).

1

6.    Yet, Defendant failed to make good on his promise. When the first major payment became due, Defendant Lanng persuaded Ms. Doe to sign the First Amendment to the Original Settlement Agreement on September 12, 2022, with the promise that her $10,000,000 payment would be forthcoming in three installments over the course of the next year. Ex. B. Yet, Lanng again failed to make good on his promise to compensate Ms. Doe pursuant to the agreement. Instead, without paying a single installment, he again persuaded Ms. Doe to sign additional extensions to his payment deadline memorialized in the Second Amendment dated January 11, 2023, and the Third Amendment dated March 1, 2023. Exs. C, D.

7.    As each deadline to pay Ms. Doe came and went, Defendant Lanng represented to her that the Company for which Lanng still served as CEO and Chairman, and that Ms. Doe had worked for during the period of abuse, was on the verge of closing a substantial transaction which would enable the Defendant to make good on the promise to pay Ms. Doe. Defendant Lanng also threatened that, if Ms. Doe pursued claims against him and the employer, public disclosure of the alleged abuse would cause the deal to collapse leaving Defendant unable to perform his settlement obligations.

8.    Ms. Doe—who was still recovering from the years-long period of abuse—relented, fearing that if she did not she would be left with nothing. Ms. Doe did not file her claims and the deal closed. Yet, Defendant Lanng failed to make good on his promise.

9.    And as Ms. Doe soon found out, Defendant was intent on prolonging her suffering. Shortly after attempting to persuade Ms. Doe to sign a fourth amendment to the Original Settlement Agreement in June 2023—this time promising her a $5,000,000 up-front payment with the rest in the form of stock in the company he led—Defendant Lanng wrote to another woman he admitted to assaulting: "I will fuck [Doe] over trusdt [sic] me." And he did.

10.    After years of waiting, while her life remains in limbo, Ms. Doe seeks to hold Defendant Lanng to his years-long promise to compensate her. To date, Lanng owes Doe at least $9.75 million, along with interest and attorneys' fees, pursuant to the Original Settlement Agreement and the three amendments thereto. Doe therefore brings this action for breach of contract and, in the alternative, promissory estoppel, against Defendant Lanng.

2

**THE PARTIES**

11.    Plaintiff Doe is, and at all relevant times was, an individual residing in the State of California.  Doe worked under the supervision of Lanng from 2014 until her termination in 2020.  Given the sensitive nature of this case, Doe relies on case law permitting her the right to bring this action pseudonymously.[1]

12.    From the period when the abuse started until after he executed all versions of the settlement agreement, Lanng was an individual residing in the State of California.  In or around May 2023, Lanng's domicile became London, United Kingdom.  On information and belief, Lanng still resides in the United Kingdom and is a citizen of Denmark.

**JURISDICTION AND VENUE**

13.    The United States District Court, Northern District of California has jurisdiction in this matter pursuant to Article III, Section 2, Clause 1 of the United States Constitution, which provides federal courts with jurisdiction in cases "between a State and Citizens of another State," and 28 U.S.C. § 1332(a), which grants the District Court original jurisdiction in all civil actions "where the matter in controversy exceeds the sum or value of  $75,000, exclusive of interests and costs, and is between[] . . . (2) citizens of a State and citizens or subjects of a foreign state[] . . . ."

14.    The damages Doe seeks herein are well above the minimum jurisdictional amount of 28 U.S.C. § 1332(a) and will be established at trial, according to proof.

15.    The Parties were diverse at the time Ms. Doe filed this action in December 2023 and when Defendants removed this action to the Northern District of California because Ms. Doe is and at all times relevant herein has been a citizen of California, while Defendant Lanng—a citizen of Denmark—has been domiciled in London, United Kingdom since at least May 2023.  The Parties remain diverse at present.

---

[1] *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) ("[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy.") (citations omitted); *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) (stating that courts have permitted the use of pseudonyms when necessary "to protect a person from harassment, injury, ridicule or personal embarrassment").

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

16.     This Court has personal jurisdiction over Defendant Lanng because he conducts business in California and committed a number of the acts herein complained of in California, including but not limited to the signing of the Original Settlement Agreement and the three amendments thereto, such that he has sufficient minimum contacts in California and otherwise purposefully availed himself of the laws and benefits of California so as to render the exercise of jurisdiction over him by this Court consistent with traditional notions of fair play and substantial justice.  The settlement agreements at issue also include clauses stating that Defendant "irrevocably consents to the personal jurisdiction of the courts located in the State of California" and that the agreements "shall be governed by and construed in accordance with the laws of the State of California without regard to California's choice of law rules."  Ex. A, §§ 9.4, 19.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial number of the acts and omissions giving rise to the claims herein, including but not limited to the signing of the Original Settlement Agreement and the three amendments thereto, all occurred in the Northern District of California.

## DIVISIONAL ASSIGNMENT

18.     Pursuant to Local Rules 3-5(b) and 3-2(c), this action should be assigned to the Oakland Division of the Northern District of California because this action arises in the county of San Francisco and has previously been assigned to the Oakland Division.

## STATEMENT OF FACTS

19.     In April 2014, Defendant Lanng coerced Ms. Doe into signing a "Slave Contract." Ex. E.

20.     This so-called contract, which Defendant Lanng also signed, mandated that Ms. Doe serve as a "Slave" to Defendant Lanng, the "Master."  Defendant Lanng required Ms. Doe to be sexually available for him at all times.  He also required that Ms. Doe submit to sexual abuse and psychological and physical punishment, to include:

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

**Exhibit E at 6**

#### 3.0.0 Punishment
The slave agrees to accept any punishment the master decides to inflict, whether earned or not.

#### 3.0.1 Rules of Punishment
Punishment of the slave is subject to certain rules designed to protect the slave from intentional abuse or permanent bodily harm (see 4.0.0).

Punishments can include the following things:

1. Spanking
2. Paddling
3. Whipping
4. Caning
5. Clamps
6. Short or long-term bondage
7. Hot wax
8. Slapping
9. Humilation
10. Electricity
11. Anything that Master sees fit which is not excluded in the exclusions above.

The slave agrees to always taking her punishments without being angry, sullen or frustrated with her Master and thank him after. The Slave agrees to always try to keep her ordered position while taking the punishment and keep her body lose and not tight.

21.    Over the course of years—from in or around 2014 through approximately mid-2017—Defendant Lanng repeatedly bound, gagged, and penetrated Ms. Doe without her consent.    In addition to raping Ms. Doe, Defendant Lanng also beat her, humiliated her, sexually harassed her, sexually assaulted her, controlled and manipulated her, and trafficked her around the world.

22.    Defendant Lanng subsequently admitted to another woman who, on information and belief, he coerced into signing a similar sex slave contract, that holding her to that agreement constituted rape.  *See* Ex. F.

23.    Defendant Lanng's abuse left Ms. Doe bedridden, forcing her to take an extended medical leave from her employment beginning in or around 2017.  Doe's medical leave lasted until she was terminated by her employer in May 2020.

24.    As a result of Defendant Lanng's physical, sexual, and psychological abuse, Ms. Doe has suffered and continues to suffer significant physical, psychological, and emotional trauma.  As

5

a result of this trauma, Ms. Doe regularly experiences nausea, vomiting, night terrors, and panic attacks. She suffers from severe anxiety, lives in constant fear, and experiences deep feelings of helplessness and insecurity. Ms. Doe's treating psychiatrist has diagnosed her with Complex Post Traumatic Stress Disorder and Major Depressive Disorder—both of which he attributes to the abuse she suffered at the hands of Defendant Lanng. Ms. Doe has required years of medical treatment, which she will continue to require for the foreseeable future. Ms. Doe has been unable to seek further employment and continues to face severe limitations in her day-to-day functioning as a result of the trauma Defendant inflicted upon her.

25. In late 2021, Ms. Doe retained counsel to pursue claims against Defendant Lanng, her employer, and others. On May 14, 2022, Defendant Lanng agreed to pay Ms. Doe $10 million to resolve her claims of abuse. Defendant Lanng's payments to Ms. Doe were to occur on the following schedule:

- **Holding Payment ($250,000)**—within 9 days of Original Settlement Agreement
- **First Settlement Payment ($4,750,000)**—within 120 days of Original Settlement Agreement
- **Second Settlement Payment ($2,500,000)**—within 180 days of Original Settlement Agreement
- **Final Settlement Payment ($2,500,000)**—within 365 days of Original Settlement Agreement

26. In return for the payments, Ms. Doe agreed, among other things, to forego prosecution of any claims against Defendant Lanng and other individuals and entities.

27. Ms. Doe lived up to her end of the bargain, which included keeping the details of the harrowing abuse she suffered confidential. But Defendant Lanng failed to make the required payments under the Original Settlement Agreement other than the initial holding payment of $250,000. Specifically, Section 4.1 of the Original Settlement Agreement required Defendant Lanng to pay Ms. Doe $4,750,000 by September 11, 2022. But Defendant Lanng failed to make this required payment or any subsequent payments.

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

28.    At the time, Defendant Lanng claimed that his ability to pay the amount due under the Original Settlement Agreement depended on the closing of a deal between the company he led and an investor.  Defendant Lanng repeatedly represented to Ms. Doe's counsel that closing the deal would provide him the ability to access funds that he could use to pay Ms. Doe what she was owed under the Original Settlement Agreement, and that Ms. Doe's pursuit of claims against him would prevent him from being able to pay her.

29.    Defendant Lanng thus demanded that Doe sign an amendment to the Original Settlement Agreement that provided him additional time to pay Ms. Doe the full settlement amount. Again, Defendant Lanng claimed that closing the deal being negotiated would allow him to pay Ms. Doe the $10 million he owed under the settlement agreements. Ex. G.

30.    Desiring to move on from the horrendous abuse she endured so she could recover and avoid reliving her trauma through protracted and painful litigation, and fearful that prosecuting her claims would do as Defendant Lanng threatened—leave her with nothing—Ms. Doe agreed to sign the First Amendment to the Settlement Agreement, dated September 12, 2022.  Exhibit B.

31.    The First Amendment extended the time for Defendant Lanng to pay Ms. Doe the agreed-upon $10 million.  Specifically, Defendant Lanng's payments to Ms. Doe were to occur on the following amended schedule:

- **Extension Payment ($175,000)**[2]—within 5 days of First Amendment
- **First Settlement Payment ($4,750,000)**—on or before January 9, 2023
- **Second Settlement Payment ($2,500,000)**—within 60 days of the First Settlement Payment
- **Final Settlement Payment ($2,500,000)**—within 185 days of the Second Settlement Payment

32.    Defendant Lanng made the extension payment of $175,000, yet failed to make the required First Settlement Payment by January 9, 2023.

---

[2] Pursuant to the First Amendment, this Extension Payment does not count toward the total $10 million Defendant Lanng agreed to pay Ms. Doe to resolve her claims.  Rather, the Extension Payment was consideration for Ms. Doe's agreement to extend Defendant Lanng's time to pay what he had already promised.

7

33.    When that deadline arrived, Defendant Lanng again pleaded with Doe to enter into another amendment to provide additional time to make the previously negotiated payments.  He again represented that if Ms. Doe were to go public with her claims against him and his company, the deal being negotiated would fall apart and Ms. Doe would never receive the payments owed to her. Ex. H.  Conversely, Defendant Lanng's attorney claimed that if Ms. Doe was patient, she would "likely be a wealthy woman in a matter of weeks." *Id.*

34.    Fearing such a possibility and wanting to focus on her recovery, Ms. Doe agreed to sign a Second Amendment to the Original Settlement Agreement, dated January 11, 2023. Exhibit C.  The Second Amendment extended the time for Lanng to pay Doe the agreed-upon $10 million. Specifically, Defendant Lanng's payments to Ms. Doe were to occur on the following amended schedule:

- **Extension Payment ($100,000)**[3]—within 5 days of Second Amendment
- **First Settlement Payment ($4,750,000)**—on or before February 8, 2023
- **Second Settlement Payment ($2,500,000)**—within 60 days of Second Amendment
- **Final Settlement Payment ($2,500,000)**—within 155 days of Second Amendment

35.    Defendant Lanng made the Extension Payment of $100,000 but failed to make the required First Settlement Payment by February 8, 2023.

36.    Defendant Lanng came back to Ms. Doe again, explaining that the deal being negotiated was progressing but had not-yet closed.  He asked for another extension.  Ex. I.

37.    Based on Defendant Lanng's representations, and wanting to avoid litigation, Ms. Doe agreed to sign a Third Amendment to the Original Settlement Agreement, dated March 1, 2023. The Third Amendment extended the time for Lanng to pay Doe the agreed-upon $10 million.  Exhibit D. Specifically, Defendant Lanng's payments to Ms. Doe were to occur on the following schedule:

---

[3] Pursuant to the Second Amendment, this Extension Payment does not count toward the total $10 million Defendant Lanng agreed to pay Ms. Doe to resolve her claims.  Rather, the Extension Payment was consideration for Ms. Doe's agreement to extend Defendant Lanng's time to pay what he had already promised.

8

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

- **On or before March 17, 2023**:
  - Payment of $400,000; or
  - Payment of $4,850,000
- **If Defendant elected to pay $400,000 instead of the larger payment**:
  - If on or before April 17, 2023, payment of $4,550,000
  - If on or before May 17, 2023, payment of $4,650,000
  - If on or before June 19, 2023, payment of $4,750,000
- **Payment of $2,500,000—on or before August 17, 2023**
- **Payment of $2,500,000—on or before December 18, 2023**

38.    While Defendant Lanng made the initial payment of $400,000, he never made any further payment to Ms. Doe as required by the Third Amendment, thereby materially breaching the agreement.[4]

39.    When Ms. Doe approached Defendant Lanng for payment in June 2023, he attempted to again induce Ms. Doe into signing an extension agreement.  Defendant Lanng's counsel told Ms. Doe's counsel that he would pay Ms. Doe $5 million at the close of the deal being negotiated along with a portion of stock in his company that would have otherwise gone to Defendant Lanng.  A true and correct copy of a WhatsApp message from Defendant Lanng to a third party and that includes a screenshot of an email from Defendant Lanng's counsel to Ms. Doe's counsel regarding Defendant Lanng's offer for a fourth amendment is attached hereto as **Exhibit J** and incorporated herein by reference.

---

[4] Because he elected to make the initial payment of $400,000, instead of $4,850,000, and subsequently failed to make the additional payments, Defendant Lanng owes Ms. Doe additional payments of $4,750,000, $2,500,000, and $2,500,000, totaling $9,750,000.

9

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

**Exhibit J**



40.   Despite these assurances, while attempting to negotiate for a fourth extension, Defendant Lanng sent a text to another woman he had also subjected to a slave contract that included a copy of the above email and expressed his intent to "fuck [Doe] over[.]"  A true and correct copy of text messages from Lanng expressing this intent are attached hereto as **Exhibit K** and incorporated herein by reference.

**Exhibit K**




SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

41.    Ms. Doe refused to sign a fourth extension agreement.  Mr. Lanng therefore owed Ms. Doe $9,750,000 in settlement payments as of December 1, 2023.

42.    On or about August 1, 2023, the deal his company had been negotiating, and  which he had used as an excuse to forestall Ms. Doe from seeking justice through the courts, closed.  But Defendant Lanng still failed to pay Ms. Doe another penny.  And although years have passed since that time, Ms. Doe is still not a "wealthy woman" as Defendant promised.

43.    On December 7, 2023, Ms. Doe filed an action against Defendant Lanng and others in San Francisco Superior Court.  *See Doe v. Tradeshift, Inc., et al.*, No. CGC-23-610929 (Cal. Super. Ct. Dec. 7, 2023), dkt. No. 1.  Ms. Doe subsequently filed a First Amended Complaint on December 11, 2023.  *Doe v. Tradeshift, Inc., et al.*, No. CGC-23-610929 (Cal. Super. Ct. Dec. 7, 2023), dkt. No. 5.  The First Amended Complaint alleged that Ms. Doe suffered sexual assault, sexual abuse, sexual harassment, rape, torture, trafficking, and financial and emotional manipulation and abuse at the hands of Defendant Lanng.  ECF No. 1-1.  In addition, the First Amended Complaint alleged that Defendant Lanng breached the Original Settlement Agreement he entered into with Ms. Doe.  ECF No. 1-1, at 13, 15.

44.    The action was removed to this Court on January 9, 2024.  ECF. No. 1.  Defendant Lanng subsequently filed a countercomplaint and answer on April 9, 2024.  ECF Nos. 37, 38.  Defendant Lanng then filed an amended countercomplaint on April 16, 2024, alleging, among other things, that Ms. Doe breached the Original Settlement Agreement, as amended, by filing claims against him following his failure to make the settlement payments required under these agreements.  ECF No. 43, at 14-17.  Ms. Doe filed a special motion to strike the amended countercomplaint on May 30, 2024.  ECF No. 55.  Before this Court ruled on the motion and before Ms. Doe filed an answer to the countercomplaint, arbitration was compelled by another party to the action, and this Court stayed the action pending the completion of arbitration.  ECF Nos. 76, 77.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

45.    Doe realleges and incorporates in this cause of action each and every allegation contained in this complaint as though fully set forth herein.

46.    Defendant Lanng is liable to Ms. Doe for materially breaching the Settlement Agreement, as amended by the First, Second, and Third Amendments, by failing to pay the full $10 million owed to Ms. Doe pursuant to these agreements.

47.    Defendant Lanng and Ms. Doe entered into a valid and binding Settlement Agreement on May 14, 2022, and thereafter entered into three subsequent valid and binding amendments to the Settlement Agreement, as set forth herein.  To the extent that any provision of the Original Settlement Agreement or its subsequent amendments is found to be invalid or unenforceable, the other terms of the Settlement Agreements, including the payments pertaining to the agreed-to settlement payments, remain valid and enforceable.  *See* Exs. A § 20.11; B; C; D.

48.    Ms. Doe fully performed all of her material contractual obligations under the Original Settlement Agreement and the three amendments thereto by, among other things, foregoing the prosecution of her claims until after Defendant Lanng had missed the payments under the third and final amendment to the Original Settlement Agreement.

49.    Lanng failed to perform his obligations under the Original Settlement Agreement and the three amendments thereto by failing to pay the $9,750,000 owed to Doe pursuant to section 4 of the Settlement Agreement and the Third Amendment thereto.

50.    As a direct, foreseeable, and proximate result of Defendant Lanng's breach of the Settlement Agreement and the three amendments thereto, Ms. Doe has been financially harmed, suffered financial distress, and incurred attorneys' fees and costs, economic loss, and incidental expenses.

## SECOND CAUSE OF ACTION

### (Promissory Estoppel)

51.   Ms. Doe realleges and incorporates in this cause of action each and every allegation contained in this complaint as though fully set forth herein.

52.   In the alternative, and in the event this Court determines that no enforceable Settlement Agreement (as amended) exists between Ms. Doe and Defendant Lanng, Ms. Doe alleges as follows:

53.   Defendant Lanng made clear, unambiguous, and repeated promises to Ms. Doe that he would pay Ms. Doe $10 million dollars in full settlement of Ms. Doe's claims.  Defendant Lanng repeated this promise on *at least* three separate occasions in the three amendments to the Original Settlement Agreement.

54.   Ms. Doe reasonably and justifiably relied on each of Defendant Lanng's promises and representations—as Defendant Lanng knew or should have known she would—and forwent the prosecution of her claims against Defendant Lanng, executed a general release of her claims, and kept the horrendous sexual abuse and harassment, torture, and trafficking she suffered at the hands of Defendant Lanng confidential.

55.   Ms. Doe's reliance on Defendant Lanng's promises was reasonable and foreseeable to Defendant Lanng—and indeed intended—under all the circumstances, including but not limited to the negotiations surrounding the Original Settlement Agreement and the three amendments thereto.

56.   Defendant Lanng benefitted from Ms. Doe's reliance on his promises to pay her the amounts negotiated in the settlement agreements.  As a result of being able to benefit from the funds that should have been paid to Ms. Doe years ago and the delay in Ms. Doe pursuing claims against him, Defendant Lanng, on information and belief, has been able to profit from numerous investments into other lucrative ventures and found and profit from new companies he has since founded, including Beyond Work Inc.

57.   As a direct and proximate result of Ms. Doe's reliance on Defendant Lanng's promises, Ms. Doe has suffered damages, including but not limited to the loss of her right to pursue

SECOND AMENDED COMPLAINT
Case No. 4:24-cv-00166-JST

her underlying claims earlier, litigation costs, and the loss of the time value of money, in an amount not less than $9.75 million.

58.    Justice requires enforcement of Defendant Lanng's repeated promises to pay Ms. Doe $10 million to prevent the injustice that would result from Defendant Lanng's repeated inducement of Ms. Doe's reliance followed by his refusal to pay the amount he promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.    For compensatory damages and other special, general, and consequential damages according to proof;

B.    For costs of suit, attorneys' fees, and expert fees pursuant to Section 9.5 of the Original Settlement Agreement and the amendments thereto;

C.    For pre- and post-judgment interest at the maximum legal rate;

D.    For equitable relief as the Court may deem just and proper;

E.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of any issue triable of right by a jury.

Respectfully submitted,

Dated: June 10, 2026

**WILLKIE FARR & GALLAGHER LLP**

By:    */s/ Nicholas Reddick*
        Nicholas Reddick

Nicholas Reddick (SBN 288779)
Erica S. Miranda (SBN 325188)
Alyxandra Vernon (SBN 327699)
Imahn Daeenabi (SBN 363932)
333 Bush Street, 34th Floor
San Francisco, CA 94104

Matthew Gurvitz (SBN 272895)
2029 Century Park East
Los Angeles, CA 90067-2905

Attorneys for Plaintiff

14