# Exhibit A

## CONFIDENTIAL SETTLEMENT AND
## MUTUAL RELEASE AGREEMENT

This Confidential Settlement and Mutual Release Agreement ("**Agreement**") for personal injury claims is entered into by and between ███████████████ (" ███████ on the one hand, and Christian Lanng ("**Lanng**"), on the other hand.  ████ and Lanng are each a "Party" and are collectively "the Parties."

### RECITALS

**WHEREAS,** certain disputes have arisen between ████ and Lanng arising out of their personal relationship and not their employment with Tradeshift, Inc.;

**WHEREAS,** ████ has not filed any claim, civil action, or administrative complaint regarding, referencing, or in any way relating to Lanng or her employment with Tradeshift;

**WHEREAS,** Lanng denies all wrongdoing and liability;

**WHEREAS,** without any admission of wrongdoing or liability, and subject to the terms of this Agreement, the Parties now wish to forever terminate, compromise, discharge and settle all disputes and claims between them, known and unknown, suspected or unsuspected, based on any facts occurring from the beginning of time through and including the Effective Date (defined below).

**NOW, THEREFORE,** in consideration of the foregoing recitals and the mutual promises and covenants set forth herein, the Parties agree as follows:

### AGREEMENT

1. <u>Incorporation of Recitals.</u>  The above recitals are incorporated herein by reference.

2. <u>Effective Date</u>.

2.1 Subject to the provisions of Section 2.2, below, this Agreement shall become effective (the "**Effective Date**") when signed by all Parties.

2.2 If Lanng fails to make the Holding Payment (defined below) or the First Settlement Payment (defined below), both Parties shall be released from all of their obligations and restrictions under this Agreement and the Parties' rights, claims, and obligations shall be the same as if this Agreement was never signed, the sole exception being Lanng's entitlement to a credit upon payment of the Holding Payment (defined below) as set forth in Section 3.3 below.

11311-00001/13388000.2

████████████████

████ initials

1

Lanng initials

3.    Holding Payment.

3.1    Within nine days of the Effective Date, Lanng may pay ▮ the non-refundable amount of $250,000 (the "**Holding Payment**") which shall be paid in cash to an account to be identified by ▮

3.2    If Lanng fails to make the Holding Payment, both Parties shall be released from all of their obligations and restrictions under this Agreement and the Parties' rights, claims, and obligations shall be the same as if this Agreement was never signed. For the avoidance of doubt, if Lanng fails to make the Holding Payment, ▮ may not bring a claim on account of such failure (but may bring any other claim).

3.3    If Lanng makes the Holding Payment, but thereafter fails to make the First Settlement Payment (defined below) set forth in Section 4.1 the Holding Payment, together with interest thereon at the 1 Year Treasury Rate in effect at the Effective Date, shall be credited to any future obligation of Lanng to ▮ whether by settlement, judgment, arbitration award or otherwise.

4.    Settlement Payment. Subject to the terms of this Agreement, the total amount to be paid by Lanng to ▮ is USD $10 million (the "**Settlement Payment**"), to be paid as follows:

4.1    Within 120 days of the Effective Date, Lanng may pay ▮ $4,750,000 (the "**First Settlement Payment**") in cash to an account identified by ▮

a.    If Lanng fails to make the First Settlement Payment, both Parties shall be released from all of their obligations and restrictions under this Agreement and the Parties' rights, claims, and obligations shall be the same as if this Agreement was never signed. For the avoidance of doubt, if Lanng fails to make the First Settlement Payment, ▮ may not bring a claim on account of such failure (but may bring any other claim).

b.    If Lanng makes the First Settlement Payment, he shall be bound and obligated the pay the Second Settlement Payment (defined below) and the Final Settlement Payment (defined below) to ▮

4.2    Provided that ▮ is not in breach of any provision of this Agreement, within 180 days of the Effective Date, Lanng shall pay ▮ $2,500,000 (the "**Second Settlement Payment**") in cash to an account identified by ▮

4.3    Provided that ▮ is not in breach of any provision of this Agreement, within 365 days of the Effective Date, Lanng shall pay ▮ $2,500,000 (the "**Final Settlement Payment**") in cash to an account identified by ▮

4.4    All payments are to be made to:

11311-00001/13388000.2

▮

▮ initials

_____
Lanng initials

2

Werksman Jackson & Quinn LLP Client Trust Account

Union Bank
Pasadena Branch
70 South Lake Avenue
Pasadena, California 91101 USA
(626) 683-5500

ABA Routing No. ████████
Account No. ████████

SWIFT Code: ████████

5.    Release by ████ Except as to the obligations created by this Agreement, upon the Effective Date, ████ on her own behalf and on behalf of each of her past and present agents, attorneys, employees, contractors, officers, directors, representatives, partners, spouses, joint venturers, partnerships, corporations, companies, predecessors-in-interest, administrators, executors, heirs, successors, assigns, and all others claiming by or through any of the foregoing (collectively, the "████ **Releasors**"), hereby releases unconditionally, and is hereby deemed to release unconditionally, Lanng and each of his past and present agents, attorneys, employees, contractors, officers, directors, representatives, investors, partners, spouses, partnerships, companies, predecessors-in-interest, administrators, executors, heirs, successors, assigns, and Tradeshift, Inc., and its current and former affiliates, successors, assigns, agents, representatives, creditors, shareholders, investors, attorneys, directors, officers, and employees, all of which are third-party beneficiaries to this Agreement entitled to enforce its terms, and all others against whom the ████ Releasors, or any of them, could make a claim (collectively the "**Lanng Releasees**"), from any and all ████ Claims (as defined below). "████ Claims" for the purpose of this Section 5 include, but are not limited to, any and all manner of action or actions, cause or causes of action, in law or in equity or before any administrative agency, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, injuries, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, apparent or concealed, suspected or unsuspected, arising in tort, contract, or otherwise, which the ████ Releasors now have or may hereafter have against the Lanng Releasees, or any of them, and whether existing in the past or the present or the future, based upon any conduct or event occurring up through and including the Effective Date.

6.    Release by Lanng. Except as to the obligations created by this Agreement, upon the Effective Date, Lanng on his own behalf and on behalf of each of his past and present agents, attorneys, employees, representatives, partners, spouses, joint venturers, partnerships, corporations, companies, predecessors-in-interest, administrators, executors, heirs, successors, assigns, and all others claiming by or through any of the foregoing (collectively, the "**Lanng Releasors**"), hereby releases unconditionally, and is hereby deemed to release unconditionally, ████ and each of her past and present agents, attorneys, employees, representatives, investors, partners, spouses, partnerships, corporations, companies, predecessors-in-interest, administrators,

11331-09001/13358000.2

████████

████ initials

_____

Lanng initials

3

executors, heirs, successors, assigns, and all others against whom the Lanng Releasors, or any of them, could make a claim (collectively the "█████ Releasees"), from any and all Lanng Claims (as defined below). "Lanng Claims" for the purpose of this Section 6 include, but are not limited to, any and all manner of action or actions, cause or causes of action, in law or in equity or before any administrative agency, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, injuries, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, apparent or concealed, suspected or unsuspected, arising in tort, contract, or otherwise, which the Lanng Releasors now have or may hereafter have against the █████ Releasees, or any of them, and whether existing in the past or the present or the future, based upon any conduct or event occurring up through and including the Effective Date.

7.   Covenant Not to Sue. The Parties shall not file, or cause to be filed, any suit, administrative proceeding or arbitration demand, or otherwise assert a claim or complaint against one another, the Lanng Releasees or the █████ Releasees on account of any released claim. Moreover, █████ shall not file, or cause to be filed, any suit, administrative proceeding or arbitration demand, or otherwise assert a claim or complaint against the Lanng Releasees for any failure by Lanng to make the Holding Payment or the First Settlement Payment. In the event of a breach of this covenant not to sue, this Agreement shall constitute a complete and absolute defense to such claim.

8.   Waiver of California Civil Code Section 1542

8.1   In releasing the █████ Claims and the Lanng Claims released above, each Party specifically waives any benefit of the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

8.2   Each Party hereby knowingly and voluntarily waives any right that she/he may have under Section 1542 of the California Civil Code or any similar provision of the statutory or non-statutory law of California or any other jurisdiction, to the full extent that she/he may lawfully waive all such rights and benefits pertaining to the matters released above.

9.   Arbitration

9.1   Any controversy, dispute, or claim arising out of, in connection with, or related to the interpretation, performance or breach of this Agreement or any agreement or other instrument executed pursuant hereto or otherwise arising out of the execution of any of the

11311-00001/13388000.2

█████ initials

4

Lanng initials

foregoing, including, without limitation, any claim based on contract, tort, or statute, shall be resolved or determined, exclusively by confidential arbitration conducted in or around San Francisco or Los Angeles, California, before a single arbitrator (the **"Arbitrator"**) and in accordance with the then-existing JAMS Comprehensive Rules. The Arbitrator's award will be final, binding and non-appealable, and judgment may be entered by any State or Federal court having jurisdiction thereof. The arbitrator shall be required to decide the controversy in accordance with applicable substantive law, however, the Arbitrator shall not have the power to invalidate this Agreement or any part thereof and any Award to that effect will be outside of the powers of the Arbitrator. Any controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this Section 9.1 shall be determined by the Arbitrator. The Arbitrator shall be a retired or former judge. All arbitration proceedings shall be held in the strictest of confidence and all parties and counsel shall be bound by such requirement of confidentiality. Pursuant to Section 1283.1(b) of the California Code of Civil Procedure, the provisions of Section 1283.05 of the California Code of Civil Procedure (which permit discovery) are incorporated into, made a part of, and made applicable to this agreement to arbitrate. The Parties intend that in any arbitration, third party discovery shall be permitted to the fullest extent permitted by law. The Parties intend that this agreement to arbitrate be valid, enforceable and irrevocable. The designation of a situs or a governing law for this Agreement or the arbitration shall not be deemed an election to preclude application of the Federal Arbitration Act, if it would be applicable.

9.2     The Parties expressly acknowledge and agree that the arbitration agreement set forth in Section 9.1 is a material inducement for the Parties to enter into this Agreement. In the event ▉▉▉ or Lanng breaches her or his obligation to arbitrate by filing a public lawsuit without leave of the Arbitrator as provided in Section 9.3, the non-breaching Party may bring a claim in arbitration and obtain damages resulting from the breach according to proof. The Parties are aware of the holding in *Sargon Enterprises, Inc. v. Browne George Ross, LLP*, 15 Cal.App.5th 749 (2017) and expressly agree to waive its holding and that of any similar authority so that the Arbitrator may award damages as provided herein. The Parties waive any argument and agree not to assert that it would be against public policy to waive the holding in *Sargon*. The remedies in this Section shall be in addition to, and shall not limit, any other remedies available to the Parties, whether under this Agreement or otherwise.

9.3     No Party shall file any action in any court (including to confirm or vacate any award) naming any other Party without prior leave from the Arbitrator, which may be granted for good cause shown. The Arbitrator shall condition such relief by requiring redactions, filing under seal or such other protections to afford maximum confidentiality to the Parties and their dispute.

9.4     Each of the Parties irrevocably consents to the personal jurisdiction of the courts located in the State of California and agrees that any arbitration demand filed pursuant to this Agreement, or any other legal process, may be served upon her or him or pursuant to Section 16 of this Agreement.

11311-00001/13388000.2



▉▉ initials

_____

Lanng initials

5

9.5     In any arbitration alleging a breach of the terms of this Agreement, or otherwise arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs, as well as the expenses of the arbitrator and expert witnesses.

9.6     The parties agree that, in addition the other provisions in this Section 9, any arbitration asserting a breach of any of Sections 10 (No Prior Disclosure), 11 (Confidentiality), 12 (Non-Disparagement) and 13 (No Further Communications) of this Agreement (together, the "**Privacy Provisions**") shall be conducted on an expedited basis, with a decision to be rendered by the arbitrator no later than 60 days after initiation of the arbitration unless otherwise agreed to in writing by the Parties. The Parties agree that, after consulting with the arbitrator as to the specific expedited procedures to be applied, the arbitrator shall apply any and all such procedures as he or she shall determine, regardless of whether those procedures differ from what the JAMS Rules would otherwise require.

10.     <u>No Prior Disclosure of Confidential Information.</u>     █████ and Lanng, on their own behalf and on behalf of their agents, attorneys, employees, contractors, officers, directors, representatives, partners, spouses, joint venturers, partnerships, companies, predecessors-in-interest, administrators, executors, heirs, successors, and assigns, █████ counsel, Werksman Jackson & Quinn, and Lanng's counsel, Quinn Emanuel Urquhart & Sullivan, represent and warrant that other than disclosure to Van Dermyden Makus, █████ treating physicians, Gert Sylvest, Mikkel Hippe Brun, Ian Swycher, Cem Usakli, Jeff Ransdell, Roberto Aitkenhead, Noriaki Akubo, Takateru Murakami, Stephan Chandler, Russell Joseph, Robert Wilger, Melissa Hollatz, Melinda Douglas, Katherine Henderson, Marissa Mattson, Anthony Lorenz, Bre Pettis, Calvin Chin, Cameron Sinclair, David Cowan, Diane Gaspar, Doug Stromback, Elizabeth Heller, Henry Grossman, Jillian Manus, John Manulis, John Burbank, Kelly Leonard, Kim Polman, Mohit Burman, Nabil Nuaim, Peter Bisanz, Peter Smith, Helen Ly, Rick Stromback Samantha Stein, ████████████, and the directors, officers and employees of Tradeshift and its counsel, neither they nor anyone affiliated with them has previously disclosed in any manner, whether directly or indirectly, in form or substance, to any third person not a Party hereto: (a) the fact of or amount of the Settlement Payment or Holding Payment; (b) any term of this Agreement; (c) any communication between █████ and Lanng, whether written or oral; (d) any photograph, video or other image of Lanng; or (e) any allegation by █████ of any alleged tort, crime, misconduct, or other wrongdoing by Lanng, or conduct by █████ while employed by Tradeshift, Inc., all of which are collectively the "**Confidential Information.**"

11.     <u>Confidentiality</u>

11.1     Except as otherwise specifically provided for in Section 10 or this Section 10 (the "**Confidentiality Clause**"), █████ and Lanng, on their own behalf and on behalf of their agents, attorneys, employees, contractors, officers, directors, representatives, partners, spouses, joint venturers, partnerships, companies, predecessors-in-interest, administrators, executors, heirs, successors and assigns, █████ counsel, Werksman Jackson & Quinn, and Lanng's counsel, Quinn Emanuel Urquhart & Sullivan, agree not to disclose to any person or

11311-00001/13388000.2

█████ initials

6

Lanng initials

entity that is not a Party to this Agreement: (a) any of the Confidential Information; (b) any information, document, material, correspondence, or communication that is in any way related to any aspect of the Parties' relationship; or (c) any other non-public information about either party that the other reasonably should know is private or confidential.  In the event of a breach of this Confidentiality Clause by a third party on whose behalf ▮ or Lanng has agreed (e.g., their attorneys), ▮ or Lanng shall be liable as if she or he breached the confidentiality restrictions herself or himself.  Nothing in this Section 11 shall prevent ▮ or Lanng, or their counsel or representatives from providing truthful testimony compelled by subpoena in any proceeding or pursuant to an internal investigation by Tradeshift and its attorneys.

11.2 ▮ or Lanng may disclose only the Settlement Amount to her or his tax preparer and, only as necessary, in her or his tax returns filed with a governmental entity or otherwise permitted by this Agreement.

11.3 Nothing in this Section 11 shall apply to any disclosure by ▮ Lanng or their respective counsel or representatives reasonably necessitated by: (a) any applicable statutes, laws, rules or regulations; (b) an order duly issued by a court of competent jurisdiction; or (c) the arbitration contemplated by Section 9 of this Agreement.

11.4 In the event any Party receives a subpoena or other process purporting to require disclosure of the Agreement or any of its terms, such Party shall provide notice to the other within three (3) business days in the manner provided in Section 16.

11.5 Nothing in this Agreement shall prevent or restrict Tradeshift, Inc., from making legally or contractually required disclosures regarding the disputes and the settlement of the disputes.

11311-00001/13388000.2

7

▮ initials

Lanng initials

12.    Non-Disparagement. ███ and Lanng, on their own behalf and on behalf of their agents, attorneys, employees, contractors, officers, directors, representatives, partners, spouses, joint venturers, partnerships, corporations, companies, predecessors-in-interest, administrators, executors, heirs, successors and assigns, ███ counsel, Werksman Jackson & Quinn, and Lanng's counsel, Quinn Emanuel Urquhart & Sullivan, agree not to make, publish, or disseminate any statement, written or verbal, through any means (including electronic, print, broadcast media, social media, the internet or otherwise), or instigate, assist or participate in the making of any statement, written or verbal, that would defame, disparage (whether or not such disparagement legally constitutes libel or slander), suggest wrongdoing on the part of, or place in a negative light the personal or business reputation, practices, or conduct of Lanng or ███ their businesses, or their families, irrespective of the truthfulness or falsity of such remarks. Nothing in this Section 12 shall prevent ███ or Lanng, or their counsel or representatives from providing truthful testimony compelled by subpoena in any proceeding or pursuant to an internal investigation by Tradeshift and its attorneys.

13.    No Further Communications

13.1    ███ and Lanng agree to, without exception, cease all intentional communications and/or contact with each other related to any subject whatsoever, either directly or indirectly, in any way, including but not limited to, in person, by telephone, mail, e-mail, text message, social media or other electronic means.

13.2    In the event of any breach or alleged breach of any term of this Agreement, any communications relating to any such breach or alleged breach shall be made only by and through the Parties' counsel in the manner provided in Section 16 of this Agreement.

14.    Injunctive Relief. The Parties agree that a breach of the Confidentiality, Non-Disparagement Clause, and No Further Communications clauses of Sections 11, 12, and 13 would cause irreparable injury for which money damages would be inadequate. In the event of a breach or threatened breach of any of Sections 11, 12, or 13, without limiting any of his other remedies at law or in equity, Lanng and ███ shall also be entitled to seek injunctive relief, without bond, enjoining ███ or Lanng from any future breach.

15.    Liquidated Damages

15.1    The Parties acknowledge that Lanng and ███ specifically bargained for the Privacy Provisions and, without the inclusion of those provisions in this Agreement, they would not have entered into this Agreement or paid any portion of the Settlement Payment nor agreed to be bound by any of its other terms. The recitals in this Section 15 are intended to be conclusive, irrefutable and incontestable under California Evidence Code Section 622.

15.2    The Parties agree that any breach by ███ or Lanng of any of the Privacy Provisions shall be considered a material breach of this Agreement. The Parties agree that it would be impractical, extremely inconvenient and difficult to affix the actual damage

11311-00001/13388000.2

███ initials

8

Lanng initials

caused by ██ or Lanng's breach of any of the Privacy Provisions and that such breach will cause serious and irreparable damage to Lanng or ██ Therefore, pursuant to California Civil Code Section 1671, the Parties agree that, in the event of a breach of any of the Privacy Provisions, Lanng and/or ██ shall be entitled to liquidated damages as set forth in this Section 15, which the Parties agree represents a fair estimate of the reasonable compensation for damages that would flow from such breaches and is not a penalty.

15.3    If the arbitrator concludes that ██ or Lanng breached any of the Privacy Provisions, the breaching party shall be liable to the other for liquidated damages as follows:

a.    A breach by ██ of Section 10 (No Prior Disclosure of Confidential Information) or Section 11 (Confidentiality). shall require her to forfeit and return to Lanng the Settlement Amount paid to her under this Agreement. The Parties acknowledge, agree and shall not contest that the return of all consideration paid under this Agreement for such a breach or breaches bears a reasonable relationship to Lanng's actual damages because Lanng entered into this Agreement in reliance on Section 10 and he entered into this Agreement with an expectation that ██ would honor her obligations under Section 11. A breach by Lanng of Section 9 or Section 10, which breach has been found to have been committed by an arbitrator in and award confirmed by an appropriate court, shall release ██ from all obligations under this Agreement;

b.    In addition, a breach by ██ or Lanng of Section 12 (Non-Disparagement) or Section 13 (No Further Communications) shall require the breaching Party to pay the other Party $100,000 per breach. For purposes of assessing liquidated damages, each disparaging remark, communication or contact shall constitute a separate breach for purposes of assessing liquidated damages. By way of example only, two text messages from ██ to Lanng or Lanng to ██ in violation of Section 13 shall constitute two breaches and thus require payment by the breaching party of $200,000 to the other. ██ and Lanng acknowledge, agree and shall not contest that the sum of $100,000 per breach bears a reasonable relationship to Lanng's and ██ actual damages because of Lanng's and ██ position in the business community, their ability to generate income based in part on their reputation, and the value the Parties place on ceasing communications between the Parties..

15.4    Any award of liquidated damages shall be paid within 30 days of the arbitrator's determination of a breach giving rise thereto.

11311-00001/13388000.2

██

██ initials

9

Lanng initials

Doc ID: 08998626D0895688686684dd78Z6f5lu6J08d285dA

16.    Notice. Notice to the Parties shall be effective when sent, given in writing and delivered by both email and U.S. Mail as follows:

16.1    If to ███

Hon. Halim Dhanidina (Ret.)
Werksman Jackson & Quinn
888 West Sixth Street, Fourth Floor
Los Angeles, CA 90017

████████████████████████

16.2    If to Lanng:

Diane M. Doolittle
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

████████████████████████

and

Bruce E. Van Dalsem
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

████████████████████████

16.3    The Parties may amend the persons and addresses to which notice shall be given by written notice given in accordance with this Section.

17.    Continued Cooperation.    ███ and Lanng agree to reasonably and in good faith cooperate and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

18.    Acknowledgment of Waiver of Claims under ADEA.  The Parties understand and acknowledge that they are waiving and releasing any rights they may have under the Age Discrimination in Employment Act of 1967 ("ADEA"), and that this waiver and release is knowing and voluntary.  The Parties understand and agree that this waiver and release does not apply to any rights or claims that may arise under the ADEA after the Effective Date of this Agreement.  The Parties further understand and acknowledge that they have been advised by this writing that: (a) they should consult with an attorney prior to executing this Agreement; (b) they have twenty-one (21) days within which to consider this Agreement; (c) they have seven (7) days following their individual execution of this Agreement to revoke this Agreement; (d) notice of revocation by either Party must be in writing and delivered timely to the other Party as specified

████████

_____
███ initials

_____
Lanng initials

10

in Section 16; (e) this Agreement shall not be effective until after the revocation period has expired; and (f) nothing in this Agreement prevents or precludes a Party from challenging or seeking a determination in good faith of the validity of this waiver under the ADEA, nor does it impose any condition precedent, penalties, or costs for doing so, unless specifically authorized by federal law. In the event a Party signs this Agreement in less than the 21-day period identified above, the Party hereby acknowledges that the Party has freely and voluntarily chosen to waive the time period allotted for considering this Agreement.

19.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to California's choice of law rules.

20.    General Provisions.

20.1    Time of the Essence. Time is of the essence with respect to the Parties' performance of their obligations under this Agreement

20.2    Full Satisfaction. This Agreement, and the rights and benefits provided by it, are acknowledged by the Parties to be in full and complete settlement and satisfaction of the claims that are released.

20.3    Authority. Each person and entity executing this Agreement has full capacity, power, and authority to do so, and all necessary resolutions and authorizations have been obtained.

20.4    Tax Liability. Each Party is responsible for any and all tax liability that may result from this Agreement and no Party makes any representations or warranties concerning the tax consequences or liabilities resulting from or arising from this Agreement. However, Lanng shall not issue a tax form 1099-MISC with respect to the damages paid under this Agreement.

20.5    Integration. This Agreement contains the entire and only understanding between the Parties and supersedes any and all prior and/or contemporaneous oral or written negotiations, agreements, representations, and understandings. The Parties, and each of them, represent and agree that no promise, statement (oral or written, express or implied), or inducement has been made that caused them to sign this Agreement, other than those expressly set forth in this Agreement. Any and all representations that any Party considers to be material to its decision to enter into this Agreement have been included in this Agreement and each Party agrees that any alleged representation not included in this Agreement was not material to his or its decision to enter into this Agreement. This Agreement shall be accepted as conclusive proof that: (1) any reliance by any Party on any alleged representation not included in this Agreement shall not be justified; and (2) any fact allegedly not disclosed was not material to each Party's decision to execute this Agreement. Each Party further agrees that no other Party owes an obligation to disclose any fact or, if such obligation exists, each Party relieves the other Parties of

11311-00001/13388000.2

initials

11

Lanng initials

Doc ID: 089986268068956868686684dd7926651607086d285d9

such obligation. In any action where any Party contends that any other Party has made any representation, or failed to disclose any fact, and such contention is inconsistent with this paragraph, the court, arbitrator, or other tribunal shall summarily dismiss any such claim, even if the applicable law would not support such summary dismissal absent this clause.

20.6    Modification. This Agreement may not be altered, amended, or extinguished except by a writing that expressly refers to this Agreement and is signed subsequent to the date of this instrument by duly authorized representatives of the respective Parties.

20.7    Successors. This Agreement shall be binding upon and inure to the benefit of the executors, administrators, heirs and successors. This Agreement shall not be assigned.

20.8    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be of the same force and effect as if in original ink.

20.9    Headings. The headings and captions used in this Agreement are for convenience only and shall not be deemed to affect in any way the language of the provisions to which they refer.

20.10    Interpretation. This Agreement shall be interpreted as if jointly drafted by the Parties, and no provision shall be interpreted against any Party because such provision was drafted by that Party. In the event of a dispute regarding the meaning of this Agreement, or any term of this Agreement, drafts of the Agreement and communications concerning such drafts shall be inadmissible for any purpose including, without limitation, to aid in the interpretation of this Agreement.

20.11    Severability. If any provision of this Agreement shall be held to be illegal, invalid, or unenforceable, the Court or arbitrator shall modify and interpret such provision to permit its enforcement in a manner most closely representing the intentions of the Parties as expressed herein and the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

20.12    Waiver. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. The failure of any Party at any time to demand strict performance of this Agreement shall not be deemed a waiver thereof, and each Party may at any time demand strict and complete performance of this Agreement.

20.13    No Admission of Wrongdoing. Nothing contained herein shall be taken or construed to be an admission of wrongdoing or liability of any kind on the part of either Party and both Parties expressly deny any wrongdoing or liability.

11311-00001/13388000.2

_____

████ initials

_____

12                                    Lanng initials

Doc ID: 08998626D08956888686684dd78Z6G3U6U08d285dA

20.14    Ownership of Claims. Each Party represents and warrants that he or she has not assigned or transferred, or purported to assign or transfer, any cause of action, claim for relief, or other matter released under the Agreement.

20.15    Costs and Expenses. Except as otherwise specifically provided in Section 9.5 of this Agreement, the Parties shall each bear their own legal and other costs and expenses incurred in connection with the assertion of claims against any of the Parties, and all settlement negotiations leading to this Agreement.

20.16    Voluntary Execution of Agreement. The Parties respectively represent and warrant:

20.17    This Agreement is made without reliance upon any inducement, statement, promise, or representation of any kind (oral or written, express or implied) other than those contained within this Agreement, and without reliance on any omission, non-disclosure, or failure to disclose information of any type whatsoever;

20.18    This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the parties hereto, with the full intent of releasing all claims;

20.19    The Parties have read and understood this Agreement;

20.20    The Parties have been represented by counsel in the preparation, negotiation, and execution of this Agreement;

20.21    The Parties have been advised by their counsel as to the legal effect of each of the provisions of this Agreement.

20.22    The Parties understand the terms and consequences of this Agreement, the releases it contains and the waiver it contains of California Civil Code Section 1542; and

20.23    The Parties are fully aware of the legal and binding effect of this Agreement.

11311-00001/13388000.2

_____ initials

13

_____ Lanng initials

IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the date set forth opposite their respective signatures.

Dated:    05 / 14 / 2022    ████████

Dated:    _____

CHRISTIAN LANNG

11311-00001/13388000.2

14

█████  initials

Larng initials

Doc ID: D89986260089568866064d17926731407880265d9

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Final Settlement Agreement ( and Lanng)05.14.2022.pdf |
| **FILE NAME** | Final%20Settlemen...%2905.14.2022.pdf |
| **DOCUMENT ID** | 0997762dbb89c69888694da177f65b50831c85df |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | • Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
**05 / 14 / 2022**
19:57:27 UTC
Sent for signature to ███████████
████████████████████
IP: ██████████

**VIEWED**
**05 / 14 / 2022**
19:57:41 UTC
Viewed by ████████████████████
IP: ████████████

**SIGNED**
**05 / 14 / 2022**
20:01:22 UTC
Signed by ████████████████████
IP: ████████████

**COMPLETED**
**05 / 14 / 2022**
20:01:22 UTC
The document has been completed.

Powered by **HELLOSIGN**

15

Doc ID: beb9861806275788535d41d792e71b0fbcd25514

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Final Settlement Agreement (▮▮▮▮ and... |
| **FILE NAME** | Final_Settlement_...4.2022-Signed.pdf |
| **DOCUMENT ID** | beb9861806275788535d41d792e71b0fbcd25514 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | • Signed |

This document was requested from app.clio.com

## Document History

| | | |
|---|---|---|
| ⟳ SENT | 05 / 14 / 2022<br>20:03:58 UTC | Sent for signature to ▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>IP: ▮▮▮▮▮ |
| ⊙ VIEWED | 05 / 14 / 2022<br>20:04:08 UTC | Viewed by ▮▮▮▮▮▮▮▮▮<br>IP: ▮▮▮▮ |
| ⤳ SIGNED | 05 / 14 / 2022<br>20:04:21 UTC | Signed by ▮▮▮▮▮▮▮▮<br>IP: ▮▮▮▮ |
| ⊘ COMPLETED | 05 / 14 / 2022<br>20:04:21 UTC | The document has been completed. |

Powered by **HELLOSIGN**

16